**Scharf-Norton Center for Constitutional Litigation at the GOLDWATER INSTITUTE**
Clint Bolick (021684)
Aditya Dynar (031583)
Courtney Van Cott (031507)
500 E. Coronado Rd.
Phoenix, Arizona 85004
(602) 462-5000
litigation@goldwaterinstitute.org

**COOPER & KIRK, PLLC**
Michael W. Kirk (admitted *pro hac vice*)
Brian W. Barnes (admitted *pro hac vice*)
Harold S. Reeves (admitted *pro hac vice*)
1523 New Hampshire Ave., N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| A.D. and C. by CAROL COGHLAN CARTER, their next friend; S.H. and J.H., a married couple; M.C. and K.C., a married couple; for themselves and on behalf of a class of similarly-situated individuals, Plaintiffs, vs. KEVIN WASHBURN, in his official capacity as Assistant Secretary of BUREAU OF INDIAN AFFAIRS; SALLY JEWELL, in her official capacity as Secretary of Interior, U.S. DEPARTMENT OF THE INTERIOR; GREGORY A. McKAY, in his official capacity as Director of ARIZONA DEPARTMENT OF CHILD SAFETY, Defendants. | No. CV-15-1259-PHX-NVW  **PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**  **ORAL ARGUMENT REQUESTED** |

Plaintiffs, a group of Arizona Indian children[1] and Arizona foster parents, seek to put an end to the racial discrimination that Arizona's Indian children and the parents seeking to care for and adopt them now suffer. The defendants' implementation of the Indian Child Welfare Act ("ICWA"), codified at 25 U.S.C. §§ 1901–1963, has given rise to a separate and unequal child custody and welfare system, a system in which Indian children are treated as second class citizens. The Constitution does not tolerate a system that separates children based on race and subjects them to separate and unequal treatment. ICWA is such a law.

The children and parents before the Court now move, pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP" or "Rule"), to certify this plaintiff class. They seek to represent all Arizona Indian children and all of the Arizona foster parents who are seeking to care for and to adopt those children. The proposed class satisfies the four threshold requirements of Rule 23(a), as well as the requirements of Rule 23(b).

## CLASS DEFINITION

> All off-reservation Arizona-resident children with Indian ancestry and all off-reservation non-Indian Arizona-resident foster, preadoptive, and prospective adoptive parents in child custody proceedings involving children with Indian ancestry and who are not members of the child's extended family.

All plaintiffs seek to represent the class. The class seeks only declaratory and injunctive relief.

## BACKGROUND

In considering a motion for class certification, the court does not reach the merits. Instead, the determination of whether class certification is appropriate should be made on the pleadings in light solely of the procedural requirements of Rule 23. *See, e.g.*, *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).

---

[1] Plaintiffs use the term "Indian children" within the meaning of ICWA, 25 U.S.C. § 1903. Plaintiffs do not waive any argument pertaining to whether the children are racially Indian, members of Indian tribes, or subject to the jurisdiction of the tribes.

## I. ICWA ESTABLISHES A SEPARATE AND UNEQUAL CHILD WELFARE SYSTEM APPLICABLE SOLELY TO INDIAN CHILDREN.

ICWA defines "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4). Most tribes use a blood quantum or lineage requirement as prerequisites for membership. Some will consider an individual with only a tiny percentage of Indian blood to be Indian, even when the child otherwise has no contact or connection with the tribe. *See, e.g.*, CHEROKEE NATION CONST. art. IV, § 1; *see also Adoptive Couple v. Baby Girl*, 133 S. Ct. 2552, 2556 (2013) (noting that child was "classified as an Indian because she is 1.2% (3/256) Cherokee").

ICWA imposes a variety of standards, preferences, and procedures in the case solely of Indian children. First, Indian children are subject to the jurisdictional transfer provision of ICWA, 25 U.S.C. § 1911(b). As a result, a child custody proceeding that involves a child with Indian blood may be transferred at the sole insistence of the tribe to a forum to which the child and his parents may have no other connection and with which they may not have even minimum contacts. Neither federal nor Arizona law imposes a comparable burden on children of other races.

Second, ICWA requires that the courts apply a more stringent standard and follow cumbersome additional procedures before determining that an Indian child's emotional and physical safety warrant placement in foster care or the termination of parental rights. 25 U.S.C. § 1912(d)–(f). In cases involving Indian children, the standard of proof that must be satisfied before the child is subjected to mental or physical abuse is removed is uniformly higher than the standard applied to children of other races.

Finally, ICWA creates a separate system of placement preferences that are applicable solely to Indian children in the foster care and adoption systems. Under ICWA, absent good cause to the contrary, Indian children must be placed with a member of their extended family, other members of the Indian tribe, or other Indian families. 25 U.S.C. § 1915. In contrast, the primary criterion governing the placement of children of

other races is the child's best interests. *Antonio M. v. Arizona Dep't of Econ. Sec.*, 214 P.3d 1010, 1011–12 (Ariz. Ct. App. 2009).

## II. THE NAMED PLAINTIFFS HAVE SUFFERED INJURIES AS A RESULT OF ICWA THAT ARE TYPICAL OF THOSE SUFFERED BY ALL CLASS MEMBERS.

ICWA causes real and substantial injuries to the members of the class. All Indian children suffer the indignity of having their best interests afforded less respect than those of all other children solely because of their blood. ICWA lowers the quality of life of many Indian children and has led, in far too many cases, to the abuse and even death of Indian children trapped in a system that treats them as racial tokens. Indian children remain in the limbo of foster care and adoption longer than non-Indian children, during which time they are deprived of the benefits of a stable family environment. The non-Indian Arizona men and women who seek to adopt or provide foster care to these children are likewise victims of ICWA. Frequently, they spend years in legal limbo, confronted by delays and incurring mounting legal bills. They suffer those injuries solely because they are non-Indian parents seeking to adopt Indian children.

The named plaintiffs have suffered injuries typical of the injuries inflicted by ICWA.

Baby girl A.D. is an Indian child who was approximately 10 months old when this suit was filed. After being taken into custody and having had the parental rights of her parents terminated, Baby girl A.D. has lived with her foster parents, S.H. and J.H., who have provided her with the treatment she has needed to recover from the deleterious effects of second-hand drug addiction. S.H.-J.H. Decl. ¶¶ 2, 6, 9–11. S.H. and J.H., along with their adopted son who also has Indian ancestry, are the only family baby girl A.D. has ever known. *Id*. ¶ 6.

Nevertheless, in response to the efforts of S.H. and J.H. to adopt baby girl A.D., the Gila River Indian Community has announced that it will likely seek to transfer the case to tribal court. Any such transfer would force A.D., S.H., and J.H., who have no contact with the tribal forum, to submit to that forum's jurisdiction. *Id*. ¶ 15. Such

transfer and the resulting assertion of jurisdiction, if successful, would be solely based on baby girl A.D.'s race. But for ICWA, A.D. would already have very likely been cleared for adoption, if not already adopted, by S.H. and J.H. *Id*. ¶ 17.

Boy C. is almost 5 years old. Since being taken into protective custody by DCS, C. has been in foster care placement with M.C. and K.C. M.C.-K.C. Decl. ¶ 6. The parental rights of C.'s birth parents have already been terminated. M.C. and K.C. hope to adopt boy C. The birth mother is on record saying she supports boy C.'s adoption by M.C. and K.C. The adoption has been blocked, however, solely because the Navajo Nation repeatedly has proposed alternative ICWA-compliant placements, all of which have then turned out to be inappropriate for placement of boy C. The tribe has nonetheless continued to ask for additional opportunities from state court to find other ICWA-compliant placements. Consequently, boy C. has remained in foster care for four years. *Id*. ¶¶ 3, 7–9.

Boy C. suffers serious emotional and psychological distress as a result of these ICWA-mandated delays. Each time the tribe proposes an ICWA-compliant placement, M.C. and K.C. must drive him, sometimes over 100 miles, to visit with the proposed placement. Boy C. instinctively calls M.C. and K.C. "mommy" and "daddy," but is told by proposed placements that M.C. and K.C. are not his real "mommy" and "daddy." Boy C. must endure this solely because he was born with Indian ancestry. *Id*. ¶¶ 9–13.

Plaintiffs S.H. and J.H., and M.C. and K.C., are married couples. They are Arizona residents. S.H.-J.H. Decl. ¶ 1; M.C.-K.C. Decl. ¶ 1. They have no Indian blood. But for ICWA, a strong likelihood exists that these families—baby girl A.D, S.H., and J.H., and boy C., M.C., and K.C.—would become permanent under race-neutral Arizona laws requiring individualized evaluation by the state court of the best interests of these two children. Declaration of Carol Coghlan Carter ¶¶ 25–27 ("Carter Decl."). Under ICWA, these families are subjected to procedural and substantive provisions that are based solely on the race of the children and the adults involved. ICWA has severely disrupted all of their lives contrary to the best interests of these children. *Id.*

Carol Coghlan Carter is a citizen of the United States and the State of Arizona, and domiciled in the State of Arizona. She is an attorney licensed to practice in the State of Arizona. She has practiced in the area of family law for several decades. *Id.* ¶¶ 1–3. In the course of her legal career, she has represented during all stages of child custody proceedings children, including children with Indian ancestry as their court-appointed guardian-ad-litem; birth parents, including birth parents with Indian ancestry; and foster/adoptive parents, including foster/adoptive parents with Indian ancestry and those in child custody proceedings involving children with Indian ancestry. *Id.* ¶ 3. She is "next friend" to baby girl A.D. and boy C. and all off-reservation children with Indian ancestry in the State of Arizona in child custody proceedings. *See* FRCP 17(c).

## **ARGUMENT**

For a class action to be certified, all that is required is that the proposed class "satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the categories under Rule 23(b)." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013). The proposed class both satisfies the four requirements of Rule 23(a) and meets the criteria for certification under Rule 23(b)(1), (2), and (3).

### I. THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(a).

For a class to satisfy Rule 23(a), there must be "(1) numerosity of the parties; (2) commonality of legal and factual issues; (3) typicality of claims and defenses; and (4) adequacy of representation." *Miller v. American Standard Ins. Co. of Wis.*, 759 F. Supp. 2d 1144, 1146 (D. Ariz. 2010). The proposed class of children and parents meets this standard.

#### A. Joinder of the over 1,300 Indian children and their Arizona foster and prospective adoptive parents would be impracticable.

The numerosity requirement of Rule 23(a) requires only that there be "difficulty or inconvenience of joining all members of the class." *Collinge v. IntelliQuick Delivery, Inc.*, 2015 WL 1292444, at *10 (D. Ariz. Mar. 23, 2015). Although there is no specific

numerical cut-off, this Court has said that "[n]umerosity will normally exist when the class consists of forty or more members." *In re Lifelock, Inc. Mktg. & Sales Practices Litig.*, 2010 WL 3715138, at *2 (D. Ariz. Aug. 31, 2010) (*citing Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 997 (9th Cir. 2007)). Moreover, when only injunctive and declaratory relief are being sought, "the numerosity requirement is relaxed and plaintiffs may rely on [ ] reasonable inference[s] arising from plaintiffs' other evidence that the number of unknown and future members of [the] proposed subclass . . . is sufficient to make joinder impracticable." *Arnott v. U.S. Citizenship and Immigration Servs.*, 290 F.R.D. 579, 586 (C.D. Cal. 2012) (alterations in original) (quoting *Sueoka v. United States*, 101 F. App'x. 649, 653 (9th Cir.2004)); *Jones v. Diamond*, 519 F.2d 1090, 1100 (5th Cir. 1975) ("The general rule encouraging liberal construction of civil rights class actions applies with equal force to the numerosity requirement of Rule 23(a)(1).").

The putative class of off-reservation Arizona-resident Indian children and of the foster, preadoptive, and adoptive parents who seek to care for these children is so large that joinder of all of its members would be impracticable. The Arizona Department of Child Safety reported that there were 1,336 American Indian Children in out-of-home care as of September 30, 2014. *See* Exhibit 1 to Complaint at 43 (July 6, 2015), Doc. 1-1. That number rose to 1,396 as of March 31, 2015. ARIZONA DEP'T OF CHILD SAFETY, SEMI-ANNUAL REPORT FOR THE PERIOD OF OCT. 1, 2014 THROUGH MAR. 31, 2015, pg. 43 (Exhibit 1). The number of foster, preadoptive, and adoptive parents seeking to care for these children is comparable. Especially in light of the more lenient standard applicable to suits seeking only declaratory and injunctive relief, the criterion of numerosity is more than satisfied by the proposed class.

Finally, that the "membership of the class may change over time in no way qualifies or undermines the identity of the class for purposes of Rule 23." *Glover v. Johnson*, 85 F.R.D. 1, 3 (E.D. Mich. 1977). "If anything, the inevitable turnover of the [class] population makes class certification advantageous in this case, since joinder of all

class members becomes correspondingly more impractical and mootness of individual claims more likely." *Id.* at 4. The fact that some Indian children will leave the class as they are adopted or turn 18 and that Indian children will join the class as they are born does not call into question the class definition; if anything, it makes certification particularly advantageous and appropriate in this case.

### B. The class challenges a policy of discrimination that applies to all class members.

The common questions of law and fact that Plaintiffs raise in their challenge to ICWA satisfy the commonality requirement of Rule 23(a). The Rule provides that there need only be some question "of law or fact common to the class." FRCP 23(a)(2). As this Court has explained, "[t]his is a minimal standard: 'all that is required is a common issue of law or fact.' " *Rodriguez v. Maricopa Cnty. Cmty. Coll. Dist.*, 2006 WL 89938, at *5 (D. Ariz. Jan. 12, 2006) (emphasis omitted) (quoting *Blackie v. Barrack*, 524 F.2d 891, 904 (9th Cir. 1975)); *see also Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) ("[A] class meets Rule 23(a)(2)'s commonality requirement when the common questions it has raised are apt to drive the resolution of the litigation, no matter their number" (internal quotation marks omitted)). In the civil rights context, moreover, the requirement of commonality is satisfied where, as here, "the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Parsons v. Ryan*, 289 F.R.D. 513, 516 (D. Ariz. 2013) (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005)).

The commonality requirement of Rule 23(a) is satisfied because the class challenges the discriminatory policies that ICWA adopts and that Defendants apply to all Indian children and all non-Indian foster and adoptive parents who seek to care for them. Carter Decl. ¶ 12. This action turns on one essential question common to all class members: Do ICWA and the federal and Arizona regulations and policies that implement ICWA unlawfully or unconstitutionally subject Indian children and parents

seeking to care for them to discrimination? All of the Indian children and all of the parents who are seeking to care for and adopt them are affected by ICWA on the basis of the race of these children. All of the claims they raise are common to all of the members of the class.

It is irrelevant that the children and parents in the class may be in different stages in the child custody process because all of the class members are suffering their injuries because of the same practices and policies that treat Indian children as second class citizens solely because of their race. The unique factual and legal situations of the individual class members does not defeat commonality where, as here, the class challenges a discriminatory scheme or policy applicable to all members of the class. *Rodriguez v. Hayes*, 591 F.3d 1105, 1122–23 (9th Cir. 2009) (class action challenge to common detention policy did not lack commonality even though prisoners were in different stages and phases of detention and had been imprisoned for different reasons under different statutes); *LaDuke v. Nelson*, 762 F.2d 1318, 1332 (9th Cir. 1985) (uniform pattern of INS conduct established commonality among residents of migrant farm dwellings, even though the residents were affected differently by the conduct).

Indeed, it is not even necessary for all of the absent members of the class to be currently suffering actual injury as a result of these discriminatory policies and practices, "demonstrating that all class members are subject to the same harm will suffice." *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) (emphasis omitted). ICWA subjects all class members to the same discriminatory policies and practices. This suffices to establish commonality for purposes of Rule 23(a).

### C. The claims asserted by the named Plaintiffs are typical of—indeed, identical with— the claims of the absent plaintiffs.

Plaintiffs satisfy the typicality requirement of Rule 23(a)(3) because the challenged policies and practices affect all of the class members in the same way. In order to show typicality, the named Plaintiffs need show only that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FRCP 23(a)(3). " 'The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class.' " *O'Connor v. Boeing North American, Inc.*, 197 F.R.D. 404, 412 (C.D. Cal. 2000) (quoting *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (en banc)). Typicality is satisfied, therefore, if the claims of the representative parties "are reasonably coextensive with those of absent class members." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

ICWA applies uniformly to all "child custody proceedings" involving Indian children, including termination of parental rights, foster care placement, and adoption placement. *See* 25 U.S.C. §§ 1911, 1912, 1914, 1915. It follows that the injuries suffered by the named plaintiffs— application of the discriminatory policies imposed by ICWA—are typical of, indeed, identical to, the injuries the Act inflicts upon all class members. The named plaintiffs challenge the legality and the constitutionality of this entire regime. If the named plaintiffs prevail on their challenge to ICWA, all class members will receive the same relief:  declaratory and injunctive relief prohibiting application of the discriminatory provisions of ICWA in Arizona child custody cases involving Indian children. Rule 23(a) requires no more to establish the typicality of the claims of the class representative.

That Indian children and parents in the putative class are not all currently in the same place in the foster care system or in the adoption process, it should be noted, does not render the claims of the named plaintiffs atypical. *Staton*, 327 F.3d at 957. There is no need for there to be a separate "class representative for each type of discrimination claim alleged. That level of specificity is not necessary for class representatives to satisfy the typicality requirement." *Id.* at 957.  The "named plaintiffs' injuries [need not]

be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Armstrong*, 275 F.3d at 869.

"A representative's claim is typical if it is based upon the same event or course of conduct that is the basis of the other class members' claims, as well as the same legal theory." *Brink v. First Credit Res.*, 185 F.R.D. 567, 570 (D. Ariz. 1999) (citation omitted). The named plaintiffs in this case have suffered the same statutorily-mandated discrimination to which the defendants subject all of the absent class members. *See supra* 4–5; Carter Decl. ¶¶ 12–14; S.H.-J.H. Decl.; M.C.-K.C. Decl.; M.G.-B.G. Decl.

### D. Class certification will ensure that the best interests of the class are adequately represented and aggressively pursued.

To satisfy the adequacy requirement of Rule 23(a), "[t]he class representative must have no interests antagonistic to the class and be able to prosecute the action vigorously, and class counsel must possess the competence to undertake the litigation." *In re Lifelock, Inc. Mktg. & Sales Practices Litig.*, 2010 WL 3715138, at *2 (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000)). Both prongs of this test are met in this case.

First, as noted above, the named plaintiffs and the proposed class members are all subject to the same racially discriminatory procedures, policies, and race-based preferences and have experienced, and continue to experience, the same harm that flows from this discrimination. Baby girl A.D. and boy C. have each suffered harm because of ICWA and, through their next friend, Ms. Carter, they are highly motivated to escape from its discriminatory treatment and find stable care in loving homes. The parents who have been working to care for these two children have likewise had to navigate the intricacies of ICWA, a burden they share with the other parent-members of the proposed class and a burden not imposed on parents seeking to adopt children of other races. The parents and children now before the Court share with the absent class members a common interest in obtaining a judicial declaration of the unlawfulness both of ICWA

and of the defendants' policies, and an order enjoining the use of those policies in the future. Indeed, as a practical matter, the named plaintiffs could not obtain this relief from ICWA for themselves without also obtaining it for all of the other members of the class. Declaratory and injunctive relief holding that ICWA is unconstitutional is the only adequate remedy to redress the named Plaintiffs' injuries, and any such declaration would inevitably benefit all class members.

There is no conflict with the interests of any class members. In particular, Indian children whose best interests would be served by a foster or adoptive placement with a member of an Indian tribe will be fully served by the relief sought by the representative plaintiffs because they seek application of Arizona's best interest of the child standard – the standard that applies to all non-Indian children. Application of that standard in some cases would result in placement with an on- or off-reservation Indian family.

The attorneys who have undertaken to represent the class are experienced in constitutional, administrative, and class action litigation at the federal level. They bring a breadth of experience and expertise to bear on this suit that would ordinarily be absent from an individual child custody proceeding. The class action suit provides a vehicle by which all of Arizona's Indian children and parents will be able to benefit from this representation. See Declaration of Clint Bolick (Exhibit 2); Declaration of Michael W. Kirk (Exhibit 3).

**II.    THE PROPOSED CLASS SATISFIES THE REQUIREMENTS FOR CERTIFICATION UNDER RULE 23(b).**

When the prerequisites of Rule 23(a) are satisfied, the class action may proceed provided it satisfies any one of the three criteria set forth under Rule 23(b). The named plaintiffs seek certification under Rules 23(b)(1) and (b)(2), or, in the alternative, under Rule 23(b)(3).

**A. The proposed class satisfies the requirements for an injunctive and declaratory class under Rule 23(b)(2).**

Class certification is proper under Rule 23(b)(2) because Defendants have consistently acted in a way that discriminates against all of the members of the class.

Rule 23(b)(2) permits class certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FRCP 23(b)(2).

This suit seeks injunctive and declaratory relief from the very type of class-wide conduct contemplated by Rule 23(b)(2). First, defendants have discriminated and continue to discriminate against the class members based upon their race. A suit to challenge class-based discrimination is the prime example of a class action properly certified under Rule 23(b)(2). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998) ("[Rule] 23(b)(2) was adopted in order to permit the prosecution of civil rights actions."). Class certification is particularly appropriate where, as here, the suit seeks to challenge "widespread rights violations of people who are individually unable to vindicate their own rights." *Baby Neal*, 43 F.3d at 63.

Second, the Arizona Indian children and Arizona parents seek only the declaratory and injunctive relief that Rule 23(b)(2) class actions ordinarily seek. These remedies will vindicate the rights of all class members and provide all of the members of the class with relief from these discriminatory laws, regulations, policies, and practices. *See, e.g.*, *Society for Individual Rights, Inc. v. Hampton*, 528 F.2d 905, 906 (9th Cir. 1975) ("As a practical matter, a judgment enjoining application of a discriminatory regulation or policy will affect the class against which the discrimination occurs.").

Consequently, certification should be granted under Rule 23(b)(2).

**B. The risk of inconsistent judgments warrants certification under Rule 23(b)(1).**

Absent class certification, there is a clear risk that inconsistent judgments would result in Defendants applying ICWA standards, procedures, and practices in some cases but not in others. A class action should be certified under Rule 23(b)(1) if the "prosecuti[on of] separate actions by or against individual class members would create a

risk of" either (A) "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class," or (B) "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." FRCP 23(b)(1)(A) & (B).

Certification is appropriate under Rule 23(b)(1)(A) if separate actions would create a "risk that defendants' efforts to comply with the judgment in one action will require them to act inconsistently with the judgment in another." *Sueoka*, 101 F. App'x at 654. Rule 23(b)(1)(A) applies to "cases where the party is obliged by law to treat the members of the class alike." *Traylor v. Avnet, Inc.*, 257 F.R.D. 521, 528 (D. Ariz. 2009). Arizona's Indian children should be treated consistently under the law. Class certification is appropriate under Rule 23(b)(1)(A), therefore, in order to ensure that Defendants are able to apply a consistent legal standard to these Indian children and these Arizona parents.

### C. Plaintiffs satisfy Rule 23(b)(3)'s requirements because the common question of the constitutionality of ICWA and its implementing regulations predominates and the class action provides a superior method for vindicating the rights of class members.

The proposed class also satisfies the criteria set forth under Rule 23(b)(3). A Rule 23(b)(3) class may be certified so long as two conditions are met: "[c]ommon questions must 'predominate over any questions affecting only individual members'; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.' " *Amchem Prods., Inc.*, 521 U.S. at 615 (quoting FRCP 23(b)(3)). The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623. *See also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). The proposed class meets this definition.

First, a common question of law predominates because ICWA raises the same

barriers to all Indian children who are seeking to ensure that their best interests are respected in the foster care and adoption process and to the parents who are seeking to care for and adopt those Indian children. ICWA is an obstacle standing in the path of each and every one of these children and these parents. By discriminating against these children and these parents, ICWA creates the required cohesion among the class. The question in this action is, ultimately, whether ICWA legally and constitutionally applies to the Indian children whom Arizona parents are trying to care for and to adopt.

Plaintiffs' proposed class also satisfies the four criteria that Rule 23(b)(3) enumerates to aid in assessing whether class resolution provides a superior method for the fair and efficient adjudication of the controversy.  First, class certification will not interfere with "the class members' interests in individually controlling the prosecution or defense of [their] separate [child custody] actions." Rule 23(b)(3)(A). The class action seeks declaratory and injunctive relief that will settle only the single common question of law that binds the class. This action does not seek to resolve the individual placement and adoption decisions over which individual class members would, naturally, wish to exercise full and independent control. This suit does not interfere, therefore, with the class members interests in controlling their child custody proceedings and vindicating their own respective best interests.

Second, although the class members are in different procedural stages in the Arizona child welfare system, there is no already-pending litigation concerning this controversy that would warrant refusing to certify the class. Rule 23(b)(3)(B). ICWA imposes burdens upon children in every phase of the process, requiring that the best interests of Indian children be subordinated to, indeed disregarded in favor of, the interests of the tribe. Resolution of the constitutional question raised in this action will benefit all of these children, therefore, regardless of where their cases might currently be in the child welfare system.

Third, avoiding the costs and the inefficiency of litigating the constitutionality of ICWA in individual cases strongly favors resolving this action in a single judicial forum.

Rule 23(b)(3)(C). The children and the parents who make up the proposed class would derive no benefit from being forced to retain separate counsel in order to litigate the constitutionality of ICWA. Litigating this constitutional question in a single class action will permit both the individual class members and the Arizona child welfare system to focus their limited resources in each individual child custody proceeding on the question that is of ultimate importance to these children and their prospective parents: What outcome would be in the best interest of this child?

Finally, Plaintiffs foresee no potential problems that could arise in managing the case as a class suit. Rule 23(b)(3)(D). No child ultimately benefits from being subject to an unconstitutional law. Although there may arise situations in which an individual child, or individual biological, foster, or adoptive parent, might deem it preferable to have their proceeding adjudicated before a tribal court, a ruling that ICWA is unconstitutional would in no way prevent that action from being transferred to an Indian court under Arizona laws applicable to all children.  There may arise—indeed, there almost certainly will arise—a situation in which an Indian relative is the best prospective parent for a child; nothing in Arizona law would stand in the way of awarding custody to that Indian parent. The sole result of this action would be that these suits would be decided based upon the best interests of the child, not the interests of a tribe. All this suit seeks is that the best interests of all Arizona children, both Indian and non-Indian, be afforded the same respect and protection of the law.

Thus, this suit satisfies the requirements of Rule 23(b)(3). Plaintiffs seek certification under Rule 23(b)(3), however, only should the Court first conclude that Rule 23(b)(1) and (b)(2) are somehow inapplicable. While the Federal Rules of Civil Procedure permit certification under all three provisions of Rule 23(b), "[w]hen either subsection (b)(1) or (b)(2) is applicable, . . . (b)(3) should not be used, so as to avoid unnecessary inconsistencies and compromises in future litigation." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1175 (8th Cir. 1995). *See also* 7Aa CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §§ 1772, 1775, 1784.1 (3d

ed.). For this reason, Plaintiffs request that the Court certify this suit under Rule 23(b)(3) only should it conclude that certification under Rules 23(b)(1) and (b)(2) would be inappropriate.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant the motion for class certification pursuant to Rule 23(b)(1) & (b)(2), or, in the alternative, pursuant to Rule 23(b)(3).

**RESPECTFULLY SUBMITTED** this 21st day of August, 2015 by:

/s/ Harold Reeves
Clint Bolick (021684)
Aditya Dynar (031583)
Courtney Van Cott (031507)
**Scharf-Norton Center for Constitutional Litigation at the GOLDWATER INSTITUTE**

Michael W. Kirk (admitted *pro hac vice*)
Brian W. Barnes (admitted *pro hac vice*)
Harold S. Reeves (admitted *pro hac vice*)
**COOPER & KIRK, PLLC**

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

Document Electronically Filed by ECF and copies mailed this 21st day of August, 2015 to:

Gregory A. McKay
Director, Ariz. Dept. of Child Safety
1717 West Jefferson Street
Site Code 005A
Phoenix, AZ 85007

John S. Leonardo
United States Attorney, District of Arizona
U.S. Department of Justice
Two Renaissance Square
40 North Central Avenue, Suite 1200
Phoenix, AZ 85004-4408

Kevin K. Washburn
Assistant Secretary
Bureau of Indian Affairs
U.S. Department of the Interior
MS-3658-MIB
1849 C Street, N.W.
Washington, D.C. 20240

Sally Jewell
Secretary of the Interior
U.S. Department of the Interior
1849 C Street, N.W.
Washington, D.C. 20240

Loretta E. Lynch
U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

/s/ Kris Schlott
Kris Schlott