Linus Everling (SBN 019760)
Thomas L. Murphy (SBN 022953)
Gila River Indian Community
525 W. Gu u Ki
P.O. Box 97
Sacaton, Arizona 85147
(520) 562-9760
linus.everling@gric.nsn.us
thomas.murphy@gric.nsn.us

Donald R. Pongrace (pro hac vice)
 (D.C. Bar No. 445944)
Merrill C. Godfrey (pro hac vice)
(D.C. Bar No. 464758)
Akin Gump Strauss Hauer &
Feld, LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036-1564
(202) 887-4000
dpongrace@akingump.com
mgodfrey@akingump.com
*Counsel for Gila River Indian Community*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| A.D. and C. by CAROL COGHLAN CARTER, their next friend, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>KEVIN WASHBURN, in his official capacity as Assistant Secretary – Indian Affairs, et al.,<br><br>Defendants. | Case No. 2:15-cv-1259<br><br>**THE GILA RIVER INDIAN COMMUNITY'S REPLY IN SUPPORT OF ITS MOTION TO INTERVENE AS DEFENDANT** |

Plaintiffs' complaint raises an as-applied constitutional challenge to ICWA and specifically attacks the Gila River Indian Community's particularized and sovereign interests in its relationship with baby girl A.D. Compl. (Doc. 1) ¶ 5. That is, it challenges ICWA's protection and prioritization of tribal-child relationships both facially and as applied to the Community's relationship with baby girl A.D. *See id.* Plaintiffs specifically allege that this Court should downgrade the importance of the Community's

relationship with A.D., and should strike down the Community's rights to seek transfer of A.D.'s custody proceedings to its own tribal jurisdiction in a case that is now pending in state court. And yet plaintiffs argue that the Community has no right to defend its rights in this Court and should be relegated to the status of a citizen interest group, represented by the United States as a constituent, no different than any American citizen or any other tribe. This contravenes the letter and spirit of Rule 24.

On its face, plaintiffs' procedural argument that the Community is superfluous under Rule 24 is an extension of its incorrect argument on the merits. Its case on the merits is founded on the incorrect argument that an Indian child's relationship with his or her tribe does not deserve the weight and dignity that ICWA affords it. By attempting to exclude the Community from the case, the plaintiffs ask this Court to denigrate the tribe's importance in these proceedings, just as plaintiffs' arguments on the merits would marginalize the tribe. They would have this Court decide, for example, that all tribal-child relationships are merely racial, and would effectively curtail tribal jurisdiction over custody proceedings for Indian children, while excluding one of the two tribes they have singled out. The Community is not a mere interest group, but a sovereign with a child to protect, and ICWA reflects that sovereign role. Thus, as discussed further below, the Community's interests are aligned with but not identical to those of the United States, who has consented to have the Community join this case as defendant so that the Community can articulate its own distinct tribal interests. Accordingly, the Community asks that the Court grant intervention under either Rule 24(a)(2) or Rule 24(b).

I.  **THE COMMUNITY MEETS THE STANDARD FOR INTERVENTION AS OF RIGHT**

The Ninth Circuit requires that district courts "follow the guidance of Rule 24 advisory committee notes that state that '[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.'" *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822

(9th Cir. 2001) (alteration in original) (quoting Fed. R. Civ. P. 24, 1966 Advisory Comm. note).  The inquiry is "guided primarily by practical and equitable considerations." *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).  Rule 24 requires a "common sense" approach.  *See United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 983 (2d Cir. 1984) (Friendly, J.) ("[A] very strong interest . . . may warrant intervention upon a lesser showing of impairment or inadequacy of representation.").

Of the four requirements for intervention as of right, plaintiffs concede the first three.  They concede that the motion is timely.[1]  They concede that the Community has a significant protectable interest in this case.  And they concede that deciding the case may impair or impede the Community's ability to protect that interest.  As to the fourth element—whether existing parties adequately protect the Community's significant, jeopardized interests—analysis under controlling Ninth Circuit cases shows that the Community's interests are not adequately protected, and that the presumptions plaintiffs rely on do not control the result here.

**A.   The Community Satisfies the Three-Part *Arakaki* Test for Inadequate Representation Because It Has Already Raised Distinct Arguments and Interests That Were Not Adequately Addressed by Existing Parties**

The Ninth Circuit requires that adequacy of representation be evaluated by three factors.  All three focus on whether the proposed intervenor and the existing parties will make *only* duplicative arguments: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect."  *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003).  Here, the

---

[1] In the section of their brief addressing intervention as of right, Plaintiffs make no mention of the timeliness requirement, and have therefore conceded it with respect to Rule 24(a)(2).  Even in the section on permissive intervention, where they do briefly state that "Gila River's motion to intervene has been delayed in a way that unduly prejudices the Plaintiffs," this conclusory statement is not backed by any argument, and the brief instead "assum[es] the motion is timely."  Doc. 72 at 9.

Community has already met this test by virtue of the proposed motion to dismiss it attached to its motion to intervene. Comparing defendants' motions to dismiss with the Community's—a comparison Plaintiffs fail to make—it is apparent that the Community has made arguments that the existing parties did not make and were not willing to make. The Community has offered a necessary element neglected by other parties. Therefore, the Community has a right to intervene to protect its inadequately protected interests. Three examples make this point.

First, the Community makes a full defense of the tribal-child relationship as a core element protected by ICWA, while the existing defendants make only the briefest mention of the tribal-child relationship and focus instead on jurisdictional issues. The Community's own relationship with baby A.D. is at stake in the as-applied challenge to ICWA in this case, and the Community's arguments focus on that distinct interest in the tribal-child relationship, a particularized interest not shared by any existing defendant. Thus, the Community argues that ICWA provides "*benefits* unavailable to children not subject to the Act's protections," which Plaintiffs "wrongly treat . . . as harms." Doc. 47-1 at 9. While the federal defendants argue that ICWA's use of tribal classifications is not "impermissible," Doc. 42 at 23, they do not fully articulate that ICWA provides vital *benefits* to Indian children. The United States' more limited argument is not surprising, since the Department of Justice is not an Indian tribe and does not litigate the kinds of child custody disputes such as those that are under collateral attack here, those regarding the placement of A.D. and C.

Second, Section III of the Community's motion to dismiss makes specific arguments in defense of ICWA's tribal-court-transfer provision, § 1911(b), that the existing defendants did not make. The Community, as a sovereign whose courts hear transferred cases, argues that this provision is constitutional "because Congress's power to legislate for the protection and benefit of Indians operates *in personam* and is not limited to any land base or reservation." Doc. 47-1 at 11. In support of this argument

1  that tribal jurisdiction extends over members as well as land, the Community provides
2  "many other examples of legislation protecting and benefiting Indians without regard to
3  location on or off a reservation." *Id.* at 12.  And the Community further argues that
4  because "[t]ribal jurisdiction over custody of Indian children" is based on "a tribe's
5  sovereignty over its own members and their children," it is not surprising that any couple
6  seeking to adopt an Indian child should have to submit to the child's tribe's jurisdiction.
7  *Id.* at 13.  Again, the Community makes this distinct argument because its interests here
8  are distinct:  the Community is specifically named in the complaint as having "announced
9  it will likely seek in state court a transfer of the [A.D.] case to tribal court."  Compl.
10 (Doc. 1) ¶ 19.  Plaintiffs' case collaterally attacks any potential transfer in that state court
11 case, where the Community is the tribe that would assume jurisdiction.
12      Third, the Community argues that for purposes of the First Amendment, "Indian
13 tribes are not mere associations," "on par with the Boy Scouts of America," but rather are
14 sovereign entities with power over their members.  Doc. 47-1 at 15.  This argument
15 defending the Community's tribal sovereignty was not raised by any other defendant.
16      Any of these arguments, if accepted, would preserve Community interests where
17 the existing defendants' arguments may not.  By not raising these arguments, the existing
18 parties may not adequately protect the Community's distinct tribal interests.  Therefore,
19 the Community has met *Arakaki*'s three-part standard for intervention as of right.
20
21      **B.  Rebuttable Presumptions Against Intervention Do Not Exclude the Community Here Because It Has Narrower Interests Than the Existing Defendants' Interests in Defending Their Own Laws**
22
23      As plaintiffs note, in general, the "burden on proposed intervenors in showing
24 inadequate representation is minimal, and [is] satisfied" by showing "that representation
25 of their interests 'may be' inadequate." *Arakaki,* 324 F.3d at 1086 (quoting *Trbovich v.*
26 *United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)).  Nevertheless, in evaluating the
27 first factor in the *Arakaki* test, *i.e.,* in comparing the intervenor's interests with existing
28

1 parties' interests, a presumption of adequacy may arise "[i]f the applicant's interest is
2 identical to that of one of the present parties," or if the government acts "on behalf of a
3 constituency that it represents." *Id.* These presumptions can always be rebutted by a
4 "compelling showing" of inadequacy of representation. *Id.*

5 These presumptions do not apply here because this is among the category of cases
6 expressly distinguished by the Ninth Circuit in *Arakaki*, where "the intervenors' interests
7 are narrower than that of the government and therefore may not be adequately
8 represented." *Id.* at 1087. The Community has narrower and more parochial interests in
9 its relationship with baby girl A.D., and in the state court proceeding and potential
10 transfer to tribal court that are under collateral attack here, than the existing defendants'
11 broader interests in their own laws. The plaintiffs' as-applied challenge leaves no doubt
12 of that. If the plaintiffs' as-applied challenge were to survive a motion to dismiss, the
13 Community's particularized interests would come into even sharper focus as A.D.'s state
14 court proceedings become more specifically relevant.

15 When such narrower interests are at stake, an intervenor brings different
16 arguments to the table, as has happened here (*see, e.g.*, Section III of the Community's
17 proposed motion to dismiss). Such narrower interests mean that under the first *Arakaki*
18 factor, there can be no presumption because interests are not identical. A governmental
19 party with more generalized interests in upholding its laws will not "undoubtedly" make
20 the arguments of a proposed intervenor who shares the broader goal but has interests that
21 are more parochial. *See Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489,
22 1499 (9th Cir. 1995) *abrogated on other grounds by Wilderness Soc. v. U.S. Forest Serv.*,
23 630 F.3d 1173 (9th Cir. 2011); *Californians for Safe & Competitive Dump Truck Transp.
24 v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998); *Mille Lacs Band of Chippewa Indians
25 v. Minnesota*, 989 F.2d 994, 1000-01 (8th Cir. 1993).

26 Plaintiffs admit and even depend upon the Community's more particularized
27 interests here to make their own case. They allege that baby girl A.D. is an "Indian
28 child" under ICWA by alleging her membership (or eligibility for membership) in the

1  Community, *see* Compl. (Doc. 1) ¶ 9, and, consequently, that the Community is her tribe,
2  i.e., the "Indian child's tribe" under ICWA.  They allege that the Community is seeking
3  transfer of A.D.'s case to its own courts. *Id.* ¶ 19.  These interests of the Community give
4  rise to the more specific arguments cited above, not raised by existing parties, defending
5  the transfer provisions and the benefits of the Community's tribal-child relationship with
6  A.D.  As a matter of law, under the distinction set out in *Arakaki* for narrower interests,
7  these more specific interests and distinct arguments cannot be brushed off as merely
8  "intense desires."  Pl's Opp., Doc. 72 at 8.

9         In *Forest Conservation Council*, 66 F.3d at 1491-92, which was among the cases
10 distinguished in *Arakaki*, the plaintiff environmental group had alleged violations of
11 NEPA and other federal laws and sought a broad injunction against the federal
12 government's permitting of timber sales.  Proposed intervenors Arizona and Apache
13 County shared the government's interest in defeating the injunction but had particularized
14 interests in specific lands that would be subject to the injunction, and taxes and fees that
15 would be affected.  *See id.* at 1492-93.  The Ninth Circuit, reversing the district court's
16 denial of intervention as of right, held that "[i]nadequate representation [by the
17 government] is most likely to be found when the applicant asserts a personal interest that
18 does not belong to the general public."  *Id.* at 1499.  It reasoned that representation was
19 likely inadequate because "[t]he Forest Service is required to represent a broader view
20 than the more narrow, parochial interests of the State of Arizona and Apache County." *Id*.
21 Here, the Community's particularized interests in A.D.'s relationship with her tribe, in her
22 pending state-court proceedings, and in the potential for transfer to tribal court are
23 analogous to the particularized interests of Arizona and Apache County in specific lands
24 and taxes that would be affected by the injunction sought in that case.  Denial of
25 intervention here would be reversible error.

26        *Safe & Competitive Dump Truck*, *supra*, also distinguished in *Arakaki,* makes the
27 same point.  There, a trade group sued California state agencies to enjoin the enforcement

of a state wage law.  *See* 152 F.3d at 1186.  A trade union whose members benefited from the law shared the state's broad interest in defending the law, but successfully moved to intervene as of right, and the Ninth Circuit affirmed.  The court reasoned that "because the employment interests of [the labor union's] members were potentially more narrow and parochial than the interests of the public at large, [the labor union showed] that the representation of its interests . . . may have been inadequate."  *Id.* at 1190.

This point is also made by *Wildearth Guardians v. Jewel*, No. 2:14-CV-00833 JWS, 2014 WL 7411857, at *3 (D. Ariz. Dec. 31, 2014), cited by plaintiffs (Doc. 72 at 2). Energy interests were allowed to intervene to defend the federal government's refusal to protect the Gunnison's prairie dog:  "While the Proposed Intervenors and the [U.S. Fish and Wildlife] Service *want the same result*, they have *distinct reasons* for doing so.  The Service is merely interested in upholding its administrative process and determination, while the Proposed Intervenors seek[] to prevent the listing of the GPD and to provide a rigorous defense as to the impact of oil and gas activities on the GPD."  *Id.* (emphasis added).  Similarly, here, the Community has distinct reasons to protect its relationship with A.D.

Likewise, in *Mille Lacs Band*, the Mille Lacs Band of Chippewa Indians sued Minnesota for relief from the state's regulation of hunting, fishing, and gathering over certain land.  *See* 989 F.2d at 996.  A group of counties and a group of landowners were allowed to intervene as defendants.  *Id.* at 997.  The Eighth Circuit acknowledged that the state had a general interest in protecting fish and game for the benefit of all the people of the state, but the counties had interests in "tax-forfeited land that they manage, derive revenue from, and sell" and (2) the landowners had interests in property values that could be affected by depleted fish and game stocks.  *Id*.  Those interests were "narrower and more parochial" than the state's interests in protecting fish and game generally and, accordingly, "no presumption of adequate representation arises." *Id.* at 1001.

By contrast, in *South Dakota ex rel. Barnett v. U.S. Dep't of Interior*, 317 F.3d 783

(8th Cir. 2003), the United States was acting purely as a trustee with respect to a specific res (the acquisition of trust lands) for a specific tribe, so the trustee's and beneficiary's interests were truly identical. That is not the case here.

Here, as in *Forest Conservation Council, Safe & Competitive Dump Truck,* and *Mille Lacs Band*, the Community asserts interests that overlap with the existing parties' broader interests, i.e., the constitutionality of the challenged statutes. And as in those cases, the Community's particularized interests may not be adequately protected by existing governmental parties' defense of the broader interests.

*Arakaki* itself is also distinguishable on additional grounds. In *Arakaki*, the proposed intervenors were not a sovereign tribe, but an assortment of native Hawaiian individuals. And there was already a similarly situated intervenor, an organization of native Hawaiians, who were on record as being willing to raise the proposed intervenors' arguments. *See* 324 F.3d at 1087. *Arakaki* shows that the presumption of adequacy serves to prevent the floodgates from opening a case up to the general public or to an entire benefited class whenever the legality of a statute that benefits them is at issue. By contrast, here the Community is one of only two sovereign tribes named in the complaint whose particularized interests have come under attack in the course of plaintiffs' broader arguments. The Court should grant intervention as of right.

## II. DENYING PERMISSIVE INTERVENTION WOULD BE INEQUITABLE

Plaintiffs' argument against permissive intervention does not address the anomaly of asking this Court to decide the legal and constitutional significance of the Community's relationship to A.D., and its right to seek jurisdiction over her custody proceedings, without the Community in the courtroom. Denying permissive intervention to A.D.'s own tribe would violate the equitable principles underlying Rule 24.

Instead, plaintiffs baldly assert that the addition of a single defendant is the straw that will break the camel's back. They do not explain with any specificity how adding

9

one more defendant to this case—one of the two tribes named in their own complaint—will cause any practical impediment.  Instead they say, in effect, that allowing additional parties to intervene is always harmful and wrong.  If that were so, the liberal purposes of Rule 24 would be frustrated.  Even in the ancient case plaintiffs cite for this supposed logic, *Crosby Steam Gage & Gage Valve Co. v. Manning, Maxwell & Moore, Inc.*, 51 F. Supp. 972, 974 (D. Mass. 1943), the court granted intervention.  "[D]elay in and of itself does not mean that intervention should be denied.  [Rule 24(b)(3)] requires the court to consider whether intervention will '*unduly delay*' the adjudication."  7C Fed. Prac. & Proc. Civ. § 1913 (3d ed.) (emphasis added).  Plaintiffs have not explained how intervention would cause delay, much less established that any minor delay would be "undue."  This is not a case where 700 outsiders have attempted to intervene at the eleventh hour in an SEC prosecution of a Ponzi scheme.  *See S.E.C. v. TLC Investments & Trade Co.*, 147 F. Supp. 2d 1031 (C.D. Cal. 2001) (denying permissive intervention).

In addition to the obvious equity in allowing A.D.'s own tribe to participate here as a party, the specific factors to consider when deciding permissive intervention strongly favor the Community's intervention here.  In *Spangler v. Pasadena Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977), the court identified eight factors that district courts may consider when deciding permissive intervention: (1) the nature and extent of the intervenor's interest; (2) standing to raise relevant legal issues; (3) the legal position the intervenor seeks to advance; (4) the probable relation of the intervenor's legal position to the merits of the case; (5) whether changes have occurred in the litigation so that intervention that was once denied should be reexamined; (6) whether the intervenor's interests are adequately represented by other parties; (7) whether intervention will prolong or unduly delay the litigation; and (8) whether an intervenor seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.  *Id.*

Plaintiffs strain to assert that the *Spangler* factors "weigh strongly against" the

1 Community's intervention, but the opposite is plainly true.  The first two factors favor
2 intervention, because Plaintiffs do not contest that the Community has a "significant
3 protectable interest" or that it has standing to raise relevant legal issues.  The third factor
4 also favors intervention, because the legal position the Community seeks to advance is
5 narrower than the position that the existing parties advance.  The fourth factor similarly
6 weighs in favor of intervention, because of the close relationship between the
7 Community's interests and the issues at stake.  The fifth factor does not apply here,
8 because intervention has not been denied.  The sixth factor has already been refuted, and
9 at any rate, at least with respect to permissive intervention, "is clearly a minor factor at
10 most," *United States v. Columbia Pictures Indus., Inc*., 88 F.R.D. 186, 189 (S.D.N.Y.
11 1980).  The seventh factor, undue delay, is, as shown above, unsupported.  And finally,
12 the eighth factor weighs heavily in the Community's favor:  in resolving any as-applied
13 constitutional challenges, the Community can address factual issues relevant to baby girl
14 A.D. in a manner that existing defendants cannot.  Further, the Community can
15 significantly contribute to a just and equitable adjudication of the legal questions, because
16 only the Community can provide a tribal perspective.

17 Denial of intervention can be reversible error.  Amicus status is not adequate for
18 the Community because it gives no rights to participate on appeal—and this case surely
19 will be appealed, however it is decided here.  Nevertheless, if intervention is denied, the
20 Community's views should at least be considered as those of an amicus.  This would
21 lessen the amount of prejudice to the Community in these proceedings while any denial
22 of intervention is on appeal.

## CONCLUSION

The Court should grant the Community's motion to intervene under Rule 24(a)(2),
or in the alternative under Rule 24(b).  In the event the Court denies the motion, it should
provide for the proposed motion to dismiss to be filed as an amicus brief.

11

Respectfully submitted,

Linus Everling (SBN 019760)
Thomas L. Murphy (SBN 022953)
Gila River Indian Community
525 W. Gu u Ki
P.O. Box 97
Sacaton, Arizona 85147
(520) 562-9760
linus.everling@gric.nsn.us
thomas.murphy@gric.nsn.us

Donald R. Pongrace (pro hac vice)

*/s/ Merrill C. Godfrey*
Merrill C. Godfrey (pro hac vice)
Akin Gump Strauss Hauer & Feld, LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036-1564
(202) 887-4000
dpongrace@akingump.com
mgodfrey@akingump.com
*Counsel for Gila River Indian Community*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 12, 2015, I electronically transmitted the foregoing document to the Clerk's Office using the CM-ECF System for filing and transmittal of a Notice of Electronic Filing to the CM-ECF registrants on record, including:

Clint Bolick (021684)
Aditya Dynar (031583)
Scharf-Norton Center for
Constitutional Litigation at the
Goldwater Institute
500 E. Coronado Rd.
Phoenix, Arizona 85004
(602) 462-5000
litigation@goldwaterinstitute.org

Michael W. Kirk
Brian W. Barnes
Harold S. Reeves
Cooper & Kirk, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
*Attorneys for Plaintiffs*

Steven Edward Miskinis
US Department of Justice
Land & Natural Resources Division
PO Box 44378
Indian Resources Section
Washington, DC 20026
202-305-0262
202-305-0271 (fax)
steven.miskinis@usdoj.gov
*Attorneys for Defendants Washburn and Jewell*

John Stephen Johnson
Gary N Lento
Office of the Attorney General – Phoenix

1275 W. Washington St.
Phoenix, AZ 85007-2997
602-542-9948
john.johnson@azag.gov

Dawn Rachelle Williams
Office of the Attorney General
3939 S Park Ave., Ste. 180
Tucson, AZ 85714
520-746-4443
520-746-4459
dawn.williams@azag.gov
*Attorneys for Defendant McKay*

                                                            */s/ Merrill C. Godfrey*