*Ethel Branch, Attorney General*
*The Navajo Nation*

**Katherine Belzowski, Attorney**
*NAVAJO NATION DEPARTMENT OF JUSTICE*
Post Office Box 2010
Window Rock, Navajo Nation (AZ) 86515
Phone: (928) 871-6937
Fax: (928) 871-6177

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| A.D. and C. by Carol Coghlan Carter, their next friend S.H. and J.H. a married couple; M.C. and K.C. a married couple; for themselves and on behalf of a class of similarly-situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>Kevin Washburn, in his official capacity as Assistant Secretary of Bureau of Indian Affairs; Sally Jewell, in official capacity as Secretary of Interior, U.S. Department of the Interior; Gregory A. McKay, in his official capacity as Director of the Arizona Department of Child Safety,<br><br>Defendants. | No. 2:15CV-01259-PHX-NVW |

## MOTION TO INTERVENE

The Navajo Nation (the "Nation"), a sovereign Indian nation, moves pursuant to Fed. R. Civ. P. 24 to intervene as a defendant. Filed with this motion is a proposed Motion to Dismiss. *See* Fed. R. Civ. P. 24(c). The parties have stated their positions on this motion through counsel as follows: Defendants Kevin Washburn and Sally Jewell consent; Defendant Gregory McKay takes no position; the Plaintiffs oppose.

1

### **MEMORANDUM OF POINTS AND AUTHORITIES**

The Nation moves to intervene as of right, under Fed. R. Civ. P. 24(a)(2), or in the alternative, with permission of the Court under Fed. R. Civ. P. 24(b)(1)(B).

**I.   THE NATION MEETS THE STANDARD TO INTERVENE AS OF RIGHT UNDER RULE 24(a)(2).**

In accordance with Rule 24(a)(2), "the court must permit anyone to intervene" where four requirements are met: (1) the motion to intervene is timely, (2) the movant "claims an interest relating to the property or transaction that is the subject of the action", (3) disposition "of the action may as a practical matter impair or impede the movant's ability to protect its interest", and (4) existing parties do not adequately represent the interest claimed by the movant. Fed. R. Civ. P. 24(a)(2); *See United States v. City of Los Angeles,* 288 F.3d 391, 397 (9th Cir. 2002). In evaluating these requirements, courts "are guided primarily by practical and equitable considerations," *Donnelly v. Glickman,* 159 F.3d 405, 409 (9th Cir.1998), generally construing conflicts in favor of intervention, *United States ex rel. McGough v. Covington Techs, Co.*, 967 F.2d 1391, 1394 (9th Cir. 1992).

**A.  The Nation's Motion is Timely.**

Timeliness is evaluated by "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *W. Coast Seafood Processors Ass'n v. Natural Res. Def. Council, Inc.,* 643 F.3d 701, 708 (9th Cir. 2011). The mere lapse of time, without more, is not necessarily a bar to intervention. *Id*. Pursuant to this standard, the Nation's motion is timely.

It has been a little over four months since Plaintiffs filed this action. The proceeding is still in its initial stages with the parties currently in the process of filing and responding to pre-trial motions. Based on the fact the Court has yet to substantively and substantially engage the

issues of the case, parties will not be prejudiced by the Nation's Motion for Intervention. The period of four months it has taken the Nation to file this is a reasonable amount of time for the Nation to become aware of the action, evaluate its interests in the action, and prepare a motion to intervene and proposed motion to dismiss. Based on these facts the Nation's motion for intervention is timely.

### B. The Nation has an Interest in the Subject of this Action.

To demonstrate a significant protectable interest, under Rule 24(a)(2), an applicant must establish (1) the interest is protectable under some law and (2) that there is a relationship between the legally protected interest and the claims at issue. *See Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011).

#### 1. Baby boy C is an enrolled member of the Navajo Nation and therefore the Nation has an interest in his welfare.

Indian Child Welfare Act (ICWA) protects not only the interests of individual Indian children and families, but also the interest of the tribes themselves. *See Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 49 (1989). It is apparent from the plain language of ICWA that one of its principal purposes is to protect the stability of Indian tribes. *See* 25 U.S.C. § 1901(3) ("there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children"); 25 U.S.C. § 1902 (declaring the policy of promoting stability and security of Indian tribes through the establishment of minimum Federal standards for the removal of Indian children from their families); *see also* House Report at 23, U.S. Code Cong. & Admin. News 1978, at 7546 (ICWA seeks to protect the rights of the Indian community and tribe in retaining its children in its society). Congress, in ICWA, recognized the strong interest of tribes in the placement of their Indian children.

Baby boy C is an enrolled citizen of the Navajo Nation. *See* Exhibit 1 (Certificate of Indian Blood from Navajo Office of Vital Records regarding baby boy C's citizenship). This is contrary to Plaintiff's characterization in the Complaint, which does not clearly identify baby boy C as an enrolled citizen of the Navajo Nation. Complaint at ¶ 10 (stating baby boy C is eligible for membership in or is already an enrolled member of the Navajo Nation). Therefore, as the child is enrolled, the Nation's interest in the outcome of his state child custody proceedings is a legal interest expressly protected under ICWA.

The Nation's interest in the placement of baby boy C, as articulated under ICWA, is directly related to the cause of action in this case. Plaintiffs are seeking to prohibit the application of ICWA to Navajo children in state custody by declaring certain provisions of ICWA unconstitutional. Complaint at ¶¶ 88-100. Without these provisions, the Nation would lose its ability to participate in state placement proceedings of its enrolled citizens, such as baby boy C, directly affecting its interests as articulated in ICWA.

### 2. The Nation has an interest in its ability to define the requirements of its citizenship.

The heart of this case attacks the Nation's ability to determine its own citizenship and protect its children who are enrolled citizens. The Nation has a recognized legal interest in defining the eligibility requirements of its citizenship. A tribe's power to define its own citizenship, as it chooses, has long been recognized as central to its existence as an independent political community. *See Williams v. Gover*, 490 F.3d 785, 789 (9th Cir. 2007); *see also Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 72, (1978). This broad authority has been placed under attack by Plaintiffs, who allege ICWA's reliance on the Nation's definition of citizenship results in the provisions of ICWA being unconstitutional.

Plaintiffs are asking this Court to find ICWA unconstitutional under the equal protection guarantee of the 5th amendment, on the theory ICWA's provisions are based solely on the race of the child and the adults involved. Complaint at ¶ 94. In support of this allegation, Plaintiffs cite specifically to the Navajo Nation Code's definition of citizenship to demonstrate that citizenship is based solely on race. Complaint at ¶ 40. Plaintiffs are not alleging that the plain language of ICWA uses inappropriate race based criteria, but that ICWA's definition of "Indian child" is based on race since it relies on tribal definitions of membership, which usually requires the use of blood quantum or lineage. Plaintiffs are in essence attacking is the Nation's right, as a sovereign Indian nation, to determine its own citizenship requirements. The Nation has a legal interest in defending its ability to define its citizenship decisions made under its sovereign authority, which would be affected if the court finds ICWA's reliance on tribal citizenship unconstitutional.

### C. The Nation's interest in defining its citizenship and in the placement of its children would be harmed by the disposition of Plaintiff's claim.

If Plaintiffs were to prevail the Nation would be prohibited from enforcing many of the provisions of ICWA, such as the provision allowing the Nation to seek transfer of cases to tribal court. The Nation has an interest in seeing that its children remain connected to the Navajo community and by making sure that Indian child welfare determinations are not based on standards which may foreclose a child's placement with an Indian family. *See* House Report 95-1386, at 23, U.S.Code Cong. & Admin. News, at 7546 (establishing standards for placement of Indian children in foster or adoptive homes). The Nation also has an interest in its current citizenship requirements, which would be severely affected if the court made a determination that ICWA was unconstitutional because it defers to Navajo's citizenship criteria. Such a determination may have lasting effects on how the Nation can define it citizenship and may

5

affect other federal laws aimed at providing benefits and funding to the Nation. As a practical matter, the Nation can prevent these harms to its interests only by successfully intervening here and prevailing on its defenses.

### D. None of the Defendants Adequately Represent the Nation's Interests as a Federally Recognized Tribe.

In determining whether a would-be intervenor's interests will be adequately represented by an existing party, "courts consider three factors: (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect." *Southwest Ctr. for Biological Diversity v. Berg,* 268 F.3d 810, 822 (9th Cir.2001). While the prospective intervenor bears the burden of demonstrating that the existing parties may not adequately represent its interest, *Id.*, the burden is minimal, and will be satisfied if they demonstrate that representation of their interests "may be" inadequate, *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003), *as amended* (May 13, 2003). In addition, even though there is a presumption of adequacy when the government is in acting on behalf of a constituency that it represents, *United States v. City of Los Angeles*, 288 F.3d 391, 401 (9th Cir. 1997), intervention will be permitted where the intervenors' interests are narrower than that of the government, *Arakaki*, 324 F.3d at 1088.

The Nation has specific interests in this suit that are narrower than and unique from the interests of the existing parties. While all the defendants have an interest in having the constitutionality of ICWA upheld, the Nation has a narrower interest in the placement of baby boy C and a unique interest in defending its citizenship criteria against attack.

6

The Nation's interest in the placement of baby boy C is narrower than the defendants' interest in upholding the constitutionality of ICWA. The Nation has a more specific interest in seeing that its relationship with baby boy C, an enrolled citizen, is preserved. The Nation is able to preserve this relationship by participating in state court child custody proceedings, 25 U.S.C. § 1911(c) and in foster/preadoptive care placement preferences, 25 U.S.C. § 1915(b), which allow for Nation's citizens to have preference in the placement of the Nation's minor children in state custody, such as baby boy C. Through these provisions, the Nation is able to maintain a connection with the minor child and participate in the decision making process. The Nation's interest in maintaining a connection with baby boy C is a much narrower interest than the interests of the other defendants in this case.

The Nation's interest in protecting how it defines its citizenship is unique and not directly aligned with the present parties to this case. The federal has an interest in upholding ICWA and the state government has an interest in upholding provisions of ICWA which have been incorporated into state law and judicial procedure. Since Congress did not legislate how tribes should define their citizenship, the government does not have the same interest as the Nation in arguing the legitimacy of the Nation's citizenship criteria. While the federal government has acknowledged the general concept that Plaintiff's view on blood quantum is a gross oversimplification, Federal Defendants' Motion to Dismiss at 23 n.12, it has not made arguments specifically regarding the Nation's citizenship process or requirements. Therefore the Nation would add a necessary element to the proceedings by defending its ability to determine its own citizenship.

## II. IN THE ALTERNATIVE, THE NATION ALSO QUALIFIES UNDER RULE 24(b)(1)(B) FOR PERMISSIVE INTERVENTION.

Alternatively, the Nation moves for permissive intervention pursuant to Rule 24(b)(1)(B). The only requirements for permissive intervention are that the motion be timely filed and that it contain a claim or defense that shares a common question of law or fact with the main action. Fed. R. Civ. Pro. 24(b)(1)(B). If there is a common question of law or fact, the requirement of the rule has been satisfied and it is then discretionary with the court whether to allow intervention. 7C Wright, Miller & Kane, Federal Practice and Procedure § 1911, 357–63 (2d ed.1986).

While this Court has broad discretion to make this determination, it should consider a number of factors in deciding whether to permit intervention, including: (1) the nature and extent of the intervenors' interest, (2) their standing to raise relevant legal issues, (3) the legal position they seek to advance, (4) the probable relation to the merits of the case, (5) whether changes have occurred in the litigation so that intervention that was once denied should be reexamined, (6) whether the intervenors' interests are adequately represented by other parties, (7) whether intervention will prolong or unduly delay the litigation, and (8) whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented. *Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011).

For the reasons previously stated, this request is timely. Factors one through four weigh heavily in the Nation's favor for intervention. As mentioned above, the Nation has a direct interest in ICWA's validity, including the right to participate in the state placement proceedings of baby boy C. It also has an interest in the protecting its ability to determine its citizenship criteria. A decision in this matter could affect federal legislation regarding Indian nations that

8

base Indian status on enrollment in an Indian nation. This would seriously affect Congress's ability to legislate issues regarding Indian nations. It may also have profound effects on the ability of Indian nations to give citizenship preference to their own citizens. Such employment preference has been upheld by the courts as non-racial since it is based on citizenship in a political group. *See E.E.O.C. v. Peabody W. Coal Co.*, 773 F.3d 977, 988 (9th Cir. 2014) (concluding that the Navajo hiring preferences are based on a political classification within the meaning of *Mancari*). Federal legislation recognizing such preferences might be disallowed if citizenship is found to be racially based as opposed to politically based. Under these circumstances the court should allow intervention.

      The Nation also has standing to raise both these interests since it is a party to one of the state custody proceedings at issue in this case. In doing so the Nation is seeking to advance the position that its citizenship requirements are not racially based, but rather based on the political affiliation individuals have with the Nation, and therefore ICWA's reliance on them is not impermissible under the Fifth Amendment. The Nation asserts that ICWA should be upheld, that the Complaint should be dismissed for failure to state a claim and for lack of subject-matter jurisdiction, for the reasons explained in the Motion to Dismiss attached to this motion.

      These defenses are common to the main action and directly related to the merits of the case. The main action makes allegations regarding the constitutionality of ICWA. Plaintiffs allege that the racial nature of the Nation's citizenship requirements prohibits ICWA's reliance on them under the Fifth Amendment. In doing so it attacks the Nation's ability to maintain a connection with its minor children and the citizenship criteria of the Nation. The Nation's Motion to Dismiss contains defenses to these allegations, which share a common question of law.

Since intervention has not been granted at this time the fifth factor is not applicable to the Nation. Both the sixth and seventh factors have been discussed in great detail in the previous section. The eighth factor weighs heavily in the Nation's favor. Since the main action contains allegations pertaining to the Nation's citizenship requirements, it would be useful to have the Nation's perspective on these issues, especially since a decision from the Court could have profound effect on the Nation's ability to determine its citizenship criteria. Only the Nation can provide full development of the facts regarding the citizenship status of baby boy C, can fully explain its enrollment process and criteria, and can speak to the importance of maintaining its connection to its minor children in state custody proceedings.

### III.  CONCLUSION

Pursuant to Rule 24(a)(2), the Nation has a right to intervene in this suit. Alternatively, the Court should permit the Nation to intervene under Rule 24(b)(1)(B).

Respectfully submitted this 18th day of November, 2015.

By:  /s/ _____
Katherine Belzowski, Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing MOTION TO INTERVENE was electronically transmitted to the Clerk's Office for filing using the CM/ECF System on this 18th day of November, 2015 and copy to the following:

Mark Brnovich, Attorney General
John S. Johnson, Division Chief Counsel
1275 West Washington Street
Phoenix, Arizona  85007
John.Johnson@azag.gov

Clint Bolick
Aditya Dnar
Courtney Van Cott
Scharf-Norton Center for Constitutional Litigation at
The Goldwater Institute
500 East Coronado Road
Phoenix, AZ  85004
litigation@golwaterinstitute.org

Michael W. Kirk
Brian W. Barnes
Harold S. Reeves
Cooper & Kirk, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C.  20036

Steve Miskinis
U.S. Department of Justice
ENRD/Indian Resources Section
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 200044-7611
steven.miskinis@usdoj.gov

By: _____
Dana Martin, Legal Secretary



# THE NAVAJO NATION

**RUSSELL BEGAYE**
PRESIDENT

**JONATHAN NEZ**
VICE-PRESIDENT

**UNACCEPTABLE IF ALTERED**

### CERTIFICATE OF NAVAJO INDIAN BLOOD
PART A (To be used if applicant is enrolled)

<u>　　　　WESTERN　　　　</u>
AGENCY

<u>　　NOVEMBER 13, 2015　　</u>
DATE

I certify that  ███████████████  Is listed on the Navajo Indian Census Roll, dated <u>January 01, 1940</u>, Which is an official record of this office as being of <u>　1/4　</u> Degree Navajo Indian blood, with Roll Number, ███████, date of birth <u>　AUGUST 4, 2010　</u>.

**RECORDED:** <u>FEBRUARY 13, 2014.</u>

Vital Statistics Manager
VST/

THE INFORMATION CONTAINED ON THIS DOCUMENT
HAS BEEN TAKEN FROM THE OFFICIAL TRIBAL ROLL OF THE NAVAJO NATION.

VITAL RECORDS & TRIBAL ENROLLMENT PROGRAM
THE NAVAJO NATION ♦ P.O. BOX 3240 ♦ WINDOW ROCK, ARIZONA 86515



Exhibit 1