Steven Miskinis
JoAnn Kintz
Judy Harvey
Ragu-Jara Gregg
U.S. Department of Justice
Environment & Natural Resources Div.
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044-7611
Telephone: (202) 305-0262
Email: steven.miskinis@usdoj.gov
*Attorneys for Federal Defendants*

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| A.D., C.C., L.G., and C.R. by CAROL COGHLAN CARTER, and DR. RONALD FEDERICI, their next friends; S.H. and J.H., a married couple; M.C. and K.C., a married couple; K.R. and P.R., a married couple; for themselves and on behalf of a class of similarly-situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> KEVIN WASHBURN, in his official capacity as Assistant Secretary of INDIAN AFFAIRS, BUREAU OF INDIAN AFFAIRS; SALLY JEWELL, in her official capacity as Secretary of the Interior, U.S. DEPARTMENT OF THE INTERIOR; GREGORY A. McKAY, in his official capacity as Director of the ARIZONA DEPARTMART OF CHILD SAFETY, | No.  2:15-CV-01259- PHX-NVW <br><br> **FEDERAL DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT** <br><br> (Assigned to The Honorable Neil V. Wake) |

Defendants.

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................1

ARGUMENT.......................................................................................................3

I.   L.G. Lacks Standing and Further Demonstrates that ICWA is not a
     Race-Based Statute.....................................................................................3

II.  C.R. Lacks Standing and Makes Clear Plaintiffs' First Amendment Claim
     should be dismissed.....................................................................................8

III. K.R. and P.R. Lack Standing .................................................................13

IV.  C.C., M.C., and K.C.'s Claims Against Federal Defendants are Moot ......14

V.   Ronald Federici Lacks Standing as Next Friend........................................14

CONCLUSION.................................................................................................16

i

Pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure, Federal Defendants renew their Motion to Dismiss and seek dismissal of Plaintiffs' First Amended Complaint in its entirety, incorporating by reference the entirety of Federal Defendants' prior briefing in support of their initial motion to dismiss.[1]

**INTRODUCTION**

Plaintiffs' First Amended Complaint does nothing to repair their fatally flawed case. Despite inflammatory rhetoric, Plaintiffs cannot overcome two basic defects in their theory of this case. First, the Indian Child Welfare Act ("ICWA") is not a statute that disadvantages Indian children. Far from putting Indian children in a "penalty box," the statute actually provides crucial safeguards to *protect* Indian children and their connections to their biological families. *See* 25 U.S.C. § 1902 (ICWA designed to "protect the best interests of the Indian child and to promote the stability and security of Indian tribes and families"). For example, Plaintiffs characterize ICWA's active efforts provision, *id.* § 1912(d), as a "penalty" while most people would think efforts to help a child's biological family remain intact are beneficial to the child. Second, the premise of Plaintiffs' entire complaint is wrong: ICWA is not a race-based statute. Instead, the statute is squarely grounded on the political connection that Indian children have with their tribes. Ironically, Plaintiffs' repeated suggestions that Indian children are harmed by ICWA's protections of their relationship with their parents, extended family, and

---

[1] *See* ECF No. 68 (Federal Defendants' Motion to Dismiss and Memorandum of Points and Authorities); ECF No. 96 (Federal Defendants' Reply Memorandum in Support of Their Motion to Dismiss). Federal Defendants incorporate their briefing in accord with this Court's instructions (ECF Nos. 172 at 3). Because Plaintiffs have only added parties, allegations, and one new claim, but not dropped anything, prior briefing relating to Plaintiffs' complaint remains relevant in its entirety. However, the paragraph numbering has changed in the amended complaint such that citations to the complaint in the original briefing are no longer accurate. If the Court desires, the Federal Defendants can resubmit the prior briefing with updated citations. In any event, Plaintiffs' proposed redline complaint (ECF No. 150-2) has both the original numbering of the complaint (in stricken form) and the amended numbering.

tribes smacks of exactly the bias that Congress passed ICWA to combat.[2]  In order to protect Indian children, ICWA establishes pro-child and pro-family federal standards. As leading practitioners in the field have explained, ICWA's protections are the "gold standard" for child welfare practice.  ECF No. 84 (*amicus* brief of thirteen national child welfare organizations).

Plaintiffs lack of standing stems, in part, from the fact that ICWA is a beneficial – rather than harmful – statute.  And, as discussed below and in the Federal Defendants' prior briefing, Plaintiffs challenge ICWA provisions that largely have not been, nor necessarily will be, applied to them.  Moreover, ICWA leaves significant discretion for State courts to apply the law to the facts of the particular case before them.  Because Plaintiffs have failed to identify any injury sufficient to confer Article III standing, this Court does not have subject matter jurisdiction over their claims.

Plaintiffs are also fundamentally wrong – and ignore governing Supreme Court precedent – in their claim that ICWA is a race-based statute.  The applicability of ICWA's beneficial standards turns on the child's tribal membership – not on her race. If she is a member of a federally recognized tribe, then ICWA applies.  If not, then ICWA can only apply if her parent is a member of a tribe and she is eligible for membership.  Thus, the child's political connection to a federally recognized tribe is paramount, not her race.  The United States has a government-to-government relationship with these tribes, and ICWA is rationally tied to the need for federal standards to protect tribal children from unwarranted removal from their families.  *See Morton v. Mancari*, 417 U.S. 535 (1974).  Thus, since ICWA is not race-based, Plaintiffs have failed to state a valid equal protection claim.  Plaintiffs' remaining claims are similarly flawed, as discussed in prior briefing.  All the arguments raised in

---

[2] This is not surprising, given that the "next friends" that purport to represent the children have no relationship with these Indian children, and do not even claim expertise in ICWA, Indian tribes, or the interests and needs of Indian children more generally.

that briefing continue to apply with full force to the First Amended Complaint.[3]

The First Amended Complaint adds two new child Plaintiffs, L.G. and C.R., two new foster-care providers, K.R. and P.R., a new next friend, Ronald Federici, and a new claim targeting the State Defendant.  ECF No. 173.  None of these additions rescue Plaintiffs' case but they do point up its weaknesses.  In particular, Plaintiffs' new "next friend," Ronald Federici, has no relationship to these children, much less the "significant relationship" required for next friend status.  Given that ICWA is designed to protect the interests of Indian children and their relationships with their parents and extended family, it is not surprising that Plaintiffs' counsel are unable to find any qualified next friend who is willing to join their challenge to this law.

For the reasons discussed here and in prior briefing incorporated by reference, Plaintiffs' First Amended Complaint should be dismissed for lack of subject matter jurisdiction and, on the merits, for failure to state a claim.

## ARGUMENT

### I.      L.G. Lacks Standing and Further Demonstrates that ICWA is not a Race-Based Statute.

*L.G. lacks standing.*  According to Plaintiffs' First Amended Complaint, L.G. is a 3.5-year-old child of Indian ancestry who, along with her brother C.R., is in the foster care of P.R. and K.R.  Neither she nor her brother are currently available for adoption, ECF No. 173 ¶¶ 11, 40, 42, presumably because parental rights have not been terminated.  Although her father sought membership with the Pascua Yaqui Tribe, it was not granted, *id.* ¶ 35, and consequently L.G. "is not an 'Indian child' within the meaning of ICWA," *id.* ¶ 40.  ICWA, therefore, does not apply to L.G.

Plaintiffs allege that L.G. is injured by a statute that, they concede, does not

---

[3] Federal Defendants' prior briefing in support of dismissal should serve as the Court's starting point.  In accord with this Court's instruction, the present brief is limited to supplementing prior briefing by addressing the additions to Plaintiffs' original complaint.  Accordingly, the relevant statutory background and standard of review will not be repeated here.

apply to her by claiming that "[b]ut for ICWA . . . L.G. and C.R. would be placed together due to their bonding and attachment, pursuant to state law." *Id.* ¶ 41.  But this also does not establish standing because L.G. and C.R. *are already placed together* in foster care, and they are not currently the subject of any adoption petition.  *Id.* ¶ 42.  Predictions about the outcomes of future adoption proceedings are entirely speculative and an "extended chain of highly speculative contingencies" leading to potential future injury provides no basis for standing.[4]  *Nelsen v. King Cty.*, 895 F.2d 1248, 1252 (9th Cir. 1990).

Similarly, Plaintiffs unelaborated assertion that "[b]ut for ICWA" L.G. "would likely have been cleared for adoption [already]" does not suffice to show the requisite injury to challenge the array of ICWA provisions identified in Plaintiffs' complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (internal quotations and brackets omitted).  Plaintiffs' argument is based on the remarkable assertion that a child is injured by a federal requirement (which Plaintiffs do not allege applies to her) that efforts be made to reunite a child with her biological parent before parental rights are terminated.  The Supreme Court has recognized that a natural parent's "right to the companionship, care, custody, and management of his or her children is an interest far more precious than any property right," and that this right is entitled to certain due

---

[4] Here is the "chain" (none of which is actually alleged or discussed in the complaint): a state court must find that L.G. and C.R. cannot be reunited with their parents, and must terminate parental rights;  a member of C.R.'s (and possibly L.G.'s) extended family, or some other person meeting ICWA's placement preferences, would have to seek to adopt C.R.; that person would also decide not to seek to adopt L.G.; the court would have to conclude that there is no good cause to deviate from ICWA's placement preferences for C.R., 25 U.S.C. § 1915(a); and this would have to somehow lead to L.G. being adopted by a different family, in spite of a state policy of keeping siblings together.  Right now, it is pure speculation to say L.G. and C.R. will be available for adoption at all, much less that they will not be adopted by their current foster-care providers (as happened to C.C.), or that they will be split apart – and that either possibility, should it occur, will be the result of ICWA.

process protections.  *Santosky v. Kramer*, 455 U.S. 745, 758-59 (1982).  In sharp contrast, no such right has been recognized for foster-care providers.  *See Smith v. Org. of Foster Families for Equality and Reform*, 431 U.S. 816 (1977).

Moreover, Plaintiffs entirely discount Arizona child welfare law in complaining that L.G. has been left to "languish" in foster care.  ECF No. 173 ¶ 43.  If L.G. (or C.R.) is not available for adoption, it is because the State agency has not filed, or the State court has not granted, a petition for termination of parental rights under State law, not because of ICWA.  *See* A.R.S. § 8-533.  Further, Plaintiffs conflate ICWA's placement preferences with the termination of parental rights.  ECF No. 173 ¶¶ 39, 42.  ICWA's placement preferences do not now and may never apply to C.R. and cannot, in any event, apply to L.G.[5]

Plaintiffs allege that because C.R. is an "Indian child" within the meaning of ICWA, his sibling L.G. will in effect be indirectly subject to ICWA as well because State law prioritizes placing siblings together.  *Id.* ¶¶ 40-42; ECF No. 169 at 4.  In fact, Arizona law considers many factors in making placements, *see, e.g.,* Ariz. Rev. Stat. 8-514, but under any circumstances, their argument here is with Arizona law, not with ICWA, which has no application to LG.[6]  Because L.G. is not subject to ICWA, she has no standing to bring claims challenging it.

*L.G. refutes Plaintiffs' argument that ICWA is a race-based statute.*  L.G. demonstrates that ICWA is not race-based in its application.  That is so because, as Plaintiffs admit, L.G. has "Indian ancestry," ECF No. 273 ¶ 42, and yet, as Plaintiffs

_____

[5] Plaintiffs assert that when L.G. is cleared for adoption, they might be hindered from adopting her absent a showing of good cause to deviate from ICWA's adoption placement preferences.  *Id.* ¶ 42.  But, again, L.G. will not be subject to ICWA's adoption placement preferences.

[6] Plaintiffs' allegations regarding L.G. are conflicting.  On the one hand, they assert ICWA will split up the siblings, ECF No. 173  ¶ 41, but on the other hand allege that because they *will not be split up* as siblings, L.G. is effectively subject to ICWA, *id.* ¶ 40.

also admit, she is an example of a person of such ancestry "not being *herself* subject to ICWA[]," ECF No. 169 at 4.  If ICWA applied based on Indian ancestry, then L.G. would qualify for its protections.  But ICWA does not apply on a racial basis.  It applies to children affiliated with specific political entities – federally recognized Indian tribes – by virtue of their own membership or their parent's membership and their eligibility.  25 U.S.C. § 1903(4).

Unable to get around the plain language of the statute, Plaintiffs instead argue that tribal membership is often linked to "biological ancestry."  ECF No. 169 at 10.  But not just anyone of Indian ancestry can belong to any tribe.  An individual is eligible for membership in a particular tribe because of his or her connections to a specific tribe, not because they fall into a larger racial category.  As illustrated by L.G.'s circumstances, a child can have Indian racial ancestry but lack the requisite connections with a specific Indian tribe to be eligible for membership in that tribe.  *See K.D. v. M.L. (In re Adoption of C.D.)*, 751 N.W.2d 236, 243 (N.D. 2008) (ICWA "requires more than a showing that the child and the parent have an Indian heritage"); *In the Interest of R.M.W.*, 188 S.W.3d 831, 833 (Texas Ct. App. 2006) ("Indian 'heritage' or 'blood' provides no evidence that any of the children are Indian children under ICWA").  Accordingly, Plaintiffs' equal protection and due process claims fail because they are premised on the false assumption that ICWA treats a class of people differently on the basis of race.

Finally, Plaintiffs' assertion (relying on *Korematsu v. United States*, 323 U.S. 214 (1944)) that tribal reliance on ancestry to establish membership criteria is suspect and subject to strict scrutiny is flatly wrong.  ECF No. 169 at 2 n.3.  The Supreme Court has repeatedly recognized that tribal affiliation is a political classification that is not subject to strict scrutiny, notwithstanding that tribes are necessarily comprised of descendants of indigenous peoples.  *See, e.g., Morton v. Mancari*, 417 U.S. 535 (1974).  Of particular relevance to this case, in *Fisher v. Dist. Court of Sixteenth Judicial Dist. of*

*Montana, in & for Rosebud Cty.*, the Supreme Court held that exclusive tribal jurisdiction over tribal members in adoption matters is not racial discrimination.  424 U.S. 382, 390-91 (1976).  That is because tribal court jurisdiction over tribal members "does not derive from the race of the plaintiff but rather from the quasi-sovereign status of the [Tribe] under federal law." *Id.*  That is so, the Court continued, "even if a jurisdictional holding occasionally results in denying an Indian plaintiff a forum to which a non-Indian has access . . . because it is intended to benefit the class of which he is a member by furthering the congressional policy of Indian self-government." *Id.*

Unlike *Korematsu*, *Fisher* concerned facts that make it directly applicable to this case: whether denying tribal members access to state courts on the basis of their tribal membership amounts to racial discrimination subject to strict scrutiny.  *See Fisher*, 424 U.S. at 384 n.5 (quoting tribal ordinance conferring jurisdiction over "applications for adoptions among members of the Northern Cheyenne Tribe").  In that case, the Court refused to conflate race with tribal membership and rejected the equal protection challenge.  Only a year later, in *United States v. Antelope*, the Court reaffirmed *Fisher* in concluding that federal jurisdiction over Indians in Indian country did not constitute racial discrimination.  430 U.S. 641 (1977).  The Court explained that "respondents were not subjected to federal criminal jurisdiction because they are of the Indian race but because they are enrolled members of the Coeur d'Alene Tribe." *Id.* at 646.  *Fisher* and *Antelope* apply here: tribal membership is not a suspect category akin to race and subject to strict scrutiny, and therefore a statute like ICWA which applies to tribal members is not suspect either.

Plaintiffs inevitably will rejoin that the tribal court jurisdiction in *Fisher* concerned on-reservation Indians, but the rationale for concluding that tribal authority over members is not racially based does not change when that member leaves the reservation.  There may be limits on tribal jurisdiction over off-reservation members, but any such limits do not derive from the notion that a member's location somehow

transforms an appropriate political relationship into an inappropriate racial classification.[7]

*Fisher* not only firmly rejects Plaintiffs' notion that Indian status is a racial category, but also strongly affirms the sovereign interest of tribes in child-custody matters.  In *Fisher*, an Indian child's custodian was dissatisfied with a tribal-court order granting temporary custody in the summer to the child's mother, and sought to adopt the child in state court.  *Id.* at 383.  The Supreme Court concluded that "[s]tate-court jurisdiction plainly would interfere with the powers of self-government conferred upon the Northern Cheyenne Tribe and exercised through the Tribal Court."  *Id.* at 387.  Similarly, ICWA recognizes and protects this sovereign interest by providing for exclusive tribal jurisdiction over child-custody proceedings involving an Indian child on a reservation, *id.* § 1911(a), and concurrent but presumptive tribal jurisdiction over such matters involving off-reservation children, *id.* § 1911(b).  *Fisher* establishes that the special protections for Indian children in ICWA do not implicate the strict scrutiny reserved for disparate treatment of suspect classes, and, as discussed in our initial motion to dismiss briefing, ICWA's provisions easily pass rational basis scrutiny.

## II.   C.R. Lacks Standing and Demonstrates that Plaintiffs' First Amendment Claim should be dismissed.

*C.R. lacks standing.*  Plaintiff C.R. is L.G.'s brother by a different father, ECF No. 173 ¶¶ 11-12, and they share a foster-care placement with P.R. and K.R., *id.* ¶ 42.  Like L.G., C.R. is not yet the subject of any adoption proceeding and his parents' rights have not yet been terminated.  *Id.* ¶¶ 12, 42.  Even assuming *arguendo* that it is in C.R.'s interest to be adopted, rather than maintaining his relationship with his biological

---

[7] Congress specifically considered and affirmed its authority to protect tribal members and their membership-eligible children residing off-reservation.  H.R. Rep. 95-1386 at 15 (1978) (citing *inter alia U.S. v. Holliday*, 70 U.S. 407, 418 (1865) ("The right to exercise [legislative authority] in reference to any Indian tribe, or any person who is a member of such tribe, is absolute, without reference to the locality of the traffic, or the locality of the tribe, or of the member of the tribe with whom it is carried on.")).

mother, the First Amended Complaint is utterly devoid of any logical connection between his unavailability for adoption and ICWA.  To be sure, ICWA requires active efforts be made to preserve C.R.'s biological family and further requires a showing of "evidence beyond a reasonable doubt" before an Indian child's parents rights can be terminated.  25 U.S.C. § 1912(d), (f).  But those requirements protect C.R. rather than injure him and cannot constitute an injury to C.R. for standing purposes because one "cannot presume that a child and his parents are adversaries" in such a proceeding until it is determined that parental rights must be terminated.  *Santosky*, 455 U.S. at 761. This is to say nothing of foster-care providers whose interests "are not implicated" until the "*dispositional* stage" of a parental rights termination proceeding which would only arise after attempts to prevent a child's biological family's breakup had failed.  *Id.* (emphasis in original).[8]

Moreover, if he is made available for adoption, it is entirely speculative whether alternative adoptive placements will be put forward and whether the State court will choose one of them instead of concluding there is good cause to deviate from ICWA's placement preferences.  Finally, it is the height of hubris for Plaintiffs – who clearly speak with the voice of the foster-care providers, not the young children co-opted into this case – to assume that a child is injured because there is some possibility they may not remain with a particular set of foster-care providers, but instead might be reunified with their parents, or extended family, or placed in another safe and loving home.  This is not a sufficient injury on which to base standing.

*C.R. demonstrates that Plaintiffs' First Amendment claim should be dismissed.* Plaintiffs allege that ICWA violates the First Amendment by forcing children to associate with tribes simply because of their race.  ECF No. 173 at ¶ 139.  But that allegation is disproven by the fact that L.G., though of the Indian "race," is not forced to

---

[8] To be clear: the First Amended Complaint provides no information on whether and how these provisions have been applied in any proceeding to terminate the rights of C.R.'s parents.

9

associate with any tribe by ICWA.  C.R. by contrast is alleged to be eligible for membership in the Gila River Indian Community and has two parents who are themselves members of the Gila River Indian Community.  ECF No. 173 ¶ 36. Membership in a tribe is a bilateral consensual relationship.  *See Means v. Navajo Nation*, 432 F.3d 924, 934 n. 68 (9th Cir. 2005) ("The authorities suggest that members of Indian tribes can renounce their membership."); *Thompson v. County of Franklin*, 180 F.R.D. 216, 225 (N.D.N.Y. 1998) (giving effect to individual's unequivocal renunciation of tribal membership).  C.R. is an "Indian child" because he was born to parents who chose to be and remain members of a federally recognized Indian tribe, with its attendant rights and privileges.[9]

Plaintiffs resist the notion that membership is consensual for the obvious reason that it undermines their effort to conflate race (which is not consensual) with tribal membership.  To prop their claim, they offer unsupportable allegations, claiming without basis that children "are enrolled in the tribes as a result of the mandate of ICWA and New Guidelines."  ECF No. 173 ¶ 138.  Nothing in either ICWA or the Guidelines makes tribal members out of non-members.  In fact, an earlier version of ICWA defined "Indian" to include any person "eligible for membership in a federally recognized tribe."  123 Cong. Rec. 37223 (Nov. 1977).  However, Congress instead ultimately chose to narrow that definition to encompass only eligible children who had a parent

---

[9] Plaintiffs, purporting to speak on behalf of C.R., object to his association with his tribe but, as they elsewhere have pointed out, "children, particularly newborns, are legally incapable of consenting" to tribal membership.  ECF No. 169 at 11.  By the same token, C.R. is too young to disavow such membership.  All we can say for sure about C.R. is that he was born to parents who choose to be enrolled in a tribe.  ICWA presumes and protects the likelihood that C.R.'s parents would want their child to enjoy the same advantages they derived from such membership until the child reaches an age of majority and has the capacity to make his own choice on whether to maintain such membership.  *See* H.R. Rep. No. 95-1386, at 16-17 (ICWA's "Indian child" definition protects "Indian children who, because of their minority, cannot make a reasoned decision about their tribal and Indian identity").

who was a tribal member.  25 U.S.C. § 1903(4).  That narrowing ensures ICWA protects family ties to tribes but does not create them.

This Court should reject Plaintiffs' unreasonable construction of the Guidelines (which are not binding in any event, ECF No. 68 at 33-34) as well as Plaintiffs' implausible and unsupported allegation that "DCS . . . forces children deemed Indian to associate with and become members of federally-recognized tribes."  ECF No. 173 ¶ 140.  Plaintiffs provide no examples of anybody being forced to become members of Indian tribes by the State.[10]  Here, C.R. is protected by ICWA because his parents have chosen to be members in the Gila River Indian Community.  He is already associated with that Tribe, and Congress has determined that this association warrants certain protections.

Plaintiffs also characterize as a "forced association" the fact that ICWA protects tribal jurisdiction over Indian children involved in child-custody proceedings even when they live off-reservation.  ECF No. 173 ¶¶ 139, 141.  ICWA requires that, upon the petition of a parent or the tribe, a foster-care or termination-of-parental-rights proceeding involving a child domiciled off-reservation be transferred to tribal court absent good cause to the contrary or the objection of either of the child's parents.  25 U.S.C. § 1911(b).  This provision is designed to prevent state courts from unduly interfering with a tribe's right to exercise jurisdiction over the domestic relations of its members even off-reservation, while still preserving the right of the parents to select the most appropriate forum.  *See* 25 U.S.C. § 1901(5).

The Ninth Circuit has made clear that tribal jurisdiction over members is not

---

[10] Plaintiffs rely on a provision of the Department's 2015 Guidelines that identifies as a best practice that State agencies should "take the steps necessary to obtain membership" for an Indian child who is not yet a tribal member.  ECF No. 173 ¶ 140 (citing 80 Fed. Reg. 10146-02 at 10153, B.4(d)(iii)) (Feb. 25, 2015).  But this advice applies only to a child who is already determined to be an "Indian child."  And, it is certainly reasonable for a State agency to seek the benefits and services that can accompany tribal membership for a child in its custody.

territorially confined: "[T]ribal sovereignty is not coterminous with Indian country. . . . Rather, tribal sovereignty is manifested primarily over the tribe's members." *Native Village of Venetie I.R.A. Council v. State of Alaska*, 944 F.2d 548, 558 n.12 (9th Cir. 1991) (internal citations omitted).  *See also Kaltag Tribal Council v. Jackson*, 344 F. App'x 324, 325 (9th Cir. 2009) (same); *Sidney v. Zah*, 718 F.2d 1453, 1456 (9th Cir. 1983).  Along similar lines, the Sixth Circuit in the criminal context concluded the fact that tribal criminal court jurisdiction over members off-reservation "is neither surprising nor hard to accept given the 'voluntary character of tribal membership and the concomitant right of participation in a tribal government, the authority of which rests on consent.'"  *Kelsey v. Pope*, 809 F.3d 849, 857 (6th Cir. 2016) (quoting *Duro v. Reina*, 495 U.S. 676, 694 (1990)).  Accordingly, even absent ICWA, tribes have jurisdiction over members with regard to domestic matters like child custody.  *See Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 42 (1989) ("Tribal jurisdiction over Indian child custody proceedings is not a novelty of the ICWA").

Plaintiffs' complaint is based on the premise that tribal members not living on a reservation "have little or no contact or connection with the tribe," *see* ECF No. 173 ¶ 61, and they thus ask this Court to enjoin the application of ICWA to any "Indian child" living off-reservation.  Whether one lives on or off a reservation provides no basis to ascertain what kind of "ties" one has with one's tribe for purposes of ICWA's applicability.  Indeed some tribes have no reservations and Plaintiffs' proposed bright line rule would harshly deprive those tribes' members, in their entirety, of ICWA's protections.  *See Alaska v. Native Village of Venetie Tribal Gov't*, 522 U.S. 520, 532 (1998) (noting Alaska Native Claims Settlement Act revoked "all existing reservations in Alaska . . . save one"); *Cent. Council of Tlingit & Haida Indian Tribes of Alaska*, 2016 WL 1168202 at *4 (noting because much of Indian country in Alaska has been extinguished, Alaskan courts "have had to examine the inherent, non-territorial sovereignty of Indian tribes").  ICWA's legislative history recognized as much, noting

that "[m]any Indian families move back and forth from a reservation dwelling to border communities or even to distant communities depending on employment and educational opportunities" but that wherever they are, "Indian children are usually culturally and tribally terminated by placements to non-Indian homes when they are subject to State court systems."  S. Rep. 95-597 at 51 (1977).

Moreover, Plaintiffs' invitation to this Court to ascertain who is sufficiently "Indian" to warrant Federal protections puts this Court in the unappealing position of making the very kinds of judgments ICWA was meant to forestall:

> One of the most serious failings of the present system is that Indian children are removed from the custody of their natural parents by nontribal government authorities who have no basis for intelligently evaluating the cultural and social premises underlying Indian home life and childrearing. Many of the individuals who decide the fate of our children are at best ignorant of our cultural values, and at worst contemptful of the Indian way and convinced that removal, usually to a non-Indian household or institution, can only benefit an Indian child.

*Holyfield*, 490 U.S. at 34-35 (quoting 1978 Hearings on ICWA at 191-192).  As one state court noted, "ICWA was passed, in part, to curtail state authorities from making child custody determinations based on misconceptions of Indian family life [and evaluating a child's tribal connections] clearly frustrates this purpose."  *Matter of Baby Boy C.*, 27 A.D.3d 34, 49 (N.Y. App. Div. 2005); *see also In re Alicia S.*, 65 Cal. App. 4 th 79, 90, Cal. Rptr. 2d 121, 128 (1998) ("The determination whether an Indian child and/or his or her parents have any 'significant' ties to Indian culture is, by its very nature, a highly subjective one that state courts are ill-equipped to make.").  To be sure, Plaintiffs seek a bright line rule, rather than a case-by-case adjudication, of when an Indian child is properly subject to ICWA.  But their on-reservation/off-reservation distinction requires this Court to approve Plaintiffs' judgment about who is a tribal Indian and who is not.  This Court should reject such a problematic invitation and defer to the will of Congress, supported by the precedent of numerous courts.

13

III.    **K.R. and P.R. Lack Standing.**

K.R. and P.R. are foster-care providers who were granted temporary care of L.G. and C.R. as part of a child-custody proceeding.  ECF No. 173 ¶¶ 11-12, 17.  K.R. and P.R. are indistinguishable from the other plaintiff foster-care providers except that unlike Plaintiffs S.H. and J.H., they do not even have a pending petition for adoption of the children committed to their temporary care.  *Id.* ¶ 15.  Their situation mirrors Plaintiffs M.C. and K.C. in that ICWA cannot be said to apply to any of them in any respect.  Because K.R. and P.R. do not even have a pending adoption petition, any injury suffered from ICWA in connection with their desire to adopt L.G. and C.R. at this juncture is purely hypothetical and speculative.

IV.    **C.C., M.C., and K.C.'s Claims Against Federal Defendants are Moot**

Plaintiffs' First Amended Complaint maintains the claims asserted by C.C., M.C., and K.C. even though M.C. and K.C.'s adoption of C.C. was finalized by the state court in November, 2015. ECF Doc 173 ¶ 10.  Because C.C., M.C. and K.C. are no longer involved in a child-custody proceeding, they are no longer subject to ICWA and any claim that may have been premised upon an injury suffered from ICWA is now moot.  *See Bernhardt v. County of Los Angeles*; 279 F.3d 862, 871 (9th Cir. 2002) ("Where the activities sought to be enjoined already have occurred, and the appellate courts cannot undo what has already been done, the action is moot and must be dismissed.").  The only claim arguably maintained by C.C., M.C. and K.C. is Count 7, which is directed at Defendant McKay. Thus, these plaintiffs no longer have any live claims before the Court directed at Federal Defendants.

V.    **Ronald Federici Lacks Standing as Next Friend**

Like Carter, Ronald Federici asserts that he is "next friend" to A.D., C.C., L.G., and C.R.  However, for the same reasons that Carter is inappropriate as "next friend" to these children, so too is Federici.  If anything, Federici has less of a relationship than Carter, much less the required "significant relationship," with these children.  Federici is

a citizen of the State of Virginia and nothing in the Complaint suggests any relationship between Federici and the children he purports to represent, who are wholly situated in the State of Arizona. *Coal. of Clergy, Lawyers, & Professors v. Bush*, 310 F.3d 1153, 1162 (9th Cir. 2002) (explaining the "more attenuated the relationship" between the proposed next friend and the real party in interest, the less likely the next friend can know the best interests of the party). Plaintiffs do not allege that Federici has provided treatment to or neuropsychiatric evaluations of any of the children in this action. ECF Doc. 173 ¶ 14. Rather, Plaintiffs put forth generally his professional credentials, his history as an expert witness in other child-custody proceedings,[11] and his work in the international context, *id.*, which is irrelevant here. Without any relationship, let alone a significant one, to the Plaintiff children, Federici is unsuitable. As the Ninth Circuit warned, "however worthy and high minded the motives of 'next friends' may be, they inevitably run the risk of making the actual [party] a pawn to be manipulated on a chessboard larger than his own case." *Id.* at 1161 (citing *Lenhard v. Wolff*, 443 U.S. 1306, 1312 (1979)); *see also T.W. by Enk v. Brophy*, 124 F.3d 893, 897 (7th Cir. 1997) ("[T]he next friend must be an appropriate alter ego for a plaintiff who is not able to litigate in his own right; . . . persons having only an ideological stake in the child's case are never eligible."). For these reasons, Federici lacks standing as "next friend" to the children.

---

[11] The amended complaint does not even allege that Federici has been involved in proceedings involving ICWA. Moreover, the fact that Federici was an expert witness in unrelated proceedings does not remedy his lack of relationship with the children here.

**CONCLUSION**

For the forgoing reasons, the Court should dismiss or abstain from hearing Plaintiffs' claims.

RESPECTFULLY SUBMITTED this 22nd day of April, 2016.

JOHN C. CRUDEN

Assistant Attorney General


s/*Steve Miskinis*
Steve Miskinis
JoAnn Kintz
Indian Resources Section
Judy Harvey
Ragu-Jara Gregg
Law and Policy Section
U.S. Department of Justice
Environment & Natural Resources Div.
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044-7611
Telephone: (202) 305-0262
Email: steven.miskinis@usdoj.gov
*Attorneys for Federal Defendants*

16

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on April 22, 2016, I electronically transmitted the attached

3  document to the Clerk's Office using the CM/ECF System for filing and

4  transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

5

6  MARK BRNOVICH
   ATTORNEY GENERAL

7  Firm Bar No. 14000
   John S. Johnson

8  Gary N. Lento
   Joshua R. Zimmerman

9  Dawn R. Williams
   Melanie G. McBride

10 Division Chief Counsel

11 1275 West Washington Street
   Phoenix, Arizona 85007

12 Telephone: (602) 542-9948

13 e-mail:  John.Johnson@azag.gov

14 *Attorney for Defendant Gregory A. McKay*

15

16 Aditya Dynar
   Christina Maria Sandefur

17 Scharf-Norton Center for Constitutional Litigation at the

18 Goldwater Institute
   500 East Coronado Road

19 Phoenix, Arizona 85004

20 (602) 462-5000

21 e-mail:  litigation@goldwaterinstitute.org

22 Michael W. Kirk
   Brian W. Barnes

23 Harold S. Reeves
   Cooper & Kirk, PLLC

24 1523 New Hampshire Avenue, N.W.

25 Washington, D. C. 20036
   (202) 220-9600

26 (202) 220-9601 (fax)

27 *Attorneys for Plaintiffs*

28

17

1

2

3    s/*Steven Miskinis*

3    Steven Miskinis

4    U.S. Department of Justice

     ENRD/Indian Resources Section/

5    P.O. Box 7611

6    Ben Franklin Station

     Washington, D.C. 20044-7611

7    Telephone: (202) 305-0262

     Email: steven.miskinis@usdoj.gov

8    *Attorneys for Federal Defendants*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28