Mark Brnovich (Firm State Bar No. 14000)
    ARIZONA ATTORNEY GENERAL
Dawn R. Williams (020730)
    Appeals Unit Chief Counsel
Gary N. Lento (028749)
Melanie G. McBride (023348)
Joshua R. Zimmerman (025876)
    Senior Litigation Counsel
OFFICE OF THE ATTORNEY GENERAL
1275 West Washington
Phoenix, Arizona 85007-2997
Telephone: (602) 542-9948
Fax: (602) 364-0055
Dawn.Williams@azag.gov
Gary.Lento@azag.gov
Melanie.McBride@azag.gov
Joshua.Zimmerman@azag.gov

*Attorneys for GREGORY McKAY in his Official Capacity as Director of the Arizona Department of Child Safety*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| A.D., C.C., L.G. and C.R., by CAROL COUGHLIN CARTER and DR. RONALD FEDERICI, their next friends; et al.,<br><br>Plaintiffs,<br><br>v.<br><br>KEVIN WASHBURN, in his official capacity as Assistant Secretary of BUREAU OF INDIAN AFFAIRS; et al.,<br><br>Defendants. | No. 2:15-cv-01259-PHX-NVW<br><br>**STATE DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CIVIL RIGHTS COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF [DOC. 173]**<br><br>(Honorable Neil V. Wake) |

# TABLE OF COTENTS

I.  BRIEF INTRODUCTION ........................................................................ 1

II.  RELEVANT PROCEDURAL HISTORY ................................................. 2

III.  STANDARD OF REVIEW ..................................................................... 3

    A.  Rule 12(b)(1) ................................................................................... 3

    B.  Rule 12(b)(6) ................................................................................... 3

IV.  THE STATUTORY AND REGULATORY BACKGROUND OF ICWA AND BIA GUIDELINES ........................................................................ 4

V.  LAW AND ARGUMENT ....................................................................... 5

    A.  This Court Should Abstain From and Dismiss the FAC ................... 5

    B.  All Plaintiffs Lack Standing ............................................................. 6

        1.  Plaintiffs Baby Girl A.D., Baby Boy C.C., their Putative Next Friend, Carol Coghlan Carter, and the Caregivers, S.H., J.H., M.C., and K.C. All Lack Standing ........................................... 6

        2.  The Fatal Defects to Standing Cannot Be Remedied .............. 8

        3.  Newly Added Plaintiffs Baby girl L.G., Baby Boy C.R., the Caregivers K.R. and P.R., and the Newly Added Putative Next Friend, Dr. Ronald Federici All Lack Standing ....................... 9

    C.  Plaintiffs' Claims Are Not Ripe ....................................................... 9

    D.  The FAC Fails to State a Cognizable Claim Against State Defendant ...................................................................................... 10

        1.  Counts One, Two, Four, Five, and Six Should be Dismissed if Addressed to State Defendant .............................................. 10

            a.  Counts 1 and 2 Should be Dismissed as Against State Defendant Because the Fifth Amendment Does Not Apply to the State Action ......................................................... 11

            b.  Count 4 Should Be Dismissed as Against State Defendant Because It Challenges Federal Power ........................... 11

            c.  Count 5 Should be Dismissed as Against State Defendant Because It Challenges Federal Power ........................... 12

i

d.    Count 6 Should be Dismissed as Against State Defendant
Because It Challenges Federal Power .............................. 13

2.    Counts 3 and 7 Should be Dismissed........................................ 13

a.    ICWA is Not a Race-Based Statute................................. 13

b.    Arizona's Implementing Statutes Do Not Expand
ICWA.................................................................................. 16

VI.    CONCLUSION ........................................................................................ 17

1    Pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure, State

2    Defendant GREGORY MCKAY, in his official capacity as the Director of the Arizona

3    Department of Child Services ("State Defendant"), respectfully requests that Plaintiffs'

4    *First Amended Civil Rights Class Action Complaint for Declaratory, Injunctive, and*

5    *Other Relief* [Doc. 173 or "FAC"], be dismissed with prejudice.

6

**I**

7

**BRIEF INTRODUCTION**

8    The Named Plaintiffs, one of which is not eligible for tribal membership, ask this

9    Court to take the extraordinary step of entering an injunction to prevent compliance with

10    a federal law, the Indian Child Welfare Act of 1978 ("ICWA"), which has been binding

11    legal authority for almost forty years.  Among other frailties, their entire FAC is based

12    on a fatal premise that ICWA is racially discriminatory.  *See,* e.g.*,* FAC, ¶¶ 1, 2 and 3.

13    Plaintiffs strain, without legal authority or factual support, to equate their claims to

14    historic racial-discrimination cases such as *Plessy v. Ferguson*, 163 U.S. 537 (1896) and

15    *Brown v. Board of Educ.*, 347 U.S. 483 (1954).  *Id.*  But, the entire tenet upon which

16    Plaintiffs' FAC is based has been directly repudiated by roughly 40 years of United

17    States Supreme Court precedent.  Regardless of how loudly and frequently Plaintiffs

18    scream race, *this is not a racial discrimination case*.

19    Further, Plaintiffs, in contravention of the *Younger* abstention doctrine, seek

20    broad and sweeping intrusion on Arizona juvenile courts despite their fatal inability to

21    establish constitutional standing, ripeness or harm.  Despite the lack of harm, Plaintiffs

22    ask this Court to invalidate a federal statute that was lawfully enacted to remediate

23    generations of forced assimilation that weakened or severed Indian children's ties to their

24    tribes.  The State Defendant asks this Court to decline Plaintiffs' invitation to insert itself

25    into the well-established system of state jurisprudence that protects and serves Arizona's

26    children and families, including those that fall under the auspices of ICWA.

27    ///

28    ///

As shown below, Plaintiffs have failed to articulate a legally cognizable claim against State Defendant and all claims against State Defendant should be dismissed with prejudice.

## II

## RELEVANT PROCEDURAL HISTORY

This matter began with the filing of a *Civil Rights Class Action Complaint for Declaratory and Injunctive Relief* on July 6, 2015 [Doc. 1]. The Plaintiffs were two children, Baby Girl A.D. and Baby Boy C., by and through their putative Next Friend, Carol Coghlan Carter, and the children's foster parents, S.H. and J.H., and M.C. and K.C. In response thereto, the Federal Defendants filed a Motion to Dismiss and Memorandum of Points and Authorities on October 29, 2015 [Doc. 68] ("Federal Defendants' MTD") and the State Defendant filed its *Motion to Abstain and Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1), (6)* on October 29, 2015 [Doc. 70] ("State Defendant's MTD"). The Hearing on both Motions to Dismiss was held before this Court on December 18, 2015 [Doc. 119].

While the Court was deliberating the Motions to Dismiss, the parties became aware that Baby Boy C. had been adopted by Plaintiffs M.C. and K.C. and that the State Court had denied the Gila River Indian Community's Motion to Transfer Baby Girl A.D.'s case to tribal court. [*See* Doc. 145.] The Court Ordered Plaintiffs to file a status report. *Id.* On February 29, 2016, Plaintiffs filed the Status Report with the Court indicating that they intended to file an amended complaint with additional Plaintiffs [Doc. 149].

On March 2, 2016, Plaintiffs filed a *Motion for Leave to File First Amended Complaint* [Doc 150]. On March 21, 2016, the Federal Defendants and State Defendant each file an *Opposition to Plaintiffs' Motion for Leave to File First Amended Complaint* [Docs. 160 and 162]. Plaintiffs filed their *Reply* thereto on March 31, 2016 [Doc. 169]. On April 4, 2016, this Court issued an Order granting Plaintiffs' *Motion for Leave to File First Amended Complaint* and denying, as moot, the Motions to Abstain and Dismiss

filed by the State Defendant and Federal Defendants [Doc. 172].  On April 5, 2016,

Plaintiffs filed their FAC [Doc. 173].

### III

### STANDARD OF REVIEW

**A.**     **Rule 12(b)(1)**

Although a defendant is usually the moving party on a Rule 12(b)(1) motion, the

plaintiff is the party who invoked the court's jurisdiction.  Accordingly, the plaintiff

bears the burden of establishing federal subject matter jurisdiction.  In effect, the Court

presumes lack of jurisdiction until plaintiff proves otherwise.  *Kokkonen v. Guardian*

*Life Ins. Co. of America*, 511 U.S. 375, 376-378 (1994); *In re Wilshire Courtyard*, 729

F.3d 1279, 1284 (9th Cir. 2013).  "[T]he party asserting subject matter jurisdiction has

the burden of proving its existence."  *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir.

2015).

A Rule 12(b)(1) motion may be made when, as here, the complaint fails to

establish grounds for federal subject matter jurisdiction as required by Rule 8(a)(1).

*Warren v. Fox Family Worldwide, Inc.* 328 F.3d 1136, 1139 (9th Cir. 2003).  The court

need not accept as true legal conclusions couched as factual allegations or inferences

unsupported by the facts set out in the complaint.  *Lacano Inves., LLC v. Balash*, 765

F.3d 1068, 1071-1072(9th Cir. 2014) [legal conclusions disregarded even if case has

factual allegations].

**B.**     **Rule 12(b)(6)**

A Rule 12(b)(6) motion is similar to the common law general demurrer, i.e., it

tests the legal sufficiency of the claims in the complaint.  *Strom v. United States*, 641

F.3d 1051, 1067 (9th Cir. 2011).  In reviewing a motion to dismiss for failure to state a

claim under Rule 12(b)(6), this Court must dismiss the complaint if "it appears beyond a

reasonable doubt that plaintiff cannot prove a set of facts in support of his claim which

would entitle him to relief."  *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th

Cir. 1998).  Dismissal may also "be based on the lack of a cognizable legal theory or the

3

absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

Although the "allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party," this Court "is *not required* to accept *legal conclusions* cast in the *form of factual allegations* if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (italics added).  Additionally, motions to dismiss may be granted where they involve "questions of law rather than fact." *United States v. Nukida* 8 F.3d 665, 669 (9th Cir. 1993).

**IV**

**THE STATUTORY AND REGULATORY BACKGROUND**
**OF ICWA AND BIA GUIDELINES**

Plaintiffs challenge the constitutionality of ICWA and the non-binding Guidelines issued by the Bureau of Indian Affairs ("BIA").  *See,* e.g.*,* FAC ¶ 5.  Therefore, the history, purpose, applicability, and enforcement of ICWA and the BIA Guidelines are relevant to the determination of this Motion.

In State Defendant's *Motion to Abstain and Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), (6)* [Doc. 70] ("State Defendant's MTD") and the Federal Defendants' *Motion to Dismiss and Memorandum of Points and Authorities* [Doc. 68] ("Federal Defendants' MTD"), filed in response to Plaintiffs' original *Civil Rights Class Action Complaint for Declaratory and Injunctive Relief* [Doc. 1] ("Original Complaint"), the history, purpose, applicability, and enforcement of ICWA and the BIA Guidelines were explained in detail.  Instead of repeating that discussion, the State Defendant hereby incorporates by reference the following portions of State Defendant's MTD, pp. 4:6-9:6, and Federal Defendants' MTD, pp. 2:22-5:18.[1]

---

[1] Throughout this Motion, the State Defendant will, in accordance with this Court's directive, reference and incorporate portions of previously filed motions which support the particular issue being addressed.  In an Order dated April 4, 2016, this Court instructed that if the "Defendants choose to file motions to dismiss the First Amended

**V**

**LAW AND ARGUMENT**

**A.     THIS COURT SHOULD ABSTAIN FROM AND DISMISS THE FAC**

As more fully detailed in previously filed Motions[2] this proposed class action impermissibly interferes with the on-going state-court proceedings and functions, contrary to the basic concepts of federalism and separation of powers.  *Moore v. Sims*, 442 U.S. 415, 427 (1979) ["The breadth of a challenge to a complex state statutory scheme has traditionally militated in ***favor*** of abstention, not ***against*** it."] (Emphasis in original).  The U.S. Supreme Court has articulated "a strong policy against intervention in state court processes in the absence of great and immediate irreparable injury to the federal plaintiff."  *Moore*, 442 U.S. at 423.

This policy hinges on "the constraints of equity jurisdiction and the concern for comity in our federal system," in addition to the fundamental principle that federal courts "avoid unwarranted determination of federal constitutional questions" if and when a state court can decide a matter on grounds short of constitutional dimension.  *Gilbertson v. Albright*, 381 F.3d 965, 970, 973 (9th Cir. 2004) (en banc); *see also Moore*, 442 U.S. at 423 (explaining the "basic concern" as a "threat to our federal system posed by displacement of state courts by those of the National Government.").

Accordingly, this Court must abstain from and dismiss the FAC under the doctrine of abstention under *Younger v. Harris*, 40 U.S. 37 (1971), if properly raised, considered, and granted upon a Rule 12(b)(1) motion to dismiss.  *World Famous Drinking Emporium, Inc. v. City of Tempe*, 820 F.2d 1079, 1081 (9th Cir. 1987) [dismissal is required when court abstains].

---

Complaint they may, and should, incorporate herein by reference those portions of their previous motions that remain applicable." [Doc. 172, pp. 2:27-3:2.]

[2] See, State Defendant's MTD [Doc. 70], Section I, pp. 10:10-16:23, Federal Defendants' MTD [Doc. 68], Section III, pp. 18:6-20:6, and State Defendant's *Reply in Support of Motion to Abstain and Dismiss* [Doc. 101] ("State Defendant's Reply"), Section I(C).

As demonstrated by the recent denial of the Gila River Indian Community's motion to transfer jurisdiction of Baby Girl A.D.'s case to its tribal court,[3] the State Court is a more than adequate venue for Plaintiffs to raise their constitutional claims and the Plaintiffs cannot prove otherwise.[4]  A state court forum is "inadequate only when the state procedural law *bars* presentation of the federal claims."  *Hirsch v. Justices of Supreme Court of State of California*, 67 F.3d 708, 713 (9th Cir. 1995) (italics in original) [affirming lower court decision to abstain on *Younger* grounds].  Accordingly, this Court should dismiss the FAC with prejudice under the *Younger* abstention doctrine.

**B.    ALL PLAINTIFFS LACK STANDING**

Plaintiffs must demonstrate that they have standing before this Court may exercise jurisdiction over their claims.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  The facts to show standing must be clearly apparent on the face of the complaint.  *Baker v. United States*, 722 F.2d 517, 518 (9th Cir. 1983).  To carry this burden, Plaintiffs must (1) show an "injury in fact" that is "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical'"; (2) "there must be a causal connection between the injury and the conduct complained of"; and (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision."  *Lujan*, 504 U.S. at 560-561.  When "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation . . . of *someone else*," the plaintiff must show that the actions of the regulated third party will cause and permit redressability of injury.  *Lujan*, 504 U.S. at 562.

> **1.    Plaintiffs Baby Girl A.D., Baby Boy C.C., their Putative Next Friend, Carol Coghlan Carter, and the Caregivers, S.H., J.H., M.C., and K.C. All Lack Standing.**

Plaintiffs, Baby Girl A.D., and Baby Boy C.C. (previously known as Baby Boy C.), their putative Next Friend, Carol Coghlan Carter, and the children's caregivers, S.H.,

---

[3] *See* FAC ¶ 23.

[4]  To avoid abstention, the Plaintiffs must prove that state juvenile courts do not afford an adequate opportunity to raise federal constitutional claims.  *Penzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987).

J.H., M.C., and K.C., were Plaintiffs in the Original Complaint. As detailed in previously filed Motions, all of these Plaintiffs lacked standing at the time the Original Complaint was filed as far back as July 6, 2015.[5] Their claims were not ripe then because, among other reasons outlined in previously filed Motions, the harm complained of was speculative, hypothetical, and not certain to ever occur.

The lack of ripeness is especially shown by the State Juvenile Court's denial to transfer Baby Girl A.D.'s case to the Gila River Indian Community tribal court, based upon a showing of good cause to deviate from the ICWA placement preferences, making it likely that an adoption of Baby Girl A.D., by Plaintiffs S.H. and J.H., will occur shortly. *See* FAC, ¶ 23, p. 6-7.[6] Also, Baby Boy C.C. has already been adopted by Plaintiffs M.C. and K.C., despite ICWA. *See* FAC, ¶ 10, pp. 3:27-4:1. Accordingly, no harm has been suffered by these Plaintiffs.

Not only do the foster parents lack standing based on lack of harm, but they also lack a constitutionally protected interest in maintaining the foster or adoptive family, particularly when relatives or other family members are involved. Instead, "the source of the foster family relationship is contractual in nature and is carefully circumscribed by the state in the foster care agreement." *Gibson v. Merced Cnty. Dept. of Human Res.*, 799 F.2d 582, 586 (9th Cir. 1986) (citing *Smith v. Org. of Foster Families*, 431 U.S. 816, 845, 97 S. Ct. 2094, 2110 (1977)). Thus, "it is appropriate to ascertain from state law the expectations and entitlements of the parties." *Id*.

The holding in *Smith* recognizes that the foster-family relationship "has its source in state law and contractual arrangements" and thus is entitled to only "the most limited constitutional 'liberty'" interest. *Smith*, 431 U.S. at 845-846, 97 S. Ct. at 2110. Therefore, "[w]hatever liberty interest might otherwise exist in the foster family as an

---

[5] *See* State Defendant's MTD [Doc. 70] at Sections IV(1) and (2), pp. 24:5-26:2; *See also* Federal Defendants' MTD [Doc. 68] at Section I, pp. 6:7- 16:17; *See also* State Defendant's Reply [Doc. 101], Section I(A)(1)-(9).

[6] Upon information and belief, that matter is currently on appeal.

7

institution . . . must be substantially attenuated where the proposed removal from the foster family is to return the child to his natural parents" in light of the "constitutionally recognized liberty interest that derives from blood relationship, state-law sanction, and basic human right." *Id.* at 846-74, 97 S. Ct. at 2111.  Placing the child with extended relatives, including tribal members who may share a blood relationship with the child, thus comports with basic notions of due process for fundamentally protected family relationships.

Here, the State law reflects such a preference for maintaining family connections, a preference also present in ICWA.  For example, A.R.S. § 8-103(B)(3) evinces a preference for "placement with a grandparent or another member of the child's extended family including a person or foster parent who has a significant relationship with the child."

Therefore, these Plaintiffs do not have legal standing to pursue this matter.

## 2.    **The Fatal Defects to Standing Cannot Be Remedied.**

The U.S. Supreme Court and the Ninth Circuit have made clear that when, as here, the named plaintiff(s) in a class action lack(s) standing, the class action cannot go forward with a substitute representative because the court never had jurisdiction.  *See, Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022-23 (9th Cir. 2003) (citing *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)).

As this Court is aware, Baby Boy C.C.'s adoption by M.C. and K.C. has been approved and the state juvenile court has rejected a motion to transfer to tribal court in Baby Girl A.D.'s case, indicating her adoption by S.H. and J.H. seems likely to occur soon.  Accordingly, Plaintiffs' attorneys are left without a proper class representative.  Because standing is a jurisdictional issue, which cannot be remedied by amendment, this case cannot proceed even if Plaintiffs' attorneys were to finally identify a proper class representative with genuinely ripe claims.

///

///

   **3.**   <u>**Newly Added Plaintiffs Baby Girl L.G., Baby Boy C.R., the Caregivers K.R. and P.R., and Newly Added Putative Next Friend, Dr. Ronald Federici All Lack Standing.**</u>

As shown in State Defendant's *Opposition to Plaintiffs' Motion for Leave to file a First Amended Complaint* [Doc. 162], none of the newly added Plaintiffs, including the newly added Next Friend, Dr. Ronald Federici, have standing and their claims suffer the same fatal flaws as the original Plaintiffs.  Like the original Plaintiffs, the claims of Plaintiffs K.R., P.R., L.G., and C.R. are based on speculation and conjecture about what *might* happen in the future under the auspices of ICWA.  State Defendant incorporates by reference the relevant portions of Doc. 162.[7]  Accordingly, these new Plaintiffs do not have standing.

That is especially true of new Plaintiff, Baby Girl L.G., who, by Plaintiffs own admission, is "*not eligible* for membership in the Pascua Yaqui Tribe of Arizona," and "has more than 50% *non*-Indian blood."  FAC, ¶ 11 (italics added).  Therefore, Baby Girl L.G. is not eligible for the protections afforded by ICWA which requires an "Indian child" to, among other things, be "eligible for membership in an Indian tribe …" 25 U.S.C. § 1903(4).[8]  Under no circumstances can Baby Girl L.G. have standing to challenge ICWA and she should be dismissed from this lawsuit.

**C.**   <u>**PLAINTIFFS' CLAIMS ARE NOT RIPE**</u>

Plaintiffs' FAC seeks severe, intrusive, and extraordinary relief despite the fact that none of them have been legally injured by ICWA.  Accordingly, their claims are not ripe for review.

The "ripeness doctrine" protects courts from premature adjudication likely to "entangle[e] them[] in abstract disagreements." *Abbott Labs v. Gardner*, 387 U.S. 136, 148 (1967).  "The ripeness doctrine is 'drawn both from Article III imitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'" *Nat'l Park*

---

[7] *See* State Defendant's *Opposition to Plaintiffs' Motion for Leave to File First Amended Complaint* [Doc. 162] at Sections II(A)(2) and (3), pp. 4:17-7:21.

[8] *See* Federal Defendants' *Opposition to Plaintiffs' Motion for Leave to File First Amended Complaint* [Doc. 160], Section II.

*Hospitality Ass'n v. DOI*, 538 U.S. 803, 808 (2003) (quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57, n. 18 (1993)).  It is a "justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'"  *Nat'l Park Hospitality Ass'n*, 538 U.S. at 807-08 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967)).

As a result, "[e]ven where jurisdiction is present in the Article III sense, courts are obliged to dismiss a case when considerations of prudential ripeness are not satisfied." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1211 (9th Cir. 2006) (citing *Socialist Labor Party v. Gilligan*, 406 U.S. 583, 588 (1972) ("Problems of prematurity and abstractness may well present 'insuperable obstacles' to the exercise of the Court's jurisdiction, even though that jurisdiction is technically present.")).

For the same reasons that the claims made in the Original Complaint are not ripe for review, the claims made in this FAC are also unripe.[9]

## D.    THE FAC FAILS TO STATE A COGNIZABLE CLAIM AGAINST STATE DEFENDANT

### 1.    Counts One, Two, Four, Five, and Six Should Be Dismissed if Addressed to State Defendant.

Plaintiffs assert seven causes of action against the three named defendants [Doc. 173, ¶¶ 110-150].  Plaintiffs do not, however, identify which Count is alleged against which defendant, nor which class representative(s) are bringing which count(s).  Accordingly, State Defendant, and this Court, are both required to guess as to this

---

[9] *See* State Defendant's MTD [Doc. 70] at Sections IV, pp. 26:3-29:5; *See also* Federal Defendants' MTD [Doc. 68] at Section II, pp. 16:18-18:5; *See also*, State Defendant's Reply [Doc. 101], Section I(B).

essential information, making a response difficult.  Regardless, it is clear that Counts 1, 2, 4, 5, and 6 cannot be leveled against State Defendant.

### a). Counts 1 and 2 Should Be Dismissed as Against State Defendant Because the Fifth Amendment Does Not Apply to the State Action.

Count 1 alleges a "Violation of the Equal Protection Guarantee of the *Fifth Amendment*."  (Italics added.)  FAC, ¶¶ 110-117.  Count 2 alleges a "Violation of the Due Process Guarantee of the *Fifth Amendment*."  (Italics added.)  FAC, ¶¶ 118-122.

The Fifth Amendment does not apply to state action.  S*ee, Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) ["The Due Process clause of the Fifth Amendment and the equal protection component thereof apply only to actions of the federal government—not to those of state or local governments."]; *See also,* e.g.*, Peoples v. Schwarzenegger*, 402 Fed. Appx. 204, 205 (9th Cir. 2010) [affirming the district court's dismissal of plaintiff's Fifth Amendment claim "because the Fifth Amendment's Due Process and Equal Protection Clauses apply only to the federal government, not to state actors]; *Bingue v. Prunchak,* 512 F.3d 1169, 1174 (9th Cir. 2008) ["Fifth Amendment's due process clause only applies to the federal government."].

Accordingly, Counts 1 and 2 do not apply to State Defendant and they should be dismissed with prejudice as against State Defendant for failure to state a claim.

### b). Count 4 Should Be Dismissed as Against State Defendant Because It Challenges Federal Power.

Count 4 alleges that "[ICWA] Exceeds the *Federal Government's Power* under the Indian Commerce Clause and the Tenth Amendment."  (Italics added.)  FAC, ¶¶ 131-135.  Count 4 is founded on the Tenth Amendment[10] which is part of the Bill of Rights.

---

[10] The full text of the Tenth Amendment reads as follows:  "The powers not delegated to the United State by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people."

It expresses the principle of federalism and makes explicit the idea that the federal government is limited to the powers granted in the Constitution. *See, United States v. Darby Lumber*, 312 U.S. 100, 124 (1941).

Here, the allegations in Count 4 are clearly directed at the Federal Defendants, not the State Defendant. The FAC alleges that "Congress" has exceeded its powers, commandeered state resources, and that ICWA displaces inherent state jurisdiction. *See*, FAC, ¶¶ 132, 133, and 135. The FAC does not, and cannot, allege that the State Defendant played a role in the alleged over-reach by Congress. Accordingly, this Count should be dismissed with prejudice as against State Defendant.

**c).**     <u>Count 5 Should Be Dismissed as Against State Defendant Because It Challenges Federal Power.</u>

Count 5 alleges a "Violation of Associational Freedoms Under the First Amendment." FAC, ¶¶ 136-141.

Here, the allegations in the FAC do not implicate any state infringement on the First Amendment or that the State Defendant is compelling an association with a tribe.[11] Instead, the FAC merely alleges that State Defendant follows ICWA and a newly proposed Federal Regulation, FAC, ¶ 140, which is not binding. *See Oglala Sioux Tribe v. Van Hunnik*, No. CIV. 13-5020-JLV, 2015 WL 1466067, at *14 (D.S.D. Mar. 30, 2015) ("The DOI Guidelines are not binding on the court but are an administrative interpretation of ICWA entitled to great weight").

Further, the new Federal Regulations, even if binding, would only come into play if ICWA has been invoked. The State Defendant did not play a role in the enactment of ICWA nor the proposed Federal Regulations associated therewith. It should also be noted that there is no allegation in the FAC regarding whether the Named Plaintiff children's association with the tribes—via their enrollment or membership therein—predated the State's involvement through the ICWA dependency process. Consequently,

---

[11] *See*, State Defendant's MTD [Doc. 70], Section III, pp. 22:23-24:4.

they have failed to state a cognizable claim that the State Defendant is enforcing an unwanted association.

### d).   Count 6 Should Be Dismissed as Against State Defendant Because It Challenges Federal Power.

Count 6 attacks "Unlawful Agency Action."  FAC, ¶¶ 142-122.  Specifically, Count 6 alleges that the "the BIA overstepped its authority…" FAC, ¶ 145, p. 33:5. Count 6 challenges federal agency action related to the development and establishment of the BIA Guidelines, not any action of the State Defendant.  Accordingly, this Count is not alleged against State Defendant and should be dismissed with prejudice.

### 2.   Counts 3 and 7 Should be Dismissed.

### a).   ICWA is Not a Race-Based Statute.

Count 3 alleges a "Violation of the Substantive Due Process and Equal Protection Clauses of the Fourteenth Amendment."  FAC, ¶¶ 123-130.  This entire Count is premised on the allegations that State Defendant "complies with and enforces" ICWA and the "New [BIA] Guidelines" FAC, ¶¶ 124 and 125.  Plaintiffs further allege that "these provisions subject[] Plaintiffs to unequal treatment under … law based solely on the race of the child and the adults involved…." FAC, ¶ 129, pp. 29:27-30:1.

Count 7 seeks "Damages Under Title VI of the Civil Rights Act (42 U.S.C., §§ 2000d – 2000d-7."  FAC, ¶¶ 147-150.  In support thereof, Plaintiffs argue that State Defendant subjects Plaintiffs to "*de jure* discrimination on the ground of the race, color or national origin."  FAC, ¶ 149.

Accordingly, both Counts are based on the unsupported conclusion that State Defendant's compliance with federal law subjects Plaintiffs to racial discrimination.  As shown herein, and in State Defendant's MTD and the Federal Defendants' MTD, the relevant portions of which are incorporated herein by reference,[12] Plaintiffs are wrong as a matter of law and this Court should dismiss these Counts with prejudice.

---

[12] *See*, State Defendant's MTD [Doc. 70], Section II, pp. 17:1-22:22; *See also*, Federal Defendants' MTD [Doc. 68], Section IV(A), pp. 20:7-26:12.

It should be stressed that the FAC does not contain any citations or references to any legal authority supporting the allegations that ICWA and/or the BIA Guidelines are race based.  That is the case even though the FAC is strewn with what Plaintiffs believe is supportive legal authority for their other Counts.  The lack of such citation is based on the fact that there is no such supportive legal authority.

In no uncertain terms, ICWA is not race based and merely applies to a limited and specific subset of children with "Indian ancestry," that is, "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4).  Thus ICWA excludes even children who are eligible for membership in an Indian tribe—that is, a tribe recognized by the Federal government as eligible for receipt of services because of their status as Indians, 25 U.S.C. § 1903(8)—if the child's parent is not also already a member of the tribe.  This serves to limit ICWA's applicability to only those children who can demonstrate the requisite political affiliation to a federally recognized Indian tribe.

The United States Supreme Court has explicitly held that federal legislation concerning Indian Tribes and tribal members is a matter of *political* association, not *race*. *Morton v. Mancari*, 417 U.S. 535, 551-555 (1974).  The *Mancari* Court addressed the issue of whether exposing Indians to separate treatment was racially based and has held these laws are not racially discriminatory.  Specifically, *Mancari* holds that:

> Literally every piece of legislation dealing with Indian tribes and reservations, and certainly all legislation dealing with the BIA, single out for special treatment a constituency of tribal Indians living on or near reservations.  *If these laws, derived from historical relationships and explicitly designed to help only Indians, were deemed invidious racial discrimination, an entire Title of the United States Code … would be effectively erased and the solemn commitment of the Government toward the Indians would be jeopardized.* (Citation omitted).  It is in this historical context that the constitutional validity of the Indian preference is to be determined. (Italics added.)

14

*Morton v. Mancari*, 417 U.S. 535, 552 (1974).

Fatal to Plaintiffs' claims is the fact that the holding of *Mancari* has been reaffirmed by the United States Supreme Court, the Ninth Circuit, and the United States District Court for the District of Arizona, multiple times. S*ee Washington v. Wash. State Commercial Passenger Fishing Vessel Ass'n*, 443 U.S. 658, 673, fn. 20 (1979); *United States v. Antelope*, 420 U.S. 641 (1977) [holding there is "no doubt that federal legislation with respect to Indian tribes … *is not based upon impermissible racial classifications*. Quite the contrary, classifications expressly singling out Indian tribes as subjects of legislation *are expressly provided for in the Constitution* …"] (Italics added); *Duro v. Reina*, 495 U.S. 676 (1990), superseded by statute as recognized in *United States v. Lara*, 541 U.S. 193, 197-198 (2004); *Means v. Navajo Nation*, 432 F.3d 924, 932-933 (9th Cir. 2005) [holding that the Court was bound to follow Supreme Court precedent that "legislation that singles out Indians for particular and special treatment" is "not even a 'racial' preference."]; *EEOC v. Peabody W. Coal Co.*, 2012 WL 5034276 *7 (D. Ariz. Oct. 18, 2012) [granting dispositive motions to defendants and holding that legislation singling out Indians was not unconstitutional racial discrimination].

Plaintiffs choose to ignore this clear and vast precedent and attempt to misdirect this Court by equating ICWA with the abhorrent history of slavery. *See*, FAC, ¶¶ 1, 2 and 3. But Plaintiffs' unsupported statements cannot wash away approximately 40 years of binding precedent. ICWA is not race based.

During the briefing on the Defendant's respective Motions to Dismiss to the Original Complaint, Plaintiffs repeatedly argued that a motion to dismiss should not be granted on this issue because it goes to the "merits" of the claims. That is not true because this is merely a legal issue. As noted above, motions to dismiss can be granted on pure questions of law. *U.S. v. Nukida* 8 F.3d 665, 669 (9th Cir. 1993).

Considering that the only Counts that can be alleged against the State Defendant, Count 3 and Count 7, are entirely premised on an erroneous legal conclusion, i.e.*,* that

///

1   ICWA is race based, this Court should dismiss Plaintiffs' FAC in its entirety and with

2   prejudice.

3                    **b).**   **Arizona's Implementing Statutes Do Not Expand ICWA.**

4          It is unclear whether Plaintiffs allege that the Arizona law(s) implementing ICWA

5   is unconstitutional.  *See*, FAC, Count 3, ¶¶ 124 and 128 [citing three Arizona Statutes,

6   A.R.S. §§ 8-453(A)(20), 8-105.01(B), and 8-514(C)].  To the extent that such a claim is

7   made, it must fail as a matter of law.

8          Courts have generally refused to extend *Mancari* to instances in which an entity

9   other than Congress legislates toward Indian tribes because only Congress possesses the

10   requisite unique and constitutional obligations to justify such legislation.  *See Tafoya v.*

11   *City of Albuquerque*, 751 F. Supp. 1527, 1530 (D. N.M. 1990) ["The City of

12   Albuquerque does not have comparable power to treat members of federally recognized

13   Indian tribes . . . differently than other groups of Indians or non-Indians"].

14          Courts have also recognized that if, as here, a state merely follows a federal

15   statute and adopts a state law regarding rights of Indian tribes or their members

16   consistent with existing Congressional action, the state law will also satisfy equal

17   protection as long as it has a rational basis.  *See Yakima Indian Nation*, 439 U.S. at 501–

18   02; *New York Ass'n of Convenience Stores v. Urbach*, 92 N.E.2d 204, 213, 699 N.E.2d

19   904, 908 (N.Y. App. 1998) [citing *Yakima* to support that states "may adopt laws and

20   policies to reflect or effectuate Federal laws designed 'to readjust the allocation of

21   jurisdiction over Indians' without opening themselves to the charge that they have

22   engaged in race-based discrimination"].

23          Here, the three challenged Arizona statutes do not expand ICWA and are merely

24   consistent with Congress's action.  *See* A.R.S. § 8-105.01(B) [anti-discrimination statute

25   does not impact the duties set forth in ICWA]; A.R.S. § 8-453(A)(20) [the Director shall

26   "[e]nsure the department's compliance with the Indian child welfare act"]; A.R.S. § 8-

27   514(C) [setting an order of placement preferences consistent with ICWA.  Plaintiffs

28   have not pleaded any manner in which those statutes expand on Congress's actions via

16

1  ICWA.  Accordingly, the FAC does not state a cognizable legal claim that the Arizona

2  implementing statutes are unconstitutional.

**VI**

**CONCLUSION**

5       For the reasons shown above, as well as in the previously filed Motions as cited

6  herein, this Court should abstain and dismiss Plaintiffs' First Amended Complaint in its

7  entirety and with prejudice as against Defendant, Gregory McKay, in his Official

8  Capacity as Director of the Arizona Department of Child Safety.

9       **RESPECTFULLY SUBMITTED** this 22nd day of April, 2016.

**MARK BRNOVICH**
**Arizona Attorney General**


s/ Gary N. Lento
**Dawn R. Williams**
**Gary N. Lento**
**Melanie G. McBride**
**Joshua R. Zimmerman**
ARIZONA ATTORNEY GENERAL
1275 West Washington Street
Phoenix, Arizona  85007-2926
*Attorneys for GREGORY MCKAY, in his*
*Official Capacity as Director of the Arizona*
*Department of Child Safety*

1

**CERTIFICATE OF SERVICE**

2
      I hereby certify that on April 22, 2016, I electronically transmitted the attached

3
document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4
Notice of an Electronic Filing to the following CM/ECF registrants:

5

6
Aditya Dynar (031583)
GOLDWATER INSTITUTE

7
500 East Coronado Road
Phoenix, AZ 85004 (602) 462-5000

8
litigation@goldwaterinstitute.org

9
*Attorneys for PLAINTIFFS*

10

11

Michael W. Kirk *(admitted pro hac vice)*
Brian W. Barnes *(admitted pro hac vice)*
Harold S. Reeves *(admitted pro hac vice)*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D. C. 20036
(202) 220-9600
(202) 220-9601 (fax)
mkirk@cooperkirk.com

*Attorneys for PLAINTIFFS*

12
John C. Cruden
Steve Miskinis

13
Ragu-Jara Gregg
UNITED STATES DEPARTMENT OF JUSTICE

14
P.O. Box 7611
Ben Franklin Station

15
Washington, D.C. 20044-7611
Telephone: (202) 305-0262

16
Steven.Miskinis@usdoj.gov

17
*Attorneys for FEDERAL DEFENDANTS*

18

19

**MARK BRNOVICH**
**Arizona Attorney General**

20
s/ Gary N. Lento

21
**Dawn R. Williams**
**Gary N. Lento**

22
**Melanie G. McBride**
**Joshua R. Zimmerman**

23
*Attorneys for Defendant GREGORY A. McKAY,*
*in his Official Capacity as Director of the*

24
*Arizona Department of Child Safety*

25

26

27

28