Steven Miskinis
JoAnn Kintz
Judy Harvey
Ragu-Jara Gregg
U.S. Department of Justice
Environment & Natural Resources Div.
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044-7611
Telephone: (202) 305-0262
Email: steven.miskinis@usdoj.gov
*Attorneys for Federal Defendants*

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| A.D., C.C., L.G., and C.R. by CAROL COGHLAN CARTER, and DR. RONALD FEDERICI, their next friends; S.H. and J.H., a married couple; M.C. and K.C., a married couple; K.R. and P.R., a married couple; for themselves and on behalf of a class of similarly-situated individuals,<br><br>　　　　　Plaintiffs,<br><br>　　　v.<br><br>KEVIN WASHBURN, in his official capacity as Assistant Secretary of INDIAN AFFAIRS, BUREAU OF INDIAN AFFAIRS; SALLY JEWELL, in her official capacity as Secretary of the Interior, U.S. DEPARTMENT OF THE INTERIOR; GREGORY A. McKAY, in his official capacity as Director of the ARIZONA DEPARTMART OF CHILD SAFETY,<br>　　　　　Defendants. | No.  2:15-CV-01259- PHX-NVW<br><br>**FEDERAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>(Assigned to The Honorable Neil V. Wake) |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

ARGUMENT..........................................................................................................2

I.   Plaintiffs Lack Standing ................................................................................2

II.  Neither Federici Nor Carter are Appropriate Next Friends ..........................5

III. ICWA is not a Race-based Statute ................................................................6

IV.  ICWA Does not Force Associations with Tribes..........................................9

V.   Ohio's Amicus Brief Raises Meritless Arguments .....................................13

CONCLUSION.....................................................................................................14

The Federal Defendants hereby submit this Reply in support of their Motion to Dismiss Plaintiffs' First Amended Complaint in its entirety.[1]

## **INTRODUCTION**

Plaintiffs challenge the constitutionality of the Indian Child Welfare Act ("ICWA"), framing it as a case about race, and seeking to shoehorn it into the contours of a civil rights action by alleging race-based discrimination.  They repeatedly claim that ICWA is a race-based statute and proffer civil rights case law as precedent.  The Supreme Court has repeatedly rejected this argument, however, holding that Congress has broad and unique authority under its Indian Affairs Powers to enact statutes like ICWA that address federally recognized tribes and their members and that such statutes are neither race-based nor violative of the Equal Protection Clause.  The Federal Defendants rely on this settled and applicable law to demonstrate that ICWA – enacted pursuant to Congress's plenary authority over Indian affairs, *see* 25 U.S.C. 1901(1), and designed to protect Indian children, families, and tribes – is constitutionally sound.

With regard to standing, Plaintiffs assert that where race is at issue, that is the end of the inquiry.  They argue that the alleged injury of disparate treatment relieves them of the burden of demonstrating that the specific statutory provisions they challenge are actually applied to them.  Defendants, by contrast, rely on settled standing jurisprudence that requires a showing of actual or imminent injury caused by the statutory provisions challenged, without regard to the nature or characterization of the claim raised.  Here, Plaintiffs have failed to show that ICWA has caused any concrete harm to Plaintiffs.  To the contrary, one child (C.C.) has been adopted by his non-Indian foster care providers, A.D.'s child welfare proceeding remains in State court, Plaintiffs'

---

[1] This brief incorporates by reference the briefs supporting the Federal Defendants' initial motion to dismiss. *See* ECF No. 68 (Federal Defendants' Motion to Dismiss and Memorandum of Points and Authorities); ECF No. 106 (Federal Defendants' Reply Memorandum in Support of Their Motion to Dismiss).  Page references to ECF documents refer to the page numbering of the native document, not the pagination superimposed by the ECF system.

1

forum of choice, and C.R. and L.G. remain together in a non-Indian foster home.

With regard to Plaintiffs' claim that ICWA is race-based, they cannot escape settled Supreme Court precedent holding that federal laws addressed to Indians are based on a political relationship, not a racial classification. That is especially so when the law in question, like ICWA, deals with federally recognized tribes and their members. Regardless, Plaintiffs argue that tribal citizenship is a proxy for race, and that laws concerning tribes and their members are race-based statutes. This argument attacks the constitutionality of federal Indian law, some of which dates to the first days of this Nation. Moreover, Plaintiffs' most recent brief clearly implies that the very existence of Indian tribes is unconstitutional, even though Indian tribes are expressly contemplated in the Constitution. These arguments have been consistently rejected, leaving this Court with the decision to choose between Plaintiffs' position and settled, binding Supreme Court precedent. *See, e.g.*, *United States v. Antelope*, 430 U.S. 641 (1977); *Morton v. Mancari*, 417 U.S. 535 (1974); *see also Worcester v. Georgia*, 31 U.S. 515 (1832) (recognizing that Indian nations are distinct independent political communities).

Plaintiffs' arguments are particularly suspect here, where counsel purports to speak on behalf of a class of the very Indian children that Congress designed the statute to help. The interests of these children diverges from Plaintiffs' agenda, and this Court should reject the effort to make them pawns in an ideological crusade against long-standing principles of Indian law.

## **ARGUMENT**

### I.   **Plaintiffs Lack Standing.**

Plaintiffs are required to demonstrate redressable injury for each provision of ICWA they wish to challenge. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). As in previous briefing, Plaintiffs decline to explain which provisions of ICWA are being applied to which Plaintiffs, simply asserting that ICWA injures them through

2

unequal treatment. ECF No. 187 at 1, 3. The cases they cite, however, do not advance their argument because they concern equal protection challenges to specific provisions where those provisions are actually applied. *See Heckler v. Matthews*, 465 U.S. 728, 735, 738 (1984) (challenge to pension offset provision specifically applied to plaintiff to limit benefits); *Davis v. Guam,* 785 F.3d 1311, 1314 (9th Cir. 2015) (discriminatory law applied to bar plaintiff from participating); *Palmore v. Sidoti*, 466 U.S. 429, 430-31 (1984) (appeal of discriminatory child custody decision directly involving plaintiff); *see also* ECF No. 106 at 2 (noting that Plaintiffs' own cases undermine their theory that they need not show specific application to themselves of statutory provisions they wish to challenge). *Sabre, Inc. v. Department of Transportation* is particularly inapposite because it concerned pre-enforcement review of a regulation involving significant civil penalties for violation. 429 F.3d 1113, 1118-119 (D.C. Cir. 2005).[2] Moreover, it is not clear that even where a provision is being applied to Plaintiff, its bare application without a showing of harm supports standing, particularly for claims not brought on equal protection grounds. *See Lipscomb By and Through DeFehr v. Simmons*, 962 F.2d 1374, 1376-77 (9th Cir. 1992) (finding claim of "constitutional injury" for class of plaintiffs unharmed by statute subject to equal protection challenge "difficult to comprehend").

Plaintiffs claim that it is not speculative that C.R. will be adopted, noting that his case management plan has been changed to severance of parental rights. ECF No. 187 at 3 n.4. But the very paragraph upon which they rely makes clear that "[t]he parental rights of L.G. and C.R.'s birth parents have *not* been terminated," and that must occur before C.R. can be adopted by new parents. ECF No. 173 ¶ 37 (emphasis added). *See also id.* ¶ 42 (the "relevant state court properly having jurisdiction over the matter has

---

[2] Even in that context, the plaintiff proffered evidence of concrete plans to violate the regulatory provision at issue. *Id.* at 1118 ("Sabre has proffered evidence . . . that confirms the present existence of marketing plans . . . that might very well result in enforcement actions and consequent civil fines.").

3

1  not declared L.G. and C.R. as available for adoption."). Plaintiffs further allege that
2  P.R. and K.R., the foster care providers intent on adopting C.R. and L.G., "are not party
3  intervenors in the state child custody proceeding of L.G. and C.R." *Id.* ¶ 38. Even
4  construing the allegations of the complaint most favorably towards Plaintiffs, the
5  application of ICWA's adoption preferences to C.R. is entirely speculative at this point.
6    As to L.G., by its plain terms ICWA does not apply to her, as she is not an Indian
7  child. *Id.* ¶ 40. Plaintiffs argue that ICWA affects her indirectly because of her familial
8  relation with C.R. ECF No. 187 at 4. Even if true, this "indirect" application of ICWA
9  is not because of her race but because of her familial relations; thus, she does not have
10 standing to bring a race-based challenge to any ICWA provision. And this alleged harm
11 is speculative, as well. At present, C.R. and L.G. are together in foster care, but neither
12 is available for adoption. ECF No. 173 ¶ 42. Nonetheless, Plaintiffs ironically argue
13 for a broad interpretation of ICWA, alleging that it overrides state laws that "ordinarily
14 would place her and C.R. together." ECF No. 187 at 4. They claim that but for ICWA,
15 "K.R. and P.R. would be free to adopt both C.R. and L.G. upon a state court's
16 termination of parental rights," something that has not yet happened, so even this
17 alleged indirect injury to L.G. by ICWA is speculative. *Id.* at 5. Plaintiffs also allege
18 that L.G. will be subject to ICWA's evidentiary standard in determining whether to
19 terminate her parents' rights. *Id.* A state court, however, could apply a state law
20 standard to L.G.'s parents and a different standard to C.R.'s parents (who are not
21 identical to L.G.'s parents). Plaintiffs speculate on differing possible outcomes that
22 L.G. may face in future adoption proceedings. *Id.* at 6. But Plaintiffs' speculative web
23 of contingencies – the same sort of conjecture regarding outcomes that did not come to
24 pass for C.C. – only emphasizes the fact that L.G. is not currently being impacted by
25 ICWA and may never be, leaving Plaintiffs without standing or ripeness to bring claims
26 challenging ICWA on her behalf.
27    The foster care providers, P.R. and K.R., are not parties to L.G. and C.R.'s child
28

4

custody proceedings, as noted above, and have not filed a petition for adoption. As a result, they are not subject to ICWA in any respect and thus also lack standing.

## II. Neither Federici Nor Carter are Appropriate Next Friends

Plaintiffs attempt to remedy the deficiencies in their choice of next friends by arguing the Federal Rules of Civil Procedure are "broadly written" and that there are "flexible standards" as to who may serve as next friends for children. ECF No. 187 at 9. However, even a liberal approach as to who may serve as a next friend, an approach the Ninth Circuit has rejected,[3] would not cure the fact that Federici and Carter have alleged *no relationship*, *nor even familiarity*, with the children they seek to represent. As in prior briefing, Plaintiffs again rely on *Sam M. ex. rel. Elliott v. Carcieri*, 608 F.3d 77 (1st Cir. 2010), in which the court allowed as next friend a sociology professor who was familiar with the particular state's foster system and the children's situation.[4] They also rely upon *Nichols v. Nichols*, No. 10-CV-651-HA, 2011 WL 2470135, at 1 (D. Or. June 20, 2011), in which the court accepted as next friend a professional fiduciary appointed by the court as next friend, precisely because of his objectivity, and determined that the case qualified as an "extreme case" because it involved a dispute over who was a beneficiary to insurance proceeds. *Id.* at 4. Here, Plaintiffs propose two "next friends": first, a neuropsychologist who specializes in international adoption, but who has no alleged experience with ICWA, no connection to the State of Arizona or its foster care system, and no connection to the plaintiff children or their child-welfare cases; second, a lawyer, who also has no connection to the children or their child welfare cases.

---

[3] *See Coal. of Clergy v. Bush*, 310 F.3d 1153, 1162 (9th Cir. 2002) (recognizing that the relaxation of the significant relationship requirement for a next friend only in "extreme circumstances").

[4] In *Elliott*, in addition to the sociology professor, the court also determined as suitable two other individuals as next friends, a former foster parent and a school psychologist, who knew the children they sought to represent. 608 F.3d at 93. Unlike Plaintiffs here who seek to have two next friends broadly appointed for all children in this action, in *Elliott* consideration was given to each child and his or her purported next friend. *Id.* at 92-93.

5

Plaintiffs claim that these two people can somehow adequately speak for and know the best interests of these children.[5] This is a remarkable assertion that is wholly unsupported by the cases Plaintiffs cite, especially absent a demonstration that this is an "extreme case."

Plaintiffs go further, claiming that it would not be a disqualifier should "Carter and Federici have opinions about the effects of ICWA[,]" ECF No. 187 at 10. Yet, this is precisely the situation the standards for next friends are designed to prevent. *See Ad. Hoc. Comm. of Concerned Teachers v. Greenburgh No. 11 Union Free Sch. Dist.*, 873 F.2d 25, 31 (2nd Cir. 1989) ("We would not sanction any attempt to assert the legitimate rights of children as a mere pretext for advancing ulterior political or economic aims."); *see also Nichols*, 2011 WL 2470135, at *4 (noting importance of candidate's objectivity in making him a suitable next friend where he did not have pre-existing relationship with the child). Carter and Federici are inappropriate next friends and as such lack standing to bring this suit on behalf of plaintiff children.

### III. ICWA is not a Race-based Statute

Most of Plaintiffs' case hangs on their assertion that ICWA is a racially discriminatory statute. Their problem is that it has been long-settled that federal legislation dealing with Indians is different, leaving Plaintiffs' battery of civil rights cases simply inapposite.

Plaintiffs incorrectly suggest that *Rice v. Cayetano*, 528 U.S. 495 (2000), supports their case. In *Rice*, the Court struck down a state law on Fifteenth Amendment grounds that restricted voting in a state election to people of Hawaiian ancestry. 528 U.S. at 517. But that very case *affirmed* that "Congress may fulfill its treaty obligations and its responsibilities to the Indian tribes by enacting legislation dedicated to their circumstances and needs," dealing with tribes as political rather than racial entities. *Id.*

---

[5] The Amended Complaint does not so much as allege that these "next friends" have met the children.

6

at 519-20. Plaintiffs shoulder an impossible burden in attempting to argue that federal legislation addressed to federally recognized tribes and their members raises equal protection concerns.[6]

The Supreme Court, in *Fisher v. District Court of Sixteenth Judicial District of Montana, in & for Rosebud County*, 424 U.S. 382 (1976), long ago decided that treating tribal members differently from non-members did not trigger strict scrutiny. And *United States v. Antelope*, 430 U.S. 641 (1977), held federal legislation subjecting tribal members to federal criminal law rather than, what in that context was, the more lenient state criminal law, also did not trigger strict scrutiny. Plaintiffs, in their efforts to argue that ICWA's tribal membership eligibility requirement makes it a race-based statute, wind up asserting that "tribal membership . . . is unconstitutional," ECF No. 187 at 15. Plaintiffs argue *Fisher* is "off-point," ECF No. 187 at 12, but *Fisher* makes clear that tribes and statutes addressed to tribal members are not unconstitutional.[7] *Fisher* and *Antelope* are directly on point, remain good law (as shown in *Rice*), and they require dismissal of all Plaintiffs' claims premised on the argument that ICWA is a race-based statute.[8]

Plaintiffs seize on Ninth Circuit dicta indicating that there may be limits to the

---

[6] In addition, Plaintiffs misconstrue the reference to ICWA in the Multi-Ethnic Placement Act ("MEPA") as an "exemption," ECF No. 187 at 12, wrongly implying that ICWA operates on the basis of race but is nonetheless permissible. Rather, MEPA merely clarifies that ICWA *does not operate on the basis of race* and "shall not be construed" as doing so. 42 U.S.C. § 1996b(3).

[7] Plaintiffs assert *Fisher* is irrelevant because ICWA protects tribal jurisdiction over members in child welfare proceedings off-reservation as well as on-reservation. ECF No. 187 at 13. But as the Federal Defendants already noted, the nexus between a tribe and its members cannot be converted from a permissible political one to an impermissible racial one based on the location of the member alone. *See* ECF No. 178 at 7-8.

[8] Those claims are Count 1, ECF No. 173 at ¶¶ 110-117 (equal protection); Count 2, *id.* ¶ 121 (denial of race neutral treatment amounting to denial of due process); and Count 3, *id.* ¶¶ 129-130 (denial of equal protection and substantive due process based on race).

7

applicability of *Morton v. Mancari*, 417 U.S. 535 (1974). Those cases, however, only reinforce the fact that ICWA is an exemplar of the kind of legislation that does not implicate strict scrutiny. *Kahawaiolaa v. Norton* noted that "Government discrimination against Indians based on race or national origin *and not on membership or non-membership in tribal groups* can be race discrimination subject to strict scrutiny." 386 F.3d 1271, 1279 (9th Cir. 2004) (emphasis added). But ICWA applies based "on membership or non-membership in tribal groups." This suffices, for the Ninth Circuit, to bring ICWA safely within the sweep of *Mancari*. Plaintiffs' other case, *Malabed v. North Slope Borough*, offers only a footnote noting that hypothetical federal legislation barring state legislation preventing employment discrimination in favor of Native Americans would raise constitutional concerns. 335 F.3d 864, 868 n. 5 (9th Cir. 2003). Plaintiffs do not suggest that ICWA is in any way comparable to such a hypothetical statute.

In their parade of dicta, Plaintiffs overlook *Williams v. Babbitt*, 115 F.3d 657 (9th Cir. 1997). There the Ninth Circuit expressed concerns about the constitutionality of an agency interpretation of a federal law that would bar non-Indians from entry in the reindeer industry in Alaska. *Id.* at 659, 663-66. The Court suggested that a statute which "in no way relates to native land, *tribal or communal status, or culture*" might not fall under *Mancari*. *Id.* at 664 (emphasis added). Once again, ICWA falls squarely within the sweep of *Mancari* as construed by Ninth Circuit dicta. ICWA defines "Indian child" in terms of tribal membership and protects the familial relation of tribal members with their membership-eligible children and the relationship those children have with their tribal community and culture. And Congress found that State interference with those core relations struck at the heart of tribal sovereignty and self-governance. 25 U.S.C. §§ 1901, 1902.[9]

---

[9] Amicus Ohio decries ICWA's supposed intrusion on state domestic matters. ECF No. 191 at 3-4. But the domestic relations at issue here involve tribal members and control over matters of tribal membership and domestic relations have consistently been

8

In *Kahawaiolaa*, the Ninth Circuit explained that in *Rice*, the Supreme Court "explicitly reaffirmed and distinguished the political, rather than racial, treatment of Indian tribes as explained in *Mancari*." 386 F.3d at 1279. And in the two decades since *Williams*, the Ninth Circuit has reaffirmed that preferences for Indians are political in nature as well. *See EEOC v. Peabody W. Coal Co.*, 773 F.3d 977, 988 (9th Cir. 2014) (upholding hiring preference based on tribal affiliation as a political classification designed to further the federal government's trust obligations to the tribe). ICWA eligibility is keyed upon tribal membership, a voluntary, political relationship rather than an involuntary racial relationship, and that spells the end of Plaintiffs' equal protection claim.[10]

### IV.   ICWA Does not Force Associations with Tribes

ICWA applies only where a child is a member of a tribe, or is eligible for membership and her parent is a member. This membership is a voluntary association by the parent, or by the parent on behalf of their child. This fact requires dismissal of

---

regarded as at the core of tribal sovereignty and self-determination. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 55-56 (1978). Moreover, as noted in prior briefing, ICWA does not displace State authority over child custody proceedings but rather overlays minimum Federal standards where those proceedings concern an Indian child. *See* ECF No. 106 at 18.

[10] Plaintiffs and Amicus Ohio complain that the third of ICWA's adoptive preferences, for "Indian families," 25 U.S.C. § 1915(a), is a racial preference because it applies regardless of whether the Indian family shares a tribal affiliation with the Indian child. This argument is belied by the plain language of ICWA. "Indian" is defined by ICWA as a "member of an Indian tribe," and Indian tribe means federally recognized tribes, *id.* §§ 1903(3), (8). Thus, the preference is for other families who are politically affiliated with an Indian tribe. Placement outside an Indian child's tribe does not convert a political relationship into a racial one. *C.f. United States v. Lara*, 541 U.S. 193, 200-07 (2004) (acknowledging Congress's authority to recognize tribe's jurisdiction over non-member Indians); *Means v. Navajo Nation*, 432 F.3d 924, 934 (9th Cir. 2005) (rejecting equal protection challenge to federal statute providing for tribal jurisdiction over non-member Indians and explaining that the "statute subjects [plaintiff] to Navajo criminal jurisdiction not because of his race but *because of his political status as an enrolled member of a different Indian tribe*.") (emphasis added).

9

Plaintiffs' First Amendment claim and undermines their assertion that ICWA is race-based rather than based on a voluntary political relation.[11] Plaintiffs cannot contest this principle of federal Indian law directly so they offer two cases purporting to highlight nonconsensual instances of tribal membership and they resort to impugning tribal membership as unconstitutional (a claim that was addressed in the prior section). Neither case supports their argument.

Plaintiffs' first case is *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30 (1989). That case does not concern whether tribal membership is consensual but at most shows that having consented to tribal membership and all its benefits, a person must also bear its burdens, something true of all forms of citizenship. In *Holyfield*, the Court held that two tribal members who lived on their reservation and were domiciled there but gave birth off-reservation were nevertheless subject to ICWA and tribal court jurisdiction for purposes of child custody proceedings concerning the child. *Id.* at 37, 48-53. There was no question of a tribe refusing to allow a member to renounce membership.[12] Nor have Plaintiffs alleged that there has been a renunciation of tribal membership in this case.

---

[11] "Means has chosen to affiliate himself politically by maintaining enrollment in a tribe. His Indian status is therefore political, not merely racial." *Means*, 432 F.3d at 935.

[12] In fact, Plaintiffs' comparison between parents' efforts to direct the citizenship of their children actually proves that ICWA's reliance on tribal membership is political and not racial. Plaintiffs are correct that a child would not be a U.S. citizen by birth if her parents leave the country *and renounce their citizenship* before the birth. ECF No. 187 at 15. However, if those same hypothetical Americans simply traveled to Canada to give birth but did not renounce their citizenship (thus maintaining for themselves the benefits of American citizenship), their child would be a citizen at birth. In other words, the citizenship of the child follows the citizenship (not the race, not the physical location) of the parents. In *Holyfield*, two tribal members domiciled on the reservation sought to avoid ICWA's application simply by leaving the reservation to give birth, *without renouncing their tribal membership*. Had the parents renounced their tribal membership (as Plaintiff's hypothetical Americans renounced their citizenship), ICWA would not have applied, because ICWA only applies where the child is a tribal member or is the biological child of a tribal member. 25 U.S.C. § 1903(4).

10

1    Plaintiffs' other case is *In re M.K.T.*, 2016 OK 4, 368 P.3d 771, *as corrected*
2 (Feb. 1, 2016), which they argue shows that a tribe can overrule a member's effort to
3 relinquish membership and escape application of ICWA. ECF No. 187 at 15. Not so.
4 Instead the court found that the record was insufficient to allow the court to address
5 whether "the tribe improperly kept the father a member for the purpose of this
6 litigation." *Id.* ¶ 89. Further, the court explained that had the record been properly
7 prepared, there might be a need to decide "whether a State court had jurisdiction to
8 adjudicate a claim that a tribe wrongfully declined to process a request for
9 relinquishment of membership and whether an ICWA-status is altered by the tribe's
10 conduct." *Id.* ¶ 83. Plaintiffs' Amended Complaint alleges no comparable facts so
11 questions of what happens if a tribe refuses to allow a member to relinquish
12 membership are not part of this case. If anything, *In re M.K.T.* supports Defendants, as
13 the underlying premise of the court's discussion is that *tribal membership is bilateral*
14 *and consensual and should normally be terminable by either the member or the tribe*.[13]

15    Plaintiffs ask how C.R. can consent to be "born" into a family where his parents
16 have elected to be and remain members of an Indian tribe, ECF No. 187 at 14, while at
17 the same time preposterously suggesting adoptive and foster care placements are truly
18 consensual relationships, *id.* at 16. As a child, C.R. is too young to consent to anything
19 and relies on the choices of his parents. Here, C.R.'s parents chose to be citizens in a
20 tribe and Congress reasonably determined that ICWA should apply to protect their
21 membership-eligible children regardless of whether the parents had opportunity to take

---

[13] *In re M.K.T.* is also relevant to Plaintiffs' Administrative Procedure Act challenge to the Bureau of Indian Affairs 2015 Guidelines for State Courts and Agencies in Indian Custody Proceedings, Feb. 25, 2015, 80 Fed. Reg. 10146 ("Guidelines"). The court explained that "[u]se of the Guidelines is not mandatory, but they are instructive and advisory in nature. . . ." *Id.* ¶ 45. *See also id.* ¶ 45 n. 18 (Guidelines non-binding interpretive rule). So much for Plaintiffs' claim that the Guidelines are binding in nature.

the necessary steps to enroll their child before child custody proceedings begin.[14]  Just as a U.S. citizen's child is entitled to U.S. citizenship at birth, C.R. is an "Indian child" at birth due to his own eligibility for tribal membership and his parents' voluntary tribal citizenship.  Further, in C.R.'s case, Plaintiffs allege that he is not only membership-eligible, but already a member.  ECF No. 173 ¶ 12.  In the end, Plaintiffs' arguments about what is consensual and what is not absurdly leads to the assertion that children have First Amendment claims against their natural parents for being forced to be "born" to them, while, in contrast, they escape this violation of their rights by being in foster care, which is somehow "consensual" for the child.  This nonsensical rhetoric should not distract the Court from the only relevant legal principle here: tribal membership is a bilateral consensual relationship so ICWA does not force any tribal association.[15]

---

[14] Plaintiffs' statement that "ICWA mandates that [the] government take steps to enroll children in tribes when eligible, *even if the parents do not wish this*," ECF No. 187 at 14 n.9 (emphasis in original) (citing ECF No. 80 at 8), shows that Plaintiffs cannot accurately read even their own brief.  Their earlier brief argues that "*the BIA Guidelines*," not ICWA itself, "provide that ICWA-eligible children *should be enrolled* in their tribes," not that such enrollment is mandatory.  ECF No. 80 at 8 (citing 80 Fed. Reg. 10153 § B.4(d)(iii) (emphasis in original).

[15] The inability of a child to either consent or not consent to tribal membership answers Amicus State of Ohio's argument that ICWA must be race-based because it reaches children eligible for membership but not yet actual tribal members – provided one of the child's parents is a tribal member.  ECF No. 191 at 11-12.  Ohio acknowledges that statutes dealing with federally recognized tribes and their members are not race-based, but attempts to exclude ICWA from this category based on its protection of membership-eligible children.  *Id.* at 11-12.  Such a child has neither elected nor rejected tribal membership but his or her eligibility, combined with the choice of a parent to be a tribal member, reasonably places both the parent and the child within the reach of ICWA's protections.  Application of ICWA here turns not on the child's race but that child's parent's political affiliation with a tribe and the child's own potential affiliation.  *See* H.R. Rep. No. 95-1386, at 16-17 (recognizing that "for an adult Indian there is an absolute right of expatriation from one's tribe" but that the minority of Indian children precludes them from making a "reasoned decision about their tribal and Indian identity").  If Ohio's view were to prevail, Congress would be unable to protect Indian children in a variety of contexts simply because they were too young to obtain membership.

12

## V. Ohio's Amicus Brief Raises Meritless Arguments

The State of Ohio has filed an amicus brief arguing in the main that (1) ICWA unconstitutionally commandeers state officers; (2) ICWA exceeds Congress's authority under the Indian Commerce Clause; and (3) ICWA is a race-based statute, which has been addressed above. ECF No. 191.

ICWA does not commandeer state officers. As explained previously, it establishes federal standards that apply in state child custody proceedings and leaves it to state courts to enforce those standards. *See* ECF No. 68 at 31-32 (state court enforcement of federal law does not implicate the Tenth Amendment); *Printz v. United States*, 521 U.S. 898, 907 (1997) ("the Constitution was originally understood to permit imposition of an obligation on state *judges* to enforce federal prescriptions, insofar as those prescriptions related to matters appropriate for the judicial power") (emphasis in original). Ohio complains that ICWA's adoptive preferences commandeer State executive officers, but instead ICWA merely specifies an order of preference to follow in determining an Indian child's adoptive or foster-care placement. *See* 25 U.S.C. § 1915(a), (b). This provision sets preferences for State *courts* to follow in adjudicating foster-care and adoption proceedings.[16]

Ohio's Indian Commerce Clause challenge repeats Plaintiffs' urgings that this Court embrace the reasoning of Justice Thomas's lone concurrence in *Adoptive Couple v. Baby Girl*, 133 S. Ct. 2552, 2565 (2013). That has been addressed and demonstrated invalid in prior briefing. *See* ECF No. 68 at 29-30; ECF No. 106 at 17-18. Nevertheless, it is worth repeating that Justice Thomas himself acknowledged that he was at odds with the Court's own precedent concerning the reach of the Indian Commerce Clause, *Baby Girl*, 133 S. Ct. at 2566-67, and four Justices in dissent

---

[16] Ohio's challenge to Guidelines provisions also does not implicate the Tenth Amendment because the Guidelines are an advisory document, and routinely treated as such by State courts, leaving State executive agency compliance with their recommendations a discretionary State agency matter. *See* ECF No. 68 at 33-35.

13

dismissed the argument in a footnote noting the same, *id.* at 2584 n.16 (Sotomayor, J. dissenting).  While Ohio is free to hitch its wagon to Justice Thomas's *Baby Girl* concurrence, this Court is not.  It must follow the Supreme Court's clear precedent concerning the plenary reach of the Indian Commerce Clause.  *See Mich. v. Bay Mills Indian Cmty*, 134 S. Ct. 2024, 2030 (2014) ("'The Constitution grants Congress' powers 'we have consistently described as "plenary and exclusive"' to 'legislate in respect to Indian tribes.'") (quoting *United States v. Lara*, 541 U.S. 193, 200 (2004)).

## **CONCLUSION**

For the forgoing reasons, the Court should dismiss or abstain from hearing Plaintiffs' claims.

RESPECTFULLY SUBMITTED this 20th day of May, 2016.

>JOHN C. CRUDEN
>Assistant Attorney General
>
>s/*Steve Miskinis*
>Steve Miskinis
>JoAnn Kintz
>Indian Resources Section
>Judy Harvey
>Ragu-Jara Gregg
>Law and Policy Section
>U.S. Department of Justice
>Environment & Natural Resources Div.
>P.O. Box 7611
>Ben Franklin Station
>Washington, D.C. 20044-7611
>Telephone: (202) 305-0262
>Email: steven.miskinis@usdoj.gov
>*Attorneys for Federal Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

MARK BRNOVICH
ATTORNEY GENERAL
Firm Bar No. 14000
John S. Johnson
Gary N. Lento
Joshua R. Zimmerman
Dawn R. Williams
Melanie G. McBride
Division Chief Counsel
1275 West Washington Street
Phoenix, Arizona 85007
Telephone: (602) 542-9948
e-mail: John.Johnson@azag.gov
*Attorney for Defendant Gregory A. McKay*

Aditya Dynar
Christina Maria Sandefur
Scharf-Norton Center for Constitutional Litigation at the Goldwater Institute
500 East Coronado Road
Phoenix, Arizona 85004
(602) 462-5000
e-mail: litigation@goldwaterinstitute.org

Michael W. Kirk
Brian W. Barnes
Harold S. Reeves
Cooper & Kirk, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D. C. 20036
(202) 220-9600
(202) 220-9601 (fax)
*Attorneys for Plaintiffs*

15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>s/*Steven Miskinis*</u>
Steven Miskinis
U.S. Department of Justice
ENRD/Indian Resources Section/
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044-7611
Telephone: (202) 305-0262
Email: steven.miskinis@usdoj.gov
*Attorneys for Federal Defendants*