**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| A.D., C.C., L.G., and C.R., by Carol Coghlan Carter, and Dr. Ronald Federici, their next friends; S.H. and J.H., a married couple; M.C. and K.C., a married couple; K.R. and P.R., a married couple; for themselves and on behalf of a class of similarly-situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>Kevin Washburn, in his official capacity as Assistant Secretary of Indian Affairs, Bureau of Indian Affairs; Sally Jewell, in her official capacity as Secretary of the Interior, U. S. Department of the Interior; Gregory A. McKay, in his official capacity as Director of Arizona Department of Child Safety,<br><br>Defendants. | No. CV-15-01259-PHX-NVW<br><br>**ORDER** |

Before the Court are the Motion of the Gila River Indian Community to Intervene as Defendant (Doc. 47) and the Amended Motion to Intervene by the Navajo Nation (Doc. 198). Defendants Kevin Washburn and Sally Jewell ("Federal Defendants") consent to the motions, Defendant Gregory McKay ("State Defendant") takes no position, and Plaintiffs oppose the motions. Oral argument was heard on September 28, 2016.

## I. BACKGROUND

Plaintiffs filed this action on behalf of themselves and all off-reservation Arizona-resident children with Indian ancestry and all off-reservation Arizona-resident foster, preadoptive, and prospective adoptive parents in child custody proceedings involving children with Indian ancestry. Plaintiffs seek a declaration that provisions of the Indian Child Welfare Act ("ICWA"), specifically 25 U.S.C. §§ 1911(b), 1912(d), 1912(e), 1912(f), 1915(a), 1915(b), and the 2015 Guidelines issued by the Bureau of Indian Affairs, §§ A.2, A.3, B.1, B.2, B.4, B.8, C.1, C.2, C.3, D.2, D.3, F.1, F.2, F.3, F.4, violate the United States Constitution, federal civil rights statutes, and Title VI of the Civil Rights Act. They seek to enjoin the Federal Defendants from enforcing these provisions and the State Defendant from complying with and enforcing these provisions. In addition, Plaintiffs allege that ICWA exceeds the federal government's power under the Indian Commerce Clause and the Tenth Amendment, but do not expressly seek a declaration that all of the provisions of ICWA are unconstitutional.

Plaintiff C.C. is an enrolled member of the Navajo Nation. Parental rights of C.C.'s birth parents were terminated, and adoption of C.C. by Plaintiffs M.C. and K.C. was finalized by the state court in November 2015.

Plaintiff A.D. is an enrolled member of the Indian Community. Plaintiff C.R. is eligible for membership in and is a child of a member of, or is already an enrolled member of, the Indian Community. Plaintiff L.G. is C.R.'s half-sibling and is not eligible for membership in the Pascua Yaqui Tribe of Arizona. Parental rights of A.D.'s, C.R.'s, and L.G.'s birth parents have been terminated by the state court, which is treating C.R.'s and L.G.'s cases as one.

The Gila River Indian Community ("Indian Community") and the Navajo Nation are both federally recognized tribes and seek to intervene as of right as defendants in this case and, in the alternative, to intervene permissively.

## II. INTERVENTION OF RIGHT

### A. Legal Standard

On timely motion, the court must permit anyone to intervene who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). "Courts are guided primarily by practical and equitable considerations." *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003).

"[A]n applicant for intervention as of right must demonstrate that: (1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest." *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006) (citations omitted). The requirements are broadly interpreted in favor of intervention. *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). However, "[f]ailure to satisfy any one of the requirements is fatal to the application." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

<u>Timeliness</u>. Three factors are considered to determine whether an intervention motion is timely: (1) the stage of the proceeding when the motion is filed; (2) the prejudice to other parties; and (3) the reason for and length of the delay. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997).

<u>Interest</u>. To demonstrate a related significant protectable interest, the applicant must show an interest that is protectable under some law and there is a relationship between the legally protected interest and the claims at issue. *Arakaki*, 324 F.3d at 1084. The "relationship" requirement generally is satisfied only if the resolution of the plaintiff's claims actually will affect the applicant. *Id.* The applicant may not inject unrelated issues into the pending litigation. *Id.* The applicant need not establish a

specific legal or equitable interest, but an economic stake in the outcome of the litigation is not sufficient. *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993).

Potential impairment of interest. "The question of whether protectable interests will be impaired by litigation must be put in practical terms rather than in legal terms." *Akina v. Hawaii*, __ F.3d __, 2016 WL 450186, *5 (9th Cir. Aug. 29, 2016) (citation omitted). Where the applicant remains free to bring a separate action or pursue alternative means of achieving its ultimate objective, the disposition of the action may not impair or impede the applicant's ability to protect its interest. *See id.* "Speculative possibility" of future impairment of an interest does not outweigh the interjection of unnecessary and distracting considerations by an intervenor. *United States v. Washington*, 593 F.3d 790, 801 (9th Cir. 2010) (treaty tribes were not entitled to intervene in recognition proceedings even though a newly recognized tribe might assert treaty rights in the future). However, a court must consider whether factual and legal determinations made in the current proceeding, when upheld by an appellate ruling, may impair the applicant's interest by a *stare decisis* effect in any parallel or subsequent litigation. *United States v. State of Or.*, 839 F.2d 635, 638 (9th Cir. 1988).

Adequacy of representation. "The burden on proposed intervenors in showing inadequate representation is minimal, and would be satisfied if they could demonstrate that representation of their interests 'may be' inadequate." *Arakaki*, 324 F.3d at 1086. Three factors are considered in determining adequacy of representation by the existing parties: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Id.* The most important factor is how the interest of the prospective intervenor's interest compares with the interests of existing parties. *Id.* If the prospective intervenor's interest is identical to that of an existing party, a compelling showing is required to demonstrate that representation is inadequate. *Id.* "When an applicant for intervention and an existing

party have the same ultimate objective, a presumption of adequacy of representation arises." *Id.*

"There is also an assumption of adequacy when the government is acting on behalf of a constituency that it represents." *Id.* "In the absence of a very compelling showing to the contrary, it will be presumed that a state adequately represents its citizens when the applicant shares the same interest." *Id.*; *see League of United Latin Am. Citizens*, 131 F.3d at 1305-06 (governor and state attorney general's vigorous defense of challenged initiative both in court and in the political arena demonstrated they were ready, willing, and able to protect prospective intervenor's asserted interest in upholding the initiative).

To make a compelling showing that the government will not provide adequate representation in defending its statute, a prospective intervenor must demonstrate more than that it is a beneficiary protected by the statute, *Stuart v. Huff*, 706 F.3d 345, 353 (4th Cir. 2013), or that it has greater firsthand knowledge of the impact of legislation on private individuals than does the government, *Prete*, 438 F.3d at 958 n.13. But a prospective intervenor may make a compelling showing by demonstrating that its interests are narrower than, and not subsumed in, that of the government. *Californians For Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998) (union members' interests were potentially "more narrow and parochial" than the interests of the public at large); *Mille Lacs Band of Chippewa Indians v. State of Minn.*, 989 F.2d 994, 1001 (8th Cir. 1993) (counties' and landowners' interests in land value were "narrower and more parochial" than the state's interest in protecting fish and game).

Where a tribe requested that the government place certain lands in trust for its benefit, and the government had an obligation to represent the tribe's interests, a "merely theoretical risk of conflicting duties" did not demonstrate that the government was unable to adequately protect the tribe's interests in the litigation. *South Dakota ex rel. Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 786 (8th Cir. 2003). To establish inadequacy of

representation, the tribe needed to identify specific tribal interests that could only be protected by the tribe's intervention. *Id.*

In determining whether the government will adequately defend a statute, the government's willingness to suggest a limiting construction that is narrower than that of an intervention applicant may be considered. *California ex rel. Lockyer v. United States*, 450 F.3d 436, 444 (9th Cir. 2006). To overcome the presumption of adequacy of representation, the applicant must demonstrate the likelihood—more than mere theoretical possibility—that the government will abandon or concede a potentially meritorious interpretation of the statute. *Id.* at 444-45 (the presumption of adequacy of representation was rebutted by direct evidence the government would take a position that actually compromised protection of the proposed intervenors' interest); *Freedom from Religion Foundation, Inc. v. Geithner*, 644 F.3d 836, 842 (9th Cir. 2011) (presumption was not rebutted where prospective intervenor had presented no evidence the government actually had urged a narrow interpretation and it was unclear whether a narrow interpretation responsive to the constitutional challenge existed).

**B.   Analysis**

<u>Timeliness</u>.  Both motions to intervene were filed at an early stage of this case; motions to dismiss the amended complaint by the Federal Defendants and the State Defendant have not yet been decided. The timing of intervention will not cause prejudice to other parties.

<u>Significant and protectable interest and potential impairment of the interest</u>. The Indian Community and the Navajo Nation have significant protectable interests in the welfare of their members who are named as plaintiffs in this case and in laws that protect their relationship with all of their minor citizens. If Plaintiffs prevail, the Indian Community and the Navajo Nation would be unable to enforce the challenged provisions of ICWA. State court child custody proceedings would be significantly affected by invalidation of ICWA provisions that protect the Indian Community's and the Navajo Nation's interest in maintaining their relationship with their minor citizens, such as the

requirement that active efforts be made to provide remedial services and rehabilitative programs to prevent the breakup of the Indian family before foster care placement or termination of parental rights; the burden of proof required for determining that the continued custody of a child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child; and preferences that favor placement with a member of the Indian child's tribe or foster home approved by the tribe.

In addition, the Indian Community and the Navajo Nation have a legal interest in defining their membership requirements. But there is no such issue in this suit. As conceded at oral argument, none of the 22 recognized Indian tribes in Arizona has a membership requirement of less than one-quarter Indian blood. That is valid under any view of implicit federal law limits on tribal membership criteria for ICWA or otherwise. Plaintiffs challenge as racially discriminatory specific provisions of ICWA regardless of the affected children's quantum of Indian blood.

<u>Adequacy of representation by existing parties</u>. A presumption of adequacy of representation arises because the Indian Community and the Navajo Nation share with the governmental defendants the same ultimate objective, *i.e.*, to uphold ICWA against Plaintiffs' constitutional challenge, and because the governmental defendants are acting on behalf of a constituency that they represent. Although the Indian Community and the Navajo Nation have made arguments that the governmental defendants have not made, no one disputes that the governmental defendants are capable and willing to make those arguments. No one contends that the governmental defendants are likely to suggest a limiting construction of ICWA or to concede a potentially meritorious interpretation of ICWA. No one contends that the governmental defendants have conflicting obligations. Although the Indian Community and the Navajo Nation each have a particular interest in maintaining its relationship with its individual members who are named as plaintiffs, their interest in protecting the tribal-child relationship for every Indian child is shared by the governmental defendants. The fact that the Indian Community and the Navajo Nation

have information regarding specific children and tribal laws does not rebut the presumption that the governmental defendants adequately represent their interests.

Therefore, the Indian Community and the Navajo Nation are not entitled to intervention of right under Federal Rule of Civil Procedure 24(a)(2).

## III.   PERMISSIVE INTERVENTION

### A.   Legal Standard

On timely motion, the court may permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).  To obtain permissive intervention, an applicant must show:  (1) independent grounds for jurisdiction, (2) the motion is timely, and (3) the applicant's claim or defense and the main action have a question of law or fact in common. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997).  "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

### B.   Analysis

Jurisdiction.  The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1346 of this action against federal defendants, challenging a federal statute as violative of the United States Constitution, federal civil rights statutes, and Title VI of the Civil Rights Act.  The Indian Community and the Navajo Nation seek to intervene only as defendants, not to assert additional claims.

Timeliness.  The motions to intervene are timely.

Common question of law or fact.  The Indian Community and the Navajo Nation have questions of law and fact in common with the main action.  They seek to defend the constitutionality of the challenged provisions of ICWA, particularly against Plaintiffs' allegations that these provisions create unequal treatment based solely on the race of the child and the adults involved.  Indeed, the adequacy of the existing parties' representation

of the Indian Community and the Nation's interests, which the Court has already found, could not even arise if there were not common questions of fact and law.

<u>Undue delay or prejudice to the adjudication of the original parties' rights</u>.  The Court finds that permitting intervention by the Indian Community and the Navajo Nation will not cause any undue delay or prejudice to the adjudication of the existing parties' rights.  During oral argument, counsel for the prospective intervenors stated they did not anticipate making discovery requests and they would abide by any limitations on discovery that the Court may impose to mitigate possible burden on the existing parties.  Counsel further stated that Intervenors-Applicant want to participate in this case as parties only for as long as their children members continue as named Plaintiffs.  Further, if the Indian Community and the Navajo Nation are permitted to intervene, other tribes likely will not be allowed to intervene in the future because other tribes will be doubly adequately represented by the governmental defendants and by these two intervenor tribes.  *See Arakaki*, 324 F.3d at 1087 (intervention by native Hawaiians denied where a group of native Hawaiians already had successfully intervened as party).

Therefore, the Court will exercise its discretion to grant permissive intervention to the Indian Community and the Navajo Nation under Federal Rule of Civil Procedure 24(b)(1)(B).  If the Indian Community's or the Navajo Nation's participation as intervenors should evidence the kinds of problems that weigh against permissive intervention, such as expansion of issues or unwarranted burdens on existing parties, the Court may reconsider this order in the future.

IT IS THEREFORE ORDERED that the Motion of the Gila River Indian Community to Intervene as Defendant (Doc. 47) and the Amended Motion to Intervene by the Navajo Nation (Doc. 198) are denied with respect to intervention of right and granted for permissive intervention.

///

///

///

IT IS FURTHER ORDERED that the Clerk is directed to file the Gila River Indian Community's proposed motion to dismiss (lodged as Doc. 47-1) and the Navajo Nation's proposed amended motion to dismiss (lodged as Doc. 199).

Dated this 29th day of September, 2016.

Neil V. Wake
Senior United States District Judge