Linus Everling (SBN 019760)
Thomas L. Murphy (SBN 022953)
Gila River Indian Community
525 W. Gu u Ki
P.O. Box 97
Sacaton, Arizona 85147
(520) 562-9760
linus.everling@gric.nsn.us
thomas.murphy@gric.nsn.us

Donald R. Pongrace (pro hac vice application pending) (D.C. Bar No. 445944)
Merrill C. Godfrey (pro hac vice application pending) (D.C. Bar No. 464758)
Akin Gump Strauss Hauer & Feld, LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036-1564
(202) 887-4000
dpongrace@akingump.com
mgodfrey@akingump.com
*Counsel for Gila River Indian Community*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

A.D. and C. by CAROL COGHLAN CARTER, their next friend, et al.,

Plaintiffs,

v.

KEVIN WASHBURN, in his official capacity as Assistant Secretary – Indian Affairs, et al.,

Defendants.

Case No. 2:15-cv-1259

**GILA RIVER INDIAN COMMUNITY'S MOTION TO DISMISS (LODGED)**

(Oral Argument Requested)

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), the Gila River Indian Community (the "Community") moves to dismiss the complaint with prejudice.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs ask this Court to override Congress's policy choices in the Indian Child Welfare Act, 25 U.S.C. § 1901 *et seq*. ("ICWA" or "the Act"), regarding the United States' fulfillment of its trust duties to tribes and their members, as well as the best interests of Indian children. The complaint also challenges non-binding guidelines issued by the Bureau of Indian Affairs. This Court must dismiss the complaint because each of the plaintiffs' claims is foreclosed by controlling Supreme Court precedent, because the Court lacks subject matter jurisdiction to review non-final and non-binding agency action, and because plaintiffs lack standing to challenge certain provisions of ICWA.

**BACKGROUND**

ICWA protects the rights of (1) federally recognized tribes, (2) children who are members of such tribes or who are eligible for membership and have a member parent ("Indian children"), and (3) the parents and Indian custodians of such children. *See* 25 U.S.C. § 1903. Congress passed ICWA to preserve federally recognized Indian tribes' "continued existence and integrity," families within such tribes, and Indian children's ties with such tribes. *See* 25 U.S.C. § 1901. The Act was a "product of rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 32 (1989). Specifically, Congress was concerned "not solely about the interests of Indian children and families, but also about the impact on the tribes themselves of the large numbers of Indian children adopted by non-Indians," *id.* at 49, and "with the rights of Indian families and Indian communities vis-à-vis state authorities." *Id.* at 45. Simply, ICWA "seeks to protect the rights of the Indian child as an Indian and the rights of the Indian community and tribe in retaining its children in its society." *Id.* at 37.

Congress recognized that Indian child welfare determinations in state courts had "often failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families," *id.* at 45, which often resulted in Indian child adoptive placements that took an Indian child from his or her tribe, tearing the fabric of the tribal community by taking its younger generation and its ability to perpetuate tribal culture and traditions through its people. ICWA is at the core of modern federal Indian policy, which, in contrast with previous destructive policies of allotment, assimilation, and termination, seeks to respect and preserve tribal sovereignty, self-determination, identity, and culture.

The provisions challenged here are at the heart of ICWA's protections. Section 1915(a) establishes preferences for adoptive placements for Indian children, and § 1915(b) does the same for foster care or preadoptive placements. These provisions ensure a fair opportunity, absent "good cause to the contrary," for an Indian child to be placed within his or her extended family, with members of his or her tribe, or (for adoptions) other Indian families or (for foster care) Indian or tribal foster homes or institutions. These provisions represent Congress's judgment regarding the best interests of children for which the United States has trust obligations of the highest order, to preserve the child's best chances of a relationship with his or her tribe.

Section 1911(b) allows either parent of an Indian child not domiciled on or residing in the child's tribe's reservation, an Indian custodian of the child, or the child's tribe to seek transfer from state court to the jurisdiction of the child's tribe, absent a showing of "good cause to the contrary." Section 1912(d) requires any party seeking foster care placement or the termination of parental rights to an Indian child under state law to make active efforts to prevent the breakup of an Indian family that might result from an Indian child's placement outside his or her tribe. Sections 1912(e) and (f) require heightened standards of proof in such proceedings for any finding that "continued

custody of [an Indian] child by [a] parent or Indian custodian is likely to result in serious emotional or physical damage to the child."

The United States "has a direct interest, as trustee, in protecting Indian children who are members of or are eligible for membership in an Indian tribe." 25 U.S.C. § 1901(3). ICWA represents nothing less than a set of legislative policy judgments about the best interests of Indian children and the preservation of "the essential tribal relations of Indian people." 25 U.S.C. § 1901(5). These policy judgments lie with the political branches of government, and courts are not free to override them.

Plaintiffs, who are represented by the Goldwater Institute, are (1) two non-Indian couples seeking to adopt Indian children, and (2) the alleged "next friend" of two Indian children suing on the children's behalf. They ask this Court to declare unconstitutional and to enjoin enforcement of six subsections of ICWA as well as the Bureau of Indian Affairs' 2015 ICWA Guidelines. They allege (in counts 1, 2, and 3) that these ICWA provisions are "based solely on the race of the child and the adults involved," Compl. ¶¶ 89, 90; *cf. id.* ¶¶ 99, 108, even though they are based solely on membership (or eligibility for membership) in a federally recognized tribe. They also claim that the challenged provisions of ICWA fail to "adequately consider the child's best interests" and thus violate due process. ¶ 100. They further allege (in Count 2) that ICWA's presumptive tribal jurisdiction provision for non-domiciliary Indian children, § 1911(b), violates the Due Process clause on a "minimum contacts" theory. ¶ 98.

Count 4 alleges that Congress exceeded its constitutional powers when it passed ICWA and that ICWA therefore violates the Tenth Amendment. Compl. ¶ 110. Count 4 also alleges that ICWA commandeers state resources and thereby violates the Tenth Amendment under *Printz v. United States*, 521 U.S. 898 (1997). Compl. ¶ 111. Count 5 alleges that ICWA violates Indian children's supposed First Amendment right not to associate with Indian tribes. *See* Compl. ¶¶ 116–18. And finally, throughout their

Complaint, and more specifically in Count 6, Plaintiffs challenge the Bureau of Indian Affairs' ICWA guidelines issued in February 2015.

As shown below, each of these claims is foreclosed by precedent and must be dismissed.

## STANDARD OF REVIEW

Taking a complaint's factual allegations as true, under Fed. R. Civ. P. 12(b)(6), a court must dismiss a complaint whose facts "fail to state a claim upon which relief can be granted." With a Rule 12(b)(6) dismissal, "all facts are assumed to be true, but insufficient as a matter of law." *Gomez-Vigil v. I.N.S.*, 990 F.2d 1111, 1117 (9th Cir. 1993); *see also SmileCare Dental Grp. v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) ("The court may dismiss a complaint as a matter of law for . . . lack of a cognizable legal theory.") (citation omitted).

## ARGUMENT

ICWA was enacted in furtherance of "the special relationship between the United States and the Indian tribes and their members and the Federal responsibility to Indian people." 25 U.S.C. § 1901. The complaint is entirely silent regarding this relationship and the duties and powers it entails. Indeed, plaintiffs appear wholly unaware of the broad scope of federal powers and duties to protect tribes and their children. Nor do plaintiffs acknowledge the relationship between a tribe and its children that is at the heart of ICWA. Instead, ironically, in framing their complaint as a bid to end racial discrimination, it is the *plaintiffs* who introduce the notion of race, and who see tribal members and their children only by their race. ICWA does not classify children by race, but instead recognizes tribal membership, a concept that is completely absent in the complaint. It is just such disregard for the importance of an Indian child's tribe that led Congress to pass ICWA in the first place.

Plaintiffs' complaint would eliminate the importance of tribal membership altogether in child custody proceedings, treating children who are tribal members (or who

are children of tribal members and are eligible to join) as though they had no tribe, completely undermining the United States' fulfillment of its legally mandated trust duties. This result is foreclosed by clear, controlling authority acknowledging Congress's powers and duties to protect Indian tribes and their children.

## I. ICWA IS A VALID EXERCISE OF CONGRESS'S PLENARY POWER TO FULFILL THE UNITED STATES' DUTIES TO INDIAN TRIBES.

Federal legislation like ICWA is entitled to a strong presumption of constitutionality. "This is not a mere polite gesture. It is a deference due to deliberate judgment by constitutional majorities of the two Houses of Congress that an Act is within their delegated power or is necessary and proper to execution of that power." *United States v. Five Gambling Devices*, 346 U.S. 441, 449 (1953).

Congress passed ICWA "for the protection and preservation of Indian tribes," a duty that Congress assumed "through statutes, treaties, and the general course of dealing with Indian tribes." 25 U.S.C. § 1901(2). ICWA exercises powers and recognizes duties that arise out of sovereign-to-sovereign dealings between the United States and Indian tribes (including military conquest) that are reflected in and authorized and adopted by the Constitution. "In the exercise of the war and treaty powers, the United States overcame the Indians and took possession of their lands, sometimes by force, leaving them . . . needing protection against the selfishness of others . . . . Of necessity the United States assumed the duty of furnishing that protection and with it the authority to do all that was required to perform that obligation . . . ." *Bd. of Comm'rs of Creek Cnty. v. Seber*, 318 U.S. 705, 715 (1943). Congress's power to legislate in the field of Indian affairs is based "upon the Constitution's adoption of preconstitutional powers necessarily inherent in any Federal Government, namely . . . 'necessary concomitants of nationality.'" *United States v. Lara*, 541 U.S. 193, 200, 201 (2004) (quoting *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304 (1936)). "[L]argely due to the course of dealing of the Federal Government with [Indian Tribes] and the treaties in

which it has been promised, there arises the duty of protection, and with it the power." *United States v. Kagama*, 118 U.S. 375, 384 (1886)). Congress has "broad general powers to legislate in respect to Indian tribes, powers that [the Supreme Court has] consistently described as plenary and exclusive." *Lara*, 541 U.S. at 200 (internal quotation marks omitted).

Review here must be grounded in "the undisputed existence of a general trust relationship between the United States and the Indian people" and "'the distinctive obligation of trust incumbent upon the Government in its dealings with these dependent and sometimes exploited people.'" *United States v. Mitchell*, 463 U.S. 206, 225 (1983) (quoting *Seminole Nation v. United States*, 316 U.S. 286, 296 (1942)). "This principle has long dominated the Government's dealings with Indians." *Mitchell*, 463 U.S. at 225 (citations omitted). "[T]he United States' role as the guardian of Indians, Indian tribes, and their property justifies any legislation enacted in this role of guardian." *Cohen's Handbook of Federal Indian Law* § 5.01.

Congress's power over Indian affairs and to fulfill its trust duties includes the power to protect Indians against state interference. "From almost the beginning the existence of federal power to regulate and protect the Indians and their property against interference even by a state has been recognized. This power is not expressly granted in so many words by the Constitution, except with respect to regulating commerce with the Indian tribes, but its existence cannot be doubted." *Seber*, 318 U.S. at 715. "Only the United States (as opposed to the states) is sovereign over the entire territory of the United States." *Cohen's Handbook of Federal Indian Law* § 5.01.

## II. ICWA PROTECTS TRIBAL INTERESTS, TRIBAL MEMBERSHIP, AND INDIAN CHILDREN'S BEST INTERESTS, AND DOES NOT USE RACIAL CLASSIFICATIONS

This Court must dismiss the plaintiffs' Due Process and Equal Protection challenges under the Fifth and Fourteenth Amendments (Counts 1, 2, and 3), because the

plaintiffs' argument that ICWA uses a race-based classification is incorrect as a matter of law.

ICWA's foundational definitions are based solely on membership in a federally recognized tribe. ICWA defines "Indian tribe" to include any "Indian tribe, band, nation, or other organized group or community of Indians recognized as eligible for the services provided to Indians by the Secretary because of their status as Indians . . . ." 25 U.S.C. § 1903(8). "Indian" is defined by membership in such a tribe, and an "Indian child" must either be "a member of an Indian tribe," or be "eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4). ICWA excludes children who are racially "Indian," but who are not members of, and are not eligible for membership as the child of a member in, a federally recognized Indian tribe. Because ICWA's application depends on an Indian child's affiliation with a federally recognized Indian tribe, the law turns on a political classification, not a racial one.

The constitutionality of federal laws classifying persons based on tribal membership "turns on the unique legal status of Indian tribes under federal law and upon the plenary power of Congress, based on a history of treaties and the assumption of a 'guardian-ward' status, to legislate on behalf of federally recognized Indian tribes." *Morton v. Mancari*, 417 U.S. 535, 551 (1974). Classification as an "Indian" on the basis of membership in a federally recognized tribe is not a racial, but rather a political classification, one that recognizes tribal sovereignty and tribal members' relation to those sovereigns. *See, e.g.*, *Fisher v. Dist. Court*, 424 U.S. 382, 390 (1976) ("The exclusive jurisdiction of the Tribal Court [did] not derive from the race of the plaintiff but rather from the quasi-sovereign status of the Northern Cheyenne Tribe under federal law."). Time and again, the Supreme Court has affirmed that federal laws providing unique treatment to Indians based on their affiliation with federally recognized tribes do not thereby use impermissible racial classifications. *See, e.g.*, *United States v. Antelope*, 430 U.S. 641, 646-47 (1977) (federal criminal statutes enforceable only against "Indians" are

not based on impermissible racial classifications); *Fisher*, 424 U.S. at 390. "[C]lassifications expressly singling out Indian tribes as subjects of legislation are expressly provided for in the Constitution and supported by the ensuing history of the Federal Government's relations with Indians." *Antelope*, 430 U.S. at 645. If legislation singling out Indians for special treatment could be "deemed invidious racial discrimination, an entire Title of the United States Code (25 U.S.C.) would be effectively erased and the solemn commitment of the Government toward the Indians would be jeopardized." *Mancari*, 417 U.S. at 552-53; *accord United States v. Zepeda*, 792 F.3d 1103, 1113 (9th Cir. 2015) (en banc) ("[F]ederal regulation of Indian affairs is not based upon impermissible classifications. Rather, such regulation is rooted in the unique status of Indians as 'a separate people' with their own political institutions."). Thus, the plaintiffs' equal protection and substantive due process challenges to tribal membership classifications fail. *See Antelope*, 430 U.S. at 649; *Mancari*, 417 U.S. at 555.

Plaintiffs' further argument that the Act fails to account for Indian children's "best interests" (¶ 100) ignores that ICWA is precisely geared to *promote* the best interests of Indian children. ICWA "was based in part on evidence of the detrimental impact on the children themselves of . . . placements outside their culture," and "on the fundamental assumption that it is in the Indian child's best interest that its relationship to the tribe be protected." *Holyfield*, 490 U.S. at 49 – 50 & n.24 (citation and quotation marks omitted). Plaintiffs' disagreement with Congress over what is best for Indian children does not make a due process violation. *See Reno v. Flores*, 507 U.S. 292, 302-04 (1993).

Plaintiffs' proposed revision of this congressional policy choice would take from Indian children *benefits* unavailable to children not subject to the Act's protections—provisions that acknowledge and foster the child's relationship to his or her tribe. Plaintiffs wrongly treat these provisions as *harms* rather than benefits. In attacking consideration of tribal membership and tribal jurisdiction as harms, the complaint employs prejudices similar to views expressly rejected by Congress. In ICWA, Congress

found that states "have often failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families." 25 U.S.C. § 1901(5). The complaint (perhaps unwittingly) exhibits similar biases toward the tribal-child relationship and tribal jurisdiction over child custody. This is particularly apparent where none of the provisions Plaintiffs challenge conclusively dictates any particular outcome for an individual child. For example, the "good cause" standard in ICWA is ample protection in any situation where tribal membership or tribal jurisdiction is outweighed by other circumstances.

## III. ICWA'S TRANSFER PREFERENCE IN § 1911(b) IS WELL WITHIN CONGRESS'S AUTHORITY TO PRESERVE TRIBES' SOVEREIGN RIGHTS OVER THEIR OWN SOCIAL AND DOMESTIC RELATIONS

"Tribal jurisdiction over Indian child custody proceedings is not a novelty of the ICWA." *Holyfield*, 490 U.S. at 42. Rather, Indian tribes are "distinct, independent political communities, retaining their original natural rights in matters of local self-government [that] remain a separate people, with the power of regulating their internal and social relations." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 55-56 (1978). Inherent tribal power includes the power to make substantive law on internal tribal matters, including domestic relations, and the power to enforce that law in tribal court. *See id.* At the same time, "Congress has plenary authority to limit, modify or eliminate the powers of local self-government which the tribes otherwise possess." *Id.* at 56; *see also Lara*, 541 U.S. at 202 ("Congress, with [the Supreme] Court's approval, has interpreted the Constitution's plenary grants of power as authorizing it to enact legislation that both restricts and, in turn, relaxes those restrictions on tribal sovereign authority."). ICWA expressly recognizes that tribes have been allowed to retain this authority as it relates to child custody proceedings involving Indian children. "Indian tribes are unique aggregations possessing attributes of sovereignty *over both their members and their territory* . . . . [They] are a good deal more than 'private, voluntary organizations.' " *United States v. Wheeler*, 435 U.S. 313, 323 (1978) (quoting *United States v. Mazurie*,

419 U.S. 544, 557 (1975)) (emphasis added; alteration in *Wheeler*). "Indian tribes still possess those aspects of sovereignty not withdrawn by treaty or statute, or by implication as a necessary result of their dependent status." *Wheeler,* 435 U.S. at 323. Section 1911(b) is an unremarkable and unmistakable exercise of Congress's power to preserve tribal jurisdiction over tribal members and their children.

Section 1911(b)'s application to proceedings involving children not domiciled in or residing on their tribe's reservation is constitutional because Congress's power to legislate for the protection and benefit of Indians operates *in personam* and is not limited to any land base or reservation. As just quoted, *Wheeler* recognizes that tribal sovereignty extends not only over "territory" but also over tribal "members." 435 U.S. at 323. Indeed, this principle was relied on in *Holyfield.* While *Holyfield* held that the Indian children at issue were domiciled on the reservation, the Supreme Court's reasoning shows that Congress's power to protect and regulate Indians and to preserve tribal sovereignty applies *in personam* to Indian children and is not geographically restricted by reservation boundaries. The twins in that case were born off the reservation and had never been on the reservation. *Id.* at 53. The parents had arranged for birth off the reservation in a deliberate but futile attempt to defeat tribal court jurisdiction. *Id.* at 49. The Court held that the twins were nonetheless "domiciled" on the reservation within the meaning of § 1911(a) due to their mother's domicile on the reservation. If Congress can provide for tribal jurisdiction of children off the reservation by adopting such a meaning of "domicile" in § 1911(a), even when both parents (as in *Holyfield*) sought to *deprive* the tribal court of jurisdiction, then Congress's power over Indian children is not derived from their location, but is *in personam*. From this it follows that § 1911(b) is constitutional as well. Indeed, § 1911(b) does not exert the full extent of Congressional authority over Indian children, because under § 1911(b) transfer can be defeated by a *state court* finding of "good cause" not to transfer.

Similarly, in *United States v. Livingston*, 725 F.3d 1141, 1145 (9th Cir. 2013), the Ninth Circuit held, "We do not agree that congressional authority to criminalize theft from a tribal gaming establishment derives from the location of the gaming establishment." The Court held that "federal jurisdiction does not depend on proof that the gaming establishment at issue in a [25 U.S.C.] § 1168(b) prosecution is located on Indian lands." *Id.* at 1145-46.

There are many other examples of legislation protecting and benefiting Indians without regard to location on or off a reservation. For example, *Mancari* upheld provisions of the Indian Reorganization Act of 1934 giving an employment preference for qualified Indians in the Bureau of Indian Affairs without regard to whether the Indians were domiciled on a reservation or whether the job was located on a reservation. *See Mancari*, 417 U.S. at 550; *see also, e.g., id.* at 548 (noting a separate congressional requirement that government programs give Indians preference for training teachers of Indian children); American Indian Probate Reform Act of 2004, Pub. L. No. 108-374, 118 Stat. 1773 (permitting, among other things, the transfer of trust or restricted fee lands to any Indian or Indian tribe to retain trust or restricted fee status, so long as devised to an Indian); Indian Self-Determination and Education Assistance Act, 25 U.S.C. § 450f(a)(1)(E) (1975) (allowing Indian organizations to enter into self-determination contracts with the Secretary of the Interior or Health and Human Services to "plan, conduct, and administer programs or…construction programs . . . for the benefit of Indians because of their status as Indians without regard to the agency or office of the Department of Health and Human Services or the Department of the Interior within which it is performed."); Patient Protection and Affordable Care Act, 25 U.S.C. §§ 1651-1660h (2010) (providing funding for the development of health programs for Indians who live in non-reservation communities); Tribal General Welfare Exclusion Act, 26 U.S.C. § 139E (2014) (permitting tribal members, including those located outside of a reservation, to exclude from gross income, "the value of any Indian general welfare

benefit," which is a payment or service made pursuant to a qualified Indian tribal government program).

Plaintiffs misguidedly allege that ICWA's jurisdiction-transfer provision, 25 U.S.C. § 1911(b), violates due process personal jurisdiction requirements of "minimum contacts between the forum and the litigant." Compl. ¶ 98. But "minimum contacts" analysis is inapposite because *plaintiffs* are not involuntary *defendants* being haled into a distant state's court under state law. The plaintiff couples affirmatively seek to adopt Indian children who are protectable by Congress in the exercise of its broad powers over Indians. *See Santa Clara Pueblo*, 436 U.S. at 55-56; *Cotton Petroleum Corp. v. New Mexico*, 490 U.S. 163, 192 (1989); *Livingston*, 725 F.3d at 1145-46. Congress has the power to recognize tribal authority over the granting of such relief and to require plaintiffs to invoke that authority to obtain such relief.

Tribal jurisdiction over custody of Indian children such as the plaintiff children is founded on Congress's recognition of a tribe's sovereignty over its own members and their children. *See Wheeler,* 435 U.S. at 323. Thus, it is hardly surprising, much less unconstitutional, that a couple seeking to adopt an Indian child must, absent good cause, seek relief from the jurisdiction of the child's sovereign tribe.

## IV. ICWA DOES NOT EXCEED CONGRESSIONAL AUTHORITY OR COMMANDEER STATE OFFICERS

Count 4 must be dismissed because ICWA does not exceed the scope of Congress's constitutional authority. As discussed above, ICWA is well within Congress's authority to regulate Indian affairs and fulfill trust duties. It is a necessary corollary to this conclusion that ICWA does not violate the Tenth Amendment, because it exercises valid federal power expressed in the Constitution, power "delegated to the United States by the Constitution," and thus does not infringe on any power "reserved to the States . . . or to the people." U.S. Const. Am. X. Justice Thomas's concurrence in *Adoptive Couple v. Baby Girl*, 133 S. Ct. 2552, 2566-70 (2013), was joined by no other justice and is not

the law. And nothing in *Sosna v. Iowa*, 419 U.S. 393 (1975), addresses Congress's powers in *Indian* domestic relations; as the Supreme Court subsequently stated, it is "undisputed fact that Congress has plenary authority to legislate for the Indian tribes in all matters," and to preserve tribes' sovereign authority. *United States v. Wheeler*, 435 U.S. 313, 319 (1978).

Plaintiffs' further argument regarding "commandeering" fails for at least two reasons. First, under *Printz v. United States*, 521 U.S. 898, 910-11 (1997), no "commandeering" can occur unless Congress imposes federal responsibilities on State officers without their consent. Here, Arizona has consented to enforce ICWA, specifically by directing state officers to comply with ICWA's provisions, *see* A.R.S. § 8-453(A)(20), (21), and by adjusting the state's own child welfare laws to conform to ICWA where relevant. *See* A.R.S. §§ 8-105.01, -514(C).

Second, Plaintiffs fail to explain how any provision of ICWA commandeers state authorities. To the extent Plaintiffs' allegations relate to "state courts," they must be dismissed, because commandeering does not occur when a state court must follow and apply federal law. *See* 521 U.S. at 910-11. And Plaintiffs do not explain how any of the ICWA provisions they challenge command a state officer or agency to do anything. Each of the provisions they challenge provides a rule of decision, specifies a rule of procedure, or prescribes a burden of proof for *court* proceedings.

## V. ICWA DOES NOT VIOLATE THE PLAINTIFF INDIAN CHILDREN'S FIRST AMENDMENT FREEDOM OF ASSOCIATION

Count 5 must be dismissed because ICWA creates no mandatory associations, much less any that violate the First Amendment. Indian children are not required to "associate" with their tribes by virtue of ICWA, which governs only child custody proceedings. Although ICWA is plainly intended to encourage tribal-child relationships, and may result in adoption or other placement with a member of the child's tribe, no child is forced to "associate" with his or her tribe as such.

Moreover, in any event, Indian tribes are not mere associations. Again, "Indian tribes are unique aggregations possessing attributes of sovereignty over . . . their members . . . . [They] are a good deal more than 'private, voluntary organizations.' " *Wheeler*, 435 U.S. at 323 (quoting *Mazurie*, 419 U.S. at 557). The First Amendment prohibits mandatory associations unless they "serve a compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms." *Knox v. Serv. Employees Int'l Union, Local 1000*, 132 S. Ct. 2277, 2289 (2012). But to come within the First Amendment's "protection of expressive association," "a group must engage in some form of expression, whether it be public or private." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000). The Ninth Circuit has further clarified "expressive association" to mean "association for the purpose of speech, assembly, petition for the redress of grievances, and the exercise of religion—but there is no generalized right of social association protecting chance encounters in dance halls and the like." *S. Oregon Barter Fair v. Jackson Cnty., Oregon*, 372 F.3d 1128, 1135 (9th Cir. 2004) (internal quotation marks omitted). Indian tribes are governmental entities, analogous to state and local governments, not associations for the purpose of expression. Treating Indian tribes as expressive associations on par with the Boy Scouts of America ignores and trivializes the unique legal standing of Indian tribes and their authority over their members.

## VI. THE 2015 GUIDELINES DO NOT CONFLICT WITH ICWA'S TRANSFER PROVISIONS

In Count 6, Plaintiffs incorrectly allege that the 2015 Guidelines constitute unlawful agency action that exceeds the statutory authority provided to the BIA by ICWA. This Court lacks subject-matter jurisdiction with respect to this claim, and all other challenges Plaintiffs raise to the Guidelines, because the 2015 Guidelines do not constitute final agency action. "[T]wo conditions must be satisfied for agency action to be 'final': First, the action must mark the 'consummation' of the agency's decision-

making process, it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow'." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal citations omitted). In a current challenge to the 2015 Guidelines, another federal district court correctly concluded that "the 2015 Guidelines are not a 'final agency action' within the meaning of the APA because they do not create legal rights and obligations," and that they "are non-binding interpretive rules." *Nat'l Council for Adoption vs. Jewell*, No. 1:15-cv-00675-GBL-MSN, Order Den. Pl.'s Mot. for Partial Summ. J. at 2, ECF No. 61 (E.D. Va. Sept. 29, 2015). For these reasons, the Court has no jurisdiction to review challenges to the Guidelines or (because they are non-binding) to enjoin their "enforce[ment]" (Compl. at 28).

## VII. PLAINTIFFS LACK STANDING TO CHALLENGE SECTIONS 1912(d), (e), AND (f), AND 1915(b), AND IN ANY EVENT DO NOT MERIT EQUITABLE RELIEF IN LIGHT OF PENDING STATE COURT CASES

Plaintiffs' situations do not fit neatly into the complaint of the Goldwater Institute. Even taking Plaintiffs' characterizations of their respective state court proceedings as true, Plaintiffs' challenges to four of the six provisions they cite—§§ 1912(d), (e), (f), and 1915(b)—are not based on any live issues in their individual cases currently pending in state court. With respect to Plaintiff A.D., the complaint alleges only that the case is subject to transfer under § 1911(b). With respect to baby boy C., the complaint alleges only that the state court has not declared him available for adoption. *No plaintiff* alleges that they seek foster care placement or termination of parental rights. Both plaintiff children are allegedly *already* in foster care with one of the plaintiff couples. Moreover, according to the complaint, Plaintiff A.D.'s parents' rights were already terminated, *see* ¶ 18, and Plaintiff C's only known parent allegedly supports adoption by one of the plaintiff couples, *see* ¶ 21. Because no plaintiff seeks termination of parental rights or foster care placement, no plaintiff can challenge §§ 1912(d), (e), or (f), or § 1915(b),

which are limited to those remedies. Challenges to these provisions should be dismissed under Fed. R. Civ. P. 12(b)(1).

Furthermore, the equitable relief Plaintiffs seek concerning pending state court proceedings is inappropriate in light of considerations of comity, equity, and constitutional avoidance. To avoid sovereign immunity issues, plaintiffs seek to invoke this Court's equitable power against state and federal officers in their official capacity. Declining to exercise discretionary equitable powers here and allowing the state court proceedings to run their course will likely avoid unnecessary decision of constitutional questions. The state court custody cases necessarily involve a multitude of sensitive non-constitutional issues, the resolution of which remains uncertain. Plaintiffs may well be granted or denied the relief they seek on sufficient non-constitutional grounds in state court. Thus, abstention under *Railroad Commission v. Pullman Co.*, 312 U.S. 496 (1941), is warranted for purposes of constitutional avoidance.

**CONCLUSION**

The Court should dismiss the complaint in its entirety.

Respectfully submitted,

Linus Everling (#019760)
Thomas L. Murphy (#022953)
GILA RIVER INDIAN COMMUNITY
525 W. Gu u Ki
P.O. Box 97
Sacaton, Arizona 85147
(520) 562-9760
Linus.Everling@gric.nsn.us
Thomas.Murphy@gric.nsn.us

Donald R. Pongrace (pro hac vice application pending)

*/s/ Merrill C. Godfrey*
Merrill C. Godfrey (pro hac vice application pending)
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036-1564
(202) 887-4000
dpongrace@akingump.com
mgodfrey@akingump.com

*Attorneys for Plaintiff Gila River Indian Community*