Linus Everling (SBN 019760)
Thomas L. Murphy (SBN 022953)
Gila River Indian Community
525 W. Gu u Ki
P.O. Box 97
Sacaton, Arizona 85147
(520) 562-9760
linus.everling@gric.nsn.us
thomas.murphy@gric.nsn.us

Donald R. Pongrace (pro hac vice) (D.C. Bar No. 445944)
Merrill C. Godfrey (pro hac vice) (D.C. Bar No. 464758)
Akin Gump Strauss Hauer & Feld, LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036-1564
(202) 887-4000
dpongrace@akingump.com
mgodfrey@akingump.com
*Counsel for Gila River Indian Community*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| A.D. and C. by CAROL COGHLAN CARTER, their next friend, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>KEVIN WASHBURN, in his official capacity as Assistant Secretary – Indian Affairs, et al.,<br><br>Defendants. | Case No. 2:15-cv-1259<br><br>**GILA RIVER INDIAN COMMUNITY'S REPLY IN SUPPORT OF MOTION TO DISMISS** |

The Gila River Indian Community (the "Community") hereby replies in support of its motion to dismiss and renews its request that the Court dismiss this case with prejudice. Plaintiffs' case is based on a gross misreading of ICWA and on legal theories that conflict with controlling federal law.

## I. PLAINTIFFS CONCEDE, AS THEY MUST, THAT CONGRESS HAS PLENARY AUTHORITY TO LEGISLATE IN THE AREA OF INDIAN AFFAIRS

In Count 4 of the amended complaint, Plaintiffs alleged that ICWA must be struck down because it "exceeds the federal government's power under the Indian Commerce Clause," arguing that that Clause is not broad enough to serve as a source of constitutional authority for ICWA. Am. Cmplt. ¶ 132. Thus, Count 4 failed to recognize that Congress has plenary authority over Indian affairs. In its motion, the Community argued that this portion of Count 4 must be dismissed, relying on voluminous Supreme Court authority. Specifically, the Community cited precedents showing that Congress's authority over Indian affairs is plenary, and that the sources of this authority are much broader than the Indian Commerce Clause—they include inherent preconstitutional powers, a course of sovereign-to-sovereign dealings, trust duties, and constitutional war and treaty powers. *See* Community MTD at 6-7.

In their response to the Community's motion to dismiss, Plaintiffs do not dispute these sources of congressional authority over Indian affairs. Rather, Plaintiffs now agree that "the power of Congress in Indian affairs" is "plenary." Pl's Resp. at 21 (quoting *Gugenig v. Hoopa Valley Tribe,* 266 F.3d 1201, 1219 (9th Cir. 2001). Plaintiffs now argue only that the exercise of this plenary authority over Indian affairs is "not absolute" and must comport with other constitutional limitations on Congress's power, such as the Bill of Rights. Pl's Resp. at 21-22.

By thus narrowing their claim, conceding Congress's plenary authority and arguing solely whether ICWA violates some other constitutional check on this plenary authority, Plaintiffs have effectively conceded that the Indian Commerce Clause portion of Count 4 must be dismissed. Plaintiffs have conceded that Congress has plenary authority to legislate with regard to Indian affairs unless some specific constitutional limitation is violated, such as due process or equal protection.

## II. ICWA'S FOCUS ON MEMBERSHIP IN A FEDERALLY RECOGNIZED TRIBE IS NOT A RACIAL CLASSIFICATION AND DOES NOT VIOLATE DUE PROCESS OR EQUAL PROTECTION

Throughout their response, Plaintiffs insist on referring to ICWA as a racial classification and blatantly mischaracterize the arguments the Community has made in ICWA's defense. It is the hallmark of a failed complaint that the Plaintiffs find themselves forced to ignore the statutory text of ICWA and the arguments actually advanced by the Community and to set up straw-man arguments to knock down instead.

Plaintiffs argue that ICWA applies to children who are only eligible to become members of a tribe, and assert that eligibility is essentially a racial classification. *E.g.,* Pl's Resp. at 12, 13. They resort to arguing, contrary to the plain statutory text, that ICWA "applies to children who, *for genetic reasons alone*, are eligible for tribal membership—without regard to political . . . affiliation." *Id.* at 13 (emphasis added). This is blatantly incorrect, and Plaintiffs fail to address the language in ICWA that refutes their argument. The only non-member children ICWA applies to are those who are "the biological child *of a member* of an Indian tribe" and are eligible for membership themselves. 25 U.S.C. § 1903(4) (emphasis added). ICWA applies only where there is a *political* tie between the child and a tribe: membership of the child, or membership of one of the child's biological parents plus the potential for the child's own membership. There is nothing in ICWA about genetics, or ethnicity, or race—only membership of the child or the child's parent in a federally recognized tribe.

Plaintiffs ignore not only the language of ICWA itself but also the arguments the Community raised in its motion to dismiss challenging their due process and equal protection claims. Plaintiffs instead set up straw man arguments that they falsely attribute to the Community. The contrast between the Community's actual arguments and the false ones set up by Plaintiffs is striking. The Community argued (citing well-settled precedent) that "ICWA's foundational definitions are based solely on membership in a federally recognized tribe," which is "not a racial, but a rather a political classification,

3

one that recognizes tribal sovereignty and tribal members' relation to those sovereigns." Comm. MTD at 8.  Plaintiffs never respond to that argument on its own terms.  Instead, they falsely attribute to the Community the argument "that laws that treat Indians as a class differently from other ethnic groups are immune from scrutiny as racial classifications."  Pl's Resp. at 13.  The Community made no such argument, and ICWA makes no such ethnic distinction.  ICWA does not "treat Indians as a class differently from other ethnic groups."  Again, it applies only to children with a political (membership) tie to a federally recognized tribe, either directly or through a parent. Nothing in ICWA addresses ethnicity, race, "genetic reasons," "DNA," "chromosomes," or any of the other mischaracterizations Plaintiffs attempt to impose on ICWA to escape the controlling force of *Morton v. Mancari,* 417 U.S. 535 (1974).  Under *Morton v. Mancari*, this case must be dismissed.

Elsewhere Plaintiffs falsely attribute to the Community the argument that ICWA does not violate due process because it "reflects Congress's determination that it is inherently in the best interests of children with Indian genetic ancestry to be placed with foster or adoptive families of Indian genetic ancestry."  Pl's Br. at 16.  Again, this argument was not made by the Community, and that is not what ICWA does.  ICWA respects the legal and political ties reflected in membership in a federally recognized tribe, and says nothing about "Indian genetic ancestry."  Plaintiffs cannot be heard to read into ICWA a concept that is foreign to it in an attempt to strike it down.  Plaintiffs ignore, for example, that ICWA applies only with respect to *federally recognized* tribes.  Children that are in every respect Native American may be members of or eligible for membership in only a tribe that is not federally recognized, and ICWA does not apply to them.

Likewise, Plaintiffs attempt to prop up their case by referring repeatedly to language in *Adoptive Couple v. Baby Girl,* 133 S. Ct. 2552 (2013).  But the passage they cite discusses "the [South Carolina] Supreme Court's reading" of ICWA, which the Court posited might, *if it were affirmed*, discourage adoption of children with only one "remote"

Indian ancestor. *Id.* at 2565. But the Supreme Court rejected the South Carolina Supreme Court's reading of the statute, and it is not at issue here. Moreover, Plaintiffs do not contend (nor could they) that this is a case where the children at issue have only a single "remote" Indian ancestor. All the children in this case are themselves members of federally recognized tribes *and* are the biological children of at least one such member.

This Court must dismiss the plaintiffs' race-based Due Process and Equal Protection challenges under the Fifth and Fourteenth Amendments (Counts 1, 2, and 3), because the plaintiffs' argument that ICWA uses a race-based classification is incorrect as a matter of law.

### III. ICWA'S APPLICATION TO "INDIAN CHILD[REN]" NOT DOMICILED ON THE RESERVATION IS A LAWFUL RECOGNITION OF TRIBES' AUTHORITY OVER THEIR MEMBERS

In its motion to dismiss, the Community showed that tribes have authority not only over their territory but also over their members. Comm. MTD at 10-13; *see Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 55-56 (1978) (tribes have "the power of regulating their internal and social relations"); *United States v. Wheeler*, 435 U.S. 313, 323 (1978) (tribes have power over "territory" and "members"). Congress has the authority to preserve and protect these powers through ICWA. Plaintiffs indeed concede that Congress has "power over Indian children." Pl's. Resp. at 20. That is sufficient to dismiss this case. Plaintiffs' only remaining argument against tribal jurisdiction over Indian children domiciled off-reservation is the false notion that ICWA otherwise "exceeds the limits of the Constitution" because Indian children as defined by ICWA "are connected to [a] tribe solely because of their chromosomes," Pl's. Resp. at 20, or "are simply eligible for membership because of the DNA in their cells," Pl's Resp. at 18. This incendiary and incorrect argument ignores ICWA's reliance on membership in a federally recognized tribe, and was refuted in the prior section.

Plaintiffs again attribute to the Community a straw-man argument, that "limitations on the exercise of *in personam* jurisdiction are inapplicable to American

citizens of Indian ancestry." Pl's Resp. at 19.  What the Community actually argued, and what Plaintiffs fail to address adequately, is that Congress may legislate to protect sovereign, federally recognized tribes' inherent jurisdiction over their own members and their members' minor children, simply by virtue of that membership.  Indeed, this is a logically necessary component of the federal power to recognize a tribe.  Adults wishing to adopt children of such federally recognized tribes can constitutionally be required to submit to tribal jurisdiction to do so; to hold otherwise would eviscerate tribes' authority to regulate their own membership and social relationships.

The cases cited by Plaintiffs are entirely inapposite and do not support any argument to the contrary.  In reading *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30 (1989), Plaintiffs miss the crucial point made in the Community's motion to dismiss:  *Holyfield* recognizes Congressional power *to define domicile* in ICWA without regard to the location of a child's birth or the parents' preferences.  This shows that Congressional power is not limited by the physical location of Indian children off-reservation.  *See* Comm. MTD at 11.  Plaintiffs likewise have no answer for the many "examples of legislation protecting and benefiting Indians without regard to location on or off a reservation."  Comm. Br. at 12-13.  And Plaintiffs fail to address precedents such as *United States v. Livingston*, 725 F.3d 1141, 1145 (9th Cir. 2013), which rejected the argument "that congressional authority to criminalize theft from a tribal gaming establishment derives from the location of the gaming establishment," and held that "jurisdiction does not depend on proof that the gaming establishment at issue . . . is located on Indian lands."  *Id.* at 1145-46.

Plaintiffs cite *Wilson v. Marchington,* 127 F.3d 805 (9th Cir. 1997), but that case held only that a tribal court lacked "subject-matter jurisdiction" (not personal jurisdiction) over a dispute involving a non-tribal defendant sued for an accident on a federal highway, a location which was held to be "equivalent to alienated, non-Indian land." *Id.* at 813 (citing *Strate v. A-1 Contractors*, 520 U.S. 438 (1997)).  And *Water*

*Wheel Camp Recreational Area, Inc. v. LaRance*, 642 F.3d 802, 819 (9th Cir. 2011), likewise did not address tribal authority over members off-reservation. Rather, it held that a non-Indian who "lived on tribal land," "was served with tribal process . . . on tribal land," and had extensive business dealings with the tribe was subject to personal jurisdiction in tribal court.

Accordingly, Plaintiffs' arguments fail as a matter of law under controlling principles of federal law.

### IV. PLAINTIFFS FAIL TO RESPOND TO THE COMMUNITY'S ARGUMENTS SHOWING THAT ICWA DOES NOT COMMANDEER STATE OFFICERS

The Community's motion to dismiss showed that the Plaintiffs' "commandeering" argument under the Tenth Amendment fails for two reasons: (1) Arizona has consented to enforce ICWA; and (2) ICWA provides federal rules of decision for *court* proceedings involving Indian children and does not conscript state *executive* officers or agencies. Comm. MTD at 14.

In response, Plaintiffs do not respond at all to the first point—that Arizona has consented to enforce ICWA. For that reason alone, the portion of Count 4 dealing with commandeering must be dismissed.

As to the second point, Plaintiffs merely incorporate without comment the arguments of Ohio, which are likewise not responsive. Ohio can point to no specific provision of ICWA that does anything other than provide a rule of decision for courts. As the Community previously explained, it is not "commandeering" under the Tenth Amendment for Congress to provide a federal rule of decision to be applied in state courts; that commonly exercised federal power is something the Supremacy Clause expressly contemplates. There are no commands in ICWA directing the functioning of the state executive. By contrast, commandeering occurs when "it is the whole object of the law [under review] to direct the functioning of the state executive." *Printz v. United States*, 521 U.S. 898, 932 (1997).

As Plaintiffs do throughout their response brief, rather than respond to the arguments raised by the Community, Plaintiffs badly mischaracterize the Community's arguments.  Plaintiffs spend much ink combating the straw-man argument that "the anti-commandeering principle of the Tenth Amendment is inapplicable when Congress acts . . . through its treaty power," Pl's Resp. at 23, but the Community has made no such argument.  For the reasons stated above, which the Plaintiffs failed to address, the commandeering claim must be dismissed.

## V.   ICWA DOES NOT VIOLATE THE FIRST AMENDMENT

The Community showed in its motion to dismiss that tribal governments are not expressive associations for purposes of the First Amendment.  Comm. MTD at 14-15.  In their response, Plaintiffs do not dispute this point, and they cite no authority to show that a tribal government is an expressive association for purposes of the First Amendment.  Instead, they attempt to analogize to state governments, and argue that a state cannot force a child born there to continue to submit to its jurisdiction once the child leaves, citing the Due Process Clause.  Pl's. Resp. at 14 & n.12.  Putting to one side for a moment the many problems with this argument, it is not a First Amendment argument; it is a repetition of their Due Process argument.  Thus, Count 5 must be dismissed.

Moreover, Plaintiffs ignore here again that ICWA applies only to children who are members of an Indian tribe or who are "the biological child *of a member* of an Indian tribe" and are eligible for membership themselves.  25 U.S.C. § 1903(4) (emphasis added).  ICWA applies only where there is a *political* tie with a tribe:  membership of the child or of one of the child's biological parents.  Plaintiffs cite no authority for a First Amendment right for a minor child not to be a citizen of the tribal nation of one of the child's biological parents.   (The Community here incorporates by reference the arguments of the Federal Defendants on pp. 11:15-12:28 of Doc. 195.)  Plaintiffs ignore that ICWA applies only where there is membership in a federally recognized tribe (membership of either the child or one of the child's parents) and instead inject

8

incendiary and inapposite language about "racial ancestry" that has no place in ICWA and no place in this case.

Count 5 in both the complaint and the amended complaint made allegations solely related to the First Amendment rights of the *child* Plaintiffs. In their response, Plaintiffs now argue that the "[a]dult Plaintiffs' freedom-of-association rights are also violated by ICWA," because "they must accommodate all visits with proposed placements." Pl's Resp. at 15. This claim was not raised in the amended complaint and therefore does not serve as a basis for preventing dismissal of Count 5. In any event, it is also preposterous. The First Amendment obviously does not give foster parents any right to choose which proposed adoptive placements they meet with. Plaintiffs cite no authority for such an interpretation of the First Amendment, because no court has considered, much less accepted, such an argument.

## VI.  PLAINTIFFS' CASE FAILS TO PRESENT A CONCRETE INJURY THAT WOULD BE REDRESSED BY AN ORDER OF THIS COURT

The vast breadth of Plaintiffs' ideological assault on ICWA is matched by the great vagueness and abstraction in their allegations. The Plaintiffs have not pleaded how an order from this Court would redress or prevent any concrete injury to a legally protected interest.

"[T]he irreducible constitutional minimum of standing" requires Plaintiffs to show "invasion of a legally-protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992) (citations, internal quotation marks, and alterations omitted). Plaintiffs must also show "a causal connection showing that the injury is fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* Finally, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561. These three requirements "are not mere pleading requirements, but rather an

indispensable part of the plaintiff's case." *Id.*

Plaintiffs have not articulated, either in the complaint or in the amended complaint, what an order from this court would accomplish in these children's lives that is not already being accomplished in state court. These children are all still with the foster parents who are plaintiffs here, some of whom have already become adoptive parents after due course in state court. In *none* of their state-court cases has there been an ICWA-preference foster-care or adoptive placement. In *none* of their cases has there been a transfer to tribal court. In *none* of their cases has there been a denial of termination of parental rights. It is simply not enough for constitutional standing for the Plaintiffs to argue that these things *might* have happened. If it is even possible to conceive of a case where ICWA causes concrete injury redressable by a federal court's willingness to intrude into state-court proceedings, it is clear that none of these Plaintiffs have brought such a case.

Moreover, to the extent that Plaintiffs base their theories on a distinction between Indian children who are already members of federally recognized Indian tribes and those who are not, plaintiffs cannot bring their claims, because all the Indian child plaintiffs in this case are already enrolled members of their respective tribes. Plaintiffs could not be more wrong when they assert, "[t]his case does not involve children who are politically . . . affiliated with a tribe . . . ." Pl's Resp. at 24. To the contrary, it involves *only* such children.

## VII.  PLAINTIFFS' CLAIM FOR NOMINAL DAMAGES FAILS BECAUSE ICWA IS NOT RACE-BASED

Plaintiffs contend incorrectly that the Community does not challenge Count 7 of the amended complaint. Pl's Br. at 9. The Community argued in its lodged motion to

10

dismiss the amended complaint that "for the reasons previously briefed, ICWA is not a race-based statute, and therefore the new claim for nominal damages [Count 7] fails." [1]

## CONCLUSION

Plaintiffs' complaint raises legal theories that fail as a matter of law.  Even if some of the justiciability defects in the amended complaint could be cured by further amendment and substitution of different plaintiffs, amendment would be futile, because the defects in Plaintiffs' legal theories cannot be cured.  The Court should dismiss the complaint in its entirety with prejudice.

                                              Respectfully submitted,

                                              Linus Everling (#019760)
                                              Thomas L. Murphy (#022953)
                                              GILA RIVER INDIAN COMMUNITY
                                              525 W. Gu u
                                              P.O. Box 97
                                              Sacaton, Arizona 85147
                                              (520) 562-9760
                                              Linus.Everling@gric.nsn.us
                                              Thomas.Murphy@gric.nsn.us

---

[1] The Community did not withdraw or refile its motion to intervene after Plaintiffs amended their complaint, and because it had not been granted (or denied) intervention, the Community apparently could not file a motion to dismiss the amended complaint as of right. With its status in limbo, it nevertheless lodged a motion to dismiss the amended complaint as an attachment to its motion to expedite ruling on its motion to intervene, Doc. 180-1. In ruling on that motion to expedite, the Court stated that the Community's "proposed motions to dismiss . . . have been and will be considered in ruling on all the motions to dismiss." Order dated May 13, 2016 at 2-3.

| | |
|---|---|
| 1 | Donald R. Pongrace (pro hac vice) |
| 2 | */s/ Merrill C. Godfrey* |
| | Merrill C. Godfrey (pro hac vice) |
| 3 | AKIN GUMP STRAUSS HAUER & FELD LLP |
| 4 | 1333 New Hampshire Avenue, N.W. |
| | Washington, D.C. 20036-1564 |
| 5 | (202) 887-4000 |
| | dpongrace@akingump.com |
| 6 | mgodfrey@akingump.com |
| 7 | *Attorneys for Plaintiff Gila River Indian Community* |