**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| A.D., C.C., L.G., and C.R., by Carol Coghlan Carter, and Dr. Ronald Federici, their next friends; S.H. and J.H., a married couple; M.C. and K.C., a married couple; K.R. and P.R., a married couple; for themselves and on behalf of a class of similarly-situated individuals, | No. CV-15-01259-PHX-NVW **ORDER** |

Plaintiffs,

v.

Kevin Washburn, in his official capacity as Assistant Secretary of Indian Affairs, Bureau of Indian Affairs; Sally Jewell, in her official capacity as Secretary of the Interior, U. S. Department of the Interior; Gregory A. McKay, in his official capacity as Director of Arizona Department of Child Safety,

Defendants,

Gila River Indian Community and the Navajo Nation,

Intervenor Defendants.

Before the Court are motions to dismiss the First Amended Complaint by the Federal Defendants (Doc. 178) and the State Defendant (Doc. 179), the Responses, and the Replies. Also before the Court are motions to dismiss the First Amended Complaint by the Intervenor-Defendants Gila River Indian Community (Doc. 217) and the Navajo

Nation (Doc. 218), the response, and the replies.  Amicus curiae briefs have been filed in support of and in opposition to the motions to dismiss.

In this action the adult Plaintiffs and those who have undertaken to speak for the child Plaintiffs attempt to challenge parts of the Indian Child Welfare Act ("ICWA") as unconstitutional racial discrimination.  They also challenge Congress's power to enact laws regulating state court proceedings and ousting state laws concerning foster care placement, termination of parental rights, preadoptive placement, and adoptive placements of some off-reservation children of Indian descent.  More specifically, these are children whose parents elected to leave Indian Country and take up residence off reservation with the benefits of and obligations under state law of all other persons within the jurisdiction of the state and outside Indian Country.

Plaintiffs seek a declaration that certain provisions of the Indian Child Welfare Act and of the Guidelines for State Courts and Agencies in Indian Child Custody Proceedings published on February 25, 2015 ("2015 Guidelines")[1] by the Department of the Interior, Bureau of Indian Affairs ("BIA"), violate the United States Constitution, federal civil rights statutes, and Title VI of the Civil Rights Act by requiring State courts to treat Indian children differently than non-Indian children in child custody proceedings.  They seek to enjoin the Federal Defendants from enforcing these provisions and the State Defendant from complying with and enforcing these provisions.  The Guidelines do not have the force of law.  They might be viewed uncharitably as avoiding the rule-making requirements of the Administrative Procedures Act but still having enough of the look of regulations that judges and others will follow them anyway.

In ICWA, adopted in 1978, Congress responded to the increasing adoption by non-Indian families of Indian children resident off-reservation and subject to the exclusive jurisdiction of state courts.  Congress enacted ICWA:

> . . . to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of

---

[1] 80 Fed. Reg. 10146–10159 (Feb. 25, 2015) (superseding and replacing the guidelines published at 44 Fed. Reg. 67584–67595 (Nov. 28, 1979)).

minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs.

25 U.S.C. § 1902.

From the outset Plaintiffs have grounded sweeping challenges to ICWA and the 2015 Guidelines on vague or narrow allegations of their own experience with ICWA. The motions to dismiss probe the jurisdictional specifics of each Plaintiff's allegations.

## I.      REGULATORY BACKGROUND

Congress authorized the Department of the Interior to make rules and regulations necessary for carrying out provisions of ICWA.  25 U.S.C. § 1952.  The Department promulgated regulations to govern funding and administering Indian child and family service programs as authorized by ICWA.  25 C.F.R. § 23.1.  The regulations also addressed notice procedures for involuntary child custody proceedings involving Indian children, but they "did not address the specific requirements and standards that ICWA imposes upon State court child custody proceedings, beyond the requirements for contents of the notice."  80 Fed. Reg. 10146, 10147.  To supplement the regulations, the Department published guidelines for State courts to use in interpreting many of ICWA's requirements in Indian child custody proceedings.  *Id.*  In 2015, the Department published the updated 2015 Guidelines to supersede and replace the guidelines published in 1979. *Id.*  Like the previous guidelines, the 2015 Guidelines are not tethered to regulations.

The 2015 Guidelines "provide standard procedures and best practices to be used in Indian child welfare proceedings in State courts."  80 Fed. Reg. 10146, 10147.  They state, "In order to fully implement ICWA, these guidelines should be applied in all proceedings and stages of a proceeding in which the Act is or becomes applicable."  *Id.* at 10150.  Although the 2015 Guidelines are not binding, Arizona courts nevertheless have considered them in interpreting ICWA.  *Gila River Indian Cmty. v. Dep't of Child Safety*, 238 Ariz. 531, 535 (Ct. App. 2015); *Gila River Indian Cmty. v. Dep't of Child Safety*, 240 Ariz. 385, 389 n.12 (Ct. App. 2016).

In June 2016, the Department added a new subpart to its regulations implementing ICWA, which "addresses requirements for State courts in ensuring implementation of ICWA in Indian child-welfare proceedings and requirements for States to maintain records under ICWA."  81 Fed. Reg. 38778, 38778 (June 14, 2016).  The regulations in the new subpart "clarify the minimum Federal standards governing implementation of [ICWA] to ensure that ICWA is applied in all States consistent with the Act's express language, Congress's intent in enacting the statute, and to promote the stability and security of Indian tribes and families."  25 C.F.R. § 23.101.

The new subpart became effective on December 12, 2016.  None of the provisions of the new subpart affects a proceeding under State law that was initiated before December 12, 2016, but the provisions of the new subpart do apply to any subsequent proceeding in the same matter or affecting the custody or placement of the same child.  23 C.F.R. § 23.143.  For example, the new subpart does not apply to a foster care placement proceeding initiated in November 2016, but it does apply to an adoptive placement proceeding initiated in January 2017 for the same child.

In conjunction with the new subpart of ICWA regulations, on December 12, 2016, the Department published Guidelines for Implementing the Indian Child Welfare Act ("2016 Guidelines"), which replaced the 1979 and 2015 versions.  Under each heading, the 2016 Guidelines provide the text of the regulation (if there is one), guidance, recommended practices, and suggestions for implementation.

The Amended Complaint does not challenge any regulations or the 2016 Guidelines.  It challenges only certain provisions of ICWA and the 2015 Guidelines.

## II.     THE AMENDED COMPLAINT

### A.     Procedural Background

On July 6, 2015, Plaintiffs filed a Civil Rights Class Action Complaint for Declaratory and Injunctive Relief.  (Doc. 1.)  On December 18, 2015, during oral argument regarding standing issues raised in motions to dismiss, Plaintiffs' counsel indicated that Plaintiffs would like to amend their complaint to add additional plaintiffs.

(Doc. 122.)   On February 22, 2016, the Court ordered Plaintiffs to file a status report stating whether and when they planned to amend their complaint to add additional plaintiffs.  (Doc. 145.)  On February 29, 2016, Plaintiffs reported they wanted to amend their complaint to add two children and their foster/preadoptive parents as plaintiffs and to update facts regarding pending State court proceedings.  (Doc. 149.)  On March 2, 2016, Plaintiffs sought leave to file an amended complaint, which Defendants opposed by arguing, among other things, that both the proposed additional plaintiffs and the original plaintiffs lacked standing.  (Docs. 150, 160, 162.)  On April 4, 2016, the Court granted Plaintiffs leave to amend their complaint and denied the pending motions to dismiss as moot.  (Doc. 172.)

On April 5, 2016, Plaintiffs' First Amended Civil Rights Class Action Complaint for Declaratory, Injunctive, and Other Relief ("Amended Complaint") was filed.  (Doc. 173.)  On April 22, 2016, the Federal Defendants and the State Defendant filed motions to dismiss the Amended Complaint.  (Docs. 178, 179.)  On September 29, 2016, the Gila River Indian Community and the Navajo Nation were granted permissive intervention, and their proposed motions to dismiss the Amended Complaint were filed.  (Doc. 216.)

## B.    Plaintiffs' Claims for Relief

Count 1 of the Amended Complaint alleges that 25 U.S.C. §§ 1911(b), 1912(d), 1912(e), 1912(f), 1915(a), 1915(b) and §§ A.2, A.3, B.1, B.2, B.4, B.8, C.1, C.2, C.3, D.2, D.3, F.1, F.2, F.3, F.4 of the 2015 Guidelines violate the equal protection guarantee of the Fifth Amendment.  Count 2 alleges that the same statutes and provisions of the 2015 Guidelines violate the due process guarantee of the Fifth Amendment.  Count 3 alleges that the State Defendant's compliance with the challenged statutes and sections of the 2015 Guidelines violates the substantive due process and equal protection clauses of the Fourteenth Amendment.

Count 4 alleges that ICWA exceeds the federal government's power under the Indian Commerce Clause and the Tenth Amendment and impermissibly commandeers State courts and State agencies.  Count 5 alleges that the challenged statutes and sections

of the 2015 Guidelines violate Plaintiffs' associational freedoms under the First Amendment by forcing them to associate with tribes and tribal communities.  Count 6 alleges that the BIA exceeded its authority by publishing §§ C.1, C.2, and C.3 of the 2015 Guidelines, which expand application of § 1911(b) beyond its terms.  Count 7 seeks nominal damages of $1 to each of the named Plaintiffs and to each of the members of the class they seek to represent under Title VI of the Civil Rights Act, 42 U.S.C. §§ 2000d-2000d-7.[2]

### C.    The Parties

The Amended Complaint is filed on behalf of Plaintiffs and all off-reservation Arizona-resident children with Indian ancestry and all off-reservation Arizona-resident foster, preadoptive, and prospective adoptive parents in child custody proceedings involving children with Indian ancestry.

Plaintiff A.D. is an enrolled member of the Gila River Indian Community.  Parental rights of A.D.'s biological parents have been terminated by the State court.  Plaintiffs S.H. and J.H., a married couple, are foster/preadoptive parents of A.D. and have taken care of A.D. since birth.  Their petition to adopt A.D. was pending in the State court on April 5, 2016.  Neither S.H. nor J.H. is an enrolled member of an Indian tribe or eligible for membership in an Indian tribe.

Plaintiff C.C. is an enrolled member of the Navajo Nation.  Parental rights of C.C.'s biological parents were terminated, and adoption of C.C. by Plaintiffs M.C. and K.C. was finalized by the State court in November 2015.  C.C. continuously remained in foster care with M.C. and K.C. for four years before the adoption was finalized.  Neither M.C. nor K.C. is an enrolled member of an Indian tribe or eligible for membership in an Indian tribe.

---

[2] Section 2000d states:  "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  Section 2000d-7 provides that in a suit against a State for violating § 2000d, remedies are available to the same extent they are available in a suit against any public or private entity other than a State.

Plaintiff C.R. is eligible for membership in and is a child of a member of, or is already an enrolled member of, the Gila River Indian Community. Plaintiff L.G. is C.R.'s half-sibling and is not eligible for membership in the Pascua Yaqui Tribe of Arizona. L.G. and C.R. were taken into protective custody when C.R. was born and L.G. was about two years old. As of April 5, 2016, the parental rights of C.R.'s and L.G.'s biological parents had not been terminated by the State court, which is treating C.R.'s and L.G.'s cases as one. C.R. and L.G. have continuously remained in foster care with Plaintiffs K.R. and P.R., a married couple, who want to adopt C.R. and L.G.

The Amended Complaint names Carol Coghlan Carter and Dr. Ronald Federici as "next friends" to A.D., C.C., C.R., L.G., and all off-reservation children with Indian ancestry in the State of Arizona in child custody proceedings.

The Federal Defendants are Kevin Washburn in his official capacity as Assistant Secretary of Indian Affairs, BIA, and Sally Jewell in her official capacity as Secretary of the Interior, U.S. Department of the Interior. The State Defendant is Gregory McKay in his official capacity as Director of Arizona Department of Child Safety. Intervenor Defendants are the Gila River Indian Community and the Navajo Nation, both federally recognized tribes.

## III.   LEGAL STANDARD

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact are assumed to be true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). To avoid dismissal, a complaint need contain only "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The principle that a court accepts as true all of the allegations in a complaint does not apply to legal conclusions or conclusory factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under Rule 12(b)(1), a defendant may challenge the plaintiff's jurisdictional allegations by either (1) attacking the plaintiff's allegations as insufficient on their face to

invoke federal jurisdiction or (2) contesting the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). The first, a facial attack, is resolved by the district court as it would be under Rule 12(b)(6), *i.e.*, accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are legally sufficient to invoke the court's jurisdiction. *Id.* The second, a factual attack, requires the plaintiff to support its jurisdictional allegations with competent proof, under the same evidentiary standard applied on summary judgment. Thus, the plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject matter jurisdiction has been met. *Id.*

## IV.  STANDING

### A.  Requirements for Article III Standing

"A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Braunstein v. Arizona Dep't of Transp.*, 683 F.3d 1177, 1184 (9th Cir. 2012). "Standing must be shown with respect to each form of relief sought, whether it be injunctive relief, damages or civil penalties." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 185 (2000)).

To satisfy Article III standing, a plaintiff must show:

(1) [he or she] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

For an equal protection claim, a plaintiff may show an "injury in fact" caused by denial of equal treatment:

> When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The "injury in fact" in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.

*Ne. Fla. Chapter, Associated Gen. Contractors of America v. Jacksonville*, 508 U.S. 656, 666 (1993). "[E]qual treatment under the law is a judicially cognizable interest that satisfies the case or controversy requirement of Article III, even if it brings no tangible benefit to the party asserting it." *Davis v. Guam*, 785 F.3d 1311, 1316 (9th Cir. 2015) (citing *Heckler v. Matthews*, 465 U.S. 728, 739 (1984)). "Unequal treatment is an injury even if curing the inequality has no tangible consequences." *Id.*

However, even in the equal protection context, "a plaintiff must assert a particularized injury, rather than a generalized grievance." *Braunstein*, 683 F.3d at 1185. "Even if the government has discriminated on the basis of race, only those who are 'personally denied' equal treatment have a cognizable injury under Article III." *Id.* (finding plaintiff had not provided any evidence the government's racial preference program affected him personally or had impeded his ability to compete for work on an equal basis).

Ordinarily, the existence of federal jurisdiction depends on the facts as they existed when the complaint was filed. *Lujan*, 504 U.S. at 569 n.4.

**B.      Injury in Fact that Is Concrete and Particularized, Actual or Imminent, and Fairly Traceable to the Challenged Action**

The Amended Complaint challenges 25 U.S.C. §§ 1911(b), 1912(d), 1912(e), 1912(f), and 1915(b) and certain sections of the 2015 Guidelines on multiple grounds, including denial of equal treatment, due process, and associational freedoms.

**1.      Section 1911(b): Jurisdiction-Transfer Provision**

Section 1911(b) requires State courts to transfer any proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the child's tribe to the tribal court upon petition of

either parent, the Indian custodian, or the Indian child's tribe, in the absence of good cause to the contrary, objection by either parent, or declination by the tribal court of such tribe. The Amended Complaint does not allege that transfer of jurisdiction has been sought for any of the child Plaintiffs except for A.D.

In A.D.'s case, the Arizona Court of Appeals affirmed the juvenile court's denial of the Gila River Indian Community's motion to transfer jurisdiction. *Gila River Indian Cmty. v. Dep't of Child Safety*, 240 Ariz. 385, 379 P.3d 1016 (Ct. App. Aug. 11, 2016). The court explained that ICWA defines four types of child custody proceedings: foster care placement, termination of parental rights proceedings, preadoptive placement, and adoptive placement. *Id.* at 390, 379 P.3d at 1021. Section 1911(b) provides only for transfer of foster care placement or termination of parental rights proceedings. The court explained that under ICWA the term "foster care placement" is limited to "where parental rights have not been terminated," and therefore § 1911(b) does not allow transfer to tribal court of State preadoptive and adoptive placement proceedings occurring after parental rights have terminated. *Id.* The court found:

> In this case, neither A.D.'s biological parents nor the Community sought to transfer the proceedings from the juvenile court to the Community's Children's Court before termination of parental rights. By the time the Community moved to transfer, A.D.'s case had progressed to the point where the biological parents' rights had been terminated and legal custody had been permanently placed with DCS [the Arizona Department of Child Safety], the juvenile court had found the foster parents were an adoptive placement, and the court had authorized DCS to facilitate permanent placement of A.D. through adoption. Further, an adoption petition had been filed. By not moving to transfer jurisdiction before termination of the biological parents' rights, the Community effectively waived its right to seek transfer of jurisdiction under 25 U.S.C. § 1911(b).

*Id.* at 391, 379 P.3d 1022. Thus, the Gila River Indian Community did not seek to enforce § 1911(b), but rather it sought a transfer of jurisdiction not authorized by § 1911(b).

It can be inferred that A.D. and her foster parents suffered a concrete and particularized injury as a result of the Gila River Indian Community's litigation.

- 10 -

However, their injury resulted from the Gila River Indian Community's frivolous invocation of § 1911(b) for a proceeding it plainly does not authorize.  Their injury is fairly traceable to the Gila River Indian Community's groundless intrusion into their preadoptive and adoptive proceeding beyond the scope of § 1911(b), but not to § 1911(b) itself.[3]

Thus, the Amended Complaint does not allege facts showing that any of the Plaintiffs suffered a concrete and particularized injury, actual or imminent, and fairly traceable to § 1911(b).

### 2.    Section 1912(d):  Active Efforts Provision

Section 1912(d) requires State officials to make "active efforts . . . to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family" and to show "that these efforts have proved unsuccessful" before an Indian child may be placed in foster care or parental rights may be terminated.  Although ICWA does not define "active efforts," § A.2 of the 2015 Guidelines defines "active efforts" as:

> *Active efforts* are intended primarily to maintain and reunite an Indian child with his or her family or tribal community and constitute more than reasonable efforts as required by Title IV-E of the Social Security Act (42 U.S.C. § 671(a)(15)).

80 Fed. Reg. 10146, 10150.  Section A.2 also states:  "'Active efforts' are separate and distinct from requirements of the Adoption and Safe Families Act (ASFA), 42 U.S.C. § 1305" and "ASFA's exceptions to reunification efforts do not apply to ICWA proceedings."  *Id.* at 10150-51.[4]  *See also* 2015 Guidelines, §§ A.3, B.1, B.2, B.4, B.8, D.2.

---

[3] Neither the Amended Complaint nor the appellate decision in A.D.'s case states that the Gila River Indian Community sought transfer of jurisdiction based on §§ C.1, C.2, and C.3 of the 2015 Guidelines, which fail to explain that transfer under § 1911(b) is limited to proceedings for foster care placement or termination of parental rights.

[4] The 2016 Guidelines expressly avoid comparison of "active efforts" and "reasonable efforts."  They do not refer to ASFA's exceptions.

Under 42 U.S.C. § 671(a)(15)(B), in order for a State to obtain federal financial assistance for foster care programs, the State plan must require that "reasonable efforts shall be made to preserve and reunify families [] prior to the placement of a child in foster care."   Section 671(a)(15)(D) provides exceptions to the "reasonable efforts" requirement if a court of competent jurisdiction has determined that the parent has subjected the child to "aggravated circumstances," such as abandonment, torture, chronic abuse, and sexual abuse, or has committed murder or other specific crimes.

The Amended Complaint alleges that because § 1912(d) does not include ASFA's exceptions, it requires "active efforts" to reunify families even when the children were abandoned, tortured, chronically abused, or sexually abused by family members. However, § 671(a)(15) applies only to foster care placement, and the Amended Complaint does not allege that any reunification attempts were made before foster care placement for any of the child Plaintiffs.  Moreover, it does not allege that attempts were made to reunify any of the child Plaintiffs with family members who had abandoned, tortured, chronically abused, or sexual abused them.

The Amended Complaint also alleges that the "active efforts" provision of § 1912(d) requires more than the "reasonable efforts" required under § 671(a)(15), and it delays child custody proceedings, thereby depriving Indian children and their foster parents legal recognition of their family status, resulting in uncertainty and great distress. Section 1912(d) requires reunification attempts only before foster care placement and termination of parental rights, and the Amended Complaint does not allege that any reunification attempts were made before the child Plaintiffs were placed in foster care. Therefore, the only possible particularized injury fairly traceable to § 1912(d) that any of the Plaintiffs could have suffered is delay in termination of parental rights.[5]

---

[5] The Amended Complaint also alleges that "active efforts" provision requires Indian children to associate with tribes and tribal communities, but it cites only to a section of the 2015 Guidelines regarding designating an Indian child's tribe.  The Amended Complaint does not allege that any of the child Plaintiffs was required to associate with tribes or tribal communities during reunification attempts.

The Amended Complaint alleges that C.R. and L.G. were placed in foster care with P.R. and K.R. at the time of C.R.'s birth.  It alleges that State officials initially attempted reunification with C.R.'s biological mother through weekly supervised visits, but changed the case management plan to severance in September 2015.  It does not allege that any reunification attempts were made other than weekly supervised visits with the biological mother.  As of April 5, 2016, the parental rights of C.R.'s and L.G.'s birth parents had not been terminated.  The Amended Complaint does not allege that parental rights for C.R. and L.G. would have been terminated more quickly if "reasonable efforts" under § 671(a)(15) had been made instead of "active efforts" under § 1912(d).

The Amended Complaint does not allege that any attempt was made to reunify C.C.'s family or A.D.'s family before parental rights were terminated.

Thus, the Amended Complaint does not allege facts showing that any of the Plaintiffs suffered a concrete and particularized injury, actual or imminent, and fairly traceable to § 1912(d).

### 3.   Section 1912(e):  Higher Evidentiary Standard for Foster Care Placement

Section 1912(e) prohibits foster care placement "in the absence of a determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child."  *See also* 2015 Guidelines, § D.3(a).  The Amended Complaint alleges that Arizona law requires only a showing of "reasonable grounds," "probable cause," "reasonable efforts," or "preponderance of the evidence" at various stages of proceedings leading to foster care placement of children.  It further alleges that "ICWA's higher burden of proof requires [the Department of Child Safety] to disregard to a greater extent the safety and security of children with Indian ancestry based solely on the race of these children."

The Amended Complaint alleges that C.C. was taken into protective custody after his biological mother was convicted of a felony.  It alleges that A.D. and C.R. were taken into protective custody at birth.  L.G., who shares the same biological mother as C.R.,

was taken into protective custody at the same time as C.R., and ICWA had no application to L.G. before C.R. was born.  The Amended Complaint does not allege facts showing that foster care placement for any of the child Plaintiffs was delayed or that any of the child Plaintiffs was exposed to greater risk of harm because of ICWA's higher evidentiary standard.

Thus, the Amended Complaint does not allege facts showing that any of the Plaintiffs suffered a concrete and particularized injury, actual or imminent, and fairly traceable to § 1912(e).

### 4.    Section 1912(f):  Higher Evidentiary Standard for Termination of Parental Rights

Section 1912(f) prohibits termination of parental rights "in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child."  *See also* 2015 Guidelines, § D.3(b).  The Amended Complaint alleges that ICWA's requirement of evidence "beyond a reasonable doubt" is greater than what would otherwise be required.  Arizona law requires that the party seeking termination of parental rights establish statutory grounds by "clear and convincing evidence" and establish the best interests of the child by "a preponderance of the evidence."  The Amended Complaint alleges that the parental rights of the biological parents of A.D. and C.C. have been terminated, and the parental rights of the biological parents of C.R. and L.G. have not been terminated.  It does not allege that the termination proceedings were affected by the evidentiary standard required by § 1912(f) in any way.

Thus, the Amended Complaint does not allege facts showing that any of the Plaintiffs suffered a concrete and particularized injury, actual or imminent, and fairly traceable to § 1912(f).

### 5.    Section 1915(a):  Adoptive Placement Preferences

The Amended Complaint alleges that the foster care/preadoptive and adoption placement preferences imposed by §§ 1915(a) and 1915(b) and by the 2015 Guidelines

§§ F.1, F.2, F.3, and F.4 "single out and treat differently children with Indian ancestry . . . [and] the non-Indian adults involved in the care and upbringing of children with Indian ancestry."  (Doc. 173 at 27, ¶ 115.)  It also alleges that §§ 1915(a) and 1915(b) "violate the substantive due process rights of children with Indian ancestry and those of adults involved in their upbringing who have an existing family-like relationship with the child" because each of them "deserves an individualized, race-neutral determination under uniform standards when courts make foster/preadoptive care and adoption placement decisions."  (*Id.* at 28, ¶ 121.)

Section 1915(a) requires:

> In any adoptive placement of an Indian child under State law, a preference shall be given, in the absence of good cause to the contrary, to a placement with (1) a member of the child's extended family; (2) other members of the Indian child's tribe; or (3) other Indian families.

Although ICWA does not define "good cause," § F.4 of the 2015 Guidelines states:  "The good cause determination does not include an independent consideration of the best interest of the Indian child because the preferences reflect the best interests of an Indian child in light of the purposes of the Act."  80 Fed. Reg. 10146, 10158.[6]

For all adoptive placements, Arizona law requires the Department of Child Safety or an adoption agency to "place a child in an adoptive home that best meets the safety, social, emotional, physical and mental health needs of the child."  A.R.S. § 8-103(C).  Other relevant factors for consideration include placement with the child's siblings, placement with a member of the child's extended family or a person or foster parent who has a significant relationship with the child, and established relationships between the child and the prospective adoptive family.  *Id.*  Adoption proceedings include certification of the adoptive parents, completion of a social study, a court hearing,

---

[6] The 2016 Guidelines, § H.4, state:  "Congress determined that a placement with the Indian child's extended family or Tribal community will serve the Indian child's best interest in most cases.  A court may deviate from these preferences, however, when good cause exists."  Section H.4 and 25 C.F.R. § 23.132 explain how a determination of "good cause" to depart from the placement preferences should be made.

consideration of multiple factors, and judicial findings on the record regarding the best interests of the child pursuant to law.

The Amended Complaint does not allege that the Gila River Indian Community has proposed or likely will propose any adoptive placements under § 1915(a) for A.D.  It does not allege that A.D.'s adoption has been delayed by § 1915(a)'s placement preferences.

The Amended Complaint alleges that C.C.'s adoption was delayed by the Navajo Nation's repeated efforts to find an adoption placement compliant with § 1915(a)'s preferences because M.C. and K.C. could not file a petition for adoption until the State court declared that there was good cause to deviate from ICWA's adoption placement preferences.  It alleges that C.C. was repeatedly required to visit with strangers who were proposed as potential ICWA-compliant placements.  But it does not allege facts, rather than mere conclusions, showing that C.C.'s adoption would have been completed more quickly and C.C. would not have been introduced to strangers if § 1915(a) did not apply.

The Amended Complaint alleges that the Gila River Indian Community has proposed and will continue to propose ICWA-compliant adoption placements for C.R. and L.G. and that but for the application of ICWA, C.R. and L.G. likely would have been cleared for adoption by P.R. and K.R.  It alleges that C.R. and L.G. were placed together in foster care with P.R. and K.R., as required by Arizona law, because C.R. and L.G. are well-bonded siblings.  The Amended Complaint does not allege facts, rather than mere conclusions, showing that the consolidated adoption proceeding for C.R. and L.G. would have been completed more quickly if § 1915(a) did not apply.

Thus, the Amended Complaint does not allege facts showing that any of the Plaintiffs suffered a concrete and particularized injury, actual or imminent, and fairly traceable to § 1915(a).

### 6.    Section 1915(b): Foster Care/Preadoptive Placement Preferences

Section 1915(b) states:

Any child accepted for foster care or preadoptive placement shall be placed in the least restrictive setting which most approximates a family and in

which his special needs, if any, may be met.  The child shall also be placed within reasonable proximity to his or her home, taking into account any special needs of the child.  In any foster care or preadoptive placement, a preference shall be given, in the absence of good cause to the contrary, to a placement with—

> (i) a member of the Indian child's extended family;

> (ii) a foster home licensed, approved, or specified by the Indian child's tribe;

> (iii) an Indian foster home licensed or approved by an authorized non-Indian licensing authority; or

> (iv) an institution for children approved by an Indian tribe or operated by an Indian organization which has a program suitable to meet the Indian child's needs.

The Amended Complaint alleges that A.D. was taken into protective custody at birth, A.D. was placed in foster care with S.H. and J.H., and they have taken care of A.D. ever since.  It alleges that C.C. was taken into protective custody when he was less than one year old and he continuously remained in foster care with M.C. and K.C. for four years before they adopted him in November 2015.  The Amended Complaint alleges that C.R. was taken into protective custody at birth and placed in foster care with K.R. and P.R.  At the same time, C.R.'s half-sibling L.G. was placed in foster care with K.R. and P.R.  The Amended Complaint does not allege any delay in, or effect on, the foster care placements of the child Plaintiffs caused by § 1915(b).

Thus, the Amended Complaint does not allege facts showing that any of the Plaintiffs suffered a concrete and particularized injury, actual or imminent, and fairly traceable to § 1915(b).

### 7.     Sections C.1, C.2, and C.3 of the 2015 Guidelines

Count 6 of the Amended Complaint alleges that the BIA exceeded its authority by issuing §§ C.1, C.2, and C.3 of the 2015 Guidelines, which make transfer of jurisdiction available during all child custody proceedings, including preadoptive placement and adoptive placement proceedings.  (Doc. 173 at 32.)  Under 25 U.S.C. § 1911(b), the right

1    to request a transfer to tribal jurisdiction is available only in proceedings for foster care

2    placement or termination of parental rights.[7]

3          Section C.1(a) refers to "each distinct Indian child custody proceeding."  80 Fed.

4    Reg. 10146, 10156.  Section C.1(b) states, "The right to request a transfer occurs with

5    each proceeding" and provides an example involving only foster care placement and

6    termination of parental rights.  Id.  Section C.1(c) states, "The right to request a transfer is

7    available at any stage of an Indian child custody proceeding, including during any period

8    of emergency removal."  Id.  Section C.3(c) states:  "In determining whether good cause

9    [not to transfer] exists, the court may not consider whether the case is at an advanced

10   stage or whether transfer would result in a change in the placement of the child . . . ."  Id.

11   These provisions are inconsistent with § 1911(b)'s limitation to proceedings for foster

12   care placement and termination of parental rights.

13         However, the Amended Complaint does not allege that transfer was requested

14   during a preadoptive or adoptive placement proceeding for C.C., C.R., or L.G.  Although

15   the Gila River Indian Community sought transfer of A.D.'s proceedings after termination

16   of parental rights, the Amended Complaint does not allege that the Gila River Indian

17   Community contended that the 2015 Guidelines authorized transfer of preadoptive and

18   adoptive placement proceedings.  Therefore, the Amended Complaint does not allege

19   facts showing that any of the Plaintiffs suffered a concrete and particularized injury,

20   actual or imminent, and fairly traceable to §§ C.1, C.2, and C.3 of the 2015 Guidelines.

21         Therefore, all of the pending motions to dismiss the Amended Complaint will be

22   granted, and the Amended Complaint will be dismissed for lack of jurisdiction and lack

23   of standing.

24         Plaintiffs have not sought leave to further amend their complaint, and leave to do

25   so will not be granted.  Although leave to amend a pleading should be freely given "when

26   justice so requires," Fed. R. Civ. P. 15(a)(2), courts should consider five factors:  bad

27

28         [7] Consistent with § 1911(b), the 2016 Guidelines and 25 C.F.R. § 23.115 expressly
limit the right to request a transfer to proceedings for foster care placement and
termination of parental rights.

faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint.  *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).  Courts have "especially broad" discretion to deny leave to amend where the plaintiff already has had one or more opportunities to amend a complaint. *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989); *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) ("Leave to amend need not be given if a complaint, as amended, is subject to dismissal.").

Plaintiffs initiated this action on July 6, 2015, alleging a putative class so numerous that joinder of all members is impracticable, but despite being granted leave to amend, they have not named any plaintiffs with standing to challenge any provisions of ICWA or the 2015 Guidelines.  Further leave to amend would cause undue delay and likely would be futile.

The legal questions Plaintiffs wish to adjudicate here in advance of injury to themselves will be automatically remediable for anyone actually injured.  The very allegations of wrongfulness are that such injuries will arise in state court child custody proceedings, directly in the court processes or in actions taken by state officers under the control and direction of judges in those proceedings.  Any true injury to any child or interested adult can be addressed in the state court proceeding itself, based on actual facts before the court, not on hypothetical concerns.  If any Plaintiffs encounter future real harm in their own proceedings, the judge in their own case can discern the rules of decision.  They do not have standing to have this Court pre-adjudicate for state court judges how to rule on facts that may arise and that may be governed by statutes or guidelines that this Court may think invalid.

IT IS THEREFORE ORDERED that the Federal Defendants' Motion to Dismiss First Amended Complaint (Doc. 178), the State Defendant's Motion to Dismiss Plaintiffs' First Amended Civil Rights Complaint for Declaratory, Injunctive, and Other Relief (Doc. 179), the Gila River Indian Community's Motion to Dismiss (Doc. 217), and the Navajo Nation's Amended Motion to Dismiss (Doc. 218) are granted.

IT IS FURTHER ORDERED that the First Amended Civil Rights Class Action Complaint for Declaratory, Injunctive, and Other Relief (Doc. 173) is dismissed for lack of standing.

IT IS FURTHER ORDERED that the Clerk of the Court enter judgment dismissing this action without prejudice for lack of jurisdiction and lack of standing.

Dated this 16th day of March, 2017.

Neil V. Wake
Senior United States District Judge